# Exhibit A

Harp v. Police and Fire Federal Credit Union, Not Reported in Fed. Supp. (2023)

2023 WL 5152625
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Canya Aviana HARP, Plaintiff,
v.
POLICE AND FIRE FEDERAL
CREDIT UNION, Defendant.

CIVIL ACTION No. 23-2577
|
Signed August 10, 2023

**Attorneys and Law Firms**

Canya Aviana Harp, Philadelphia, PA, Pro Se.

John J. Higson, Matthew T. Gardella, Dilworth Paxson LLP,
Philadelphia, PA, for Defendant.

**MEMORANDUM**

McHUGH, United States District Judge

**\*1** This is an action by a *pro se* plaintiff against a local
federal credit union. After the credit union rejected Plaintiff's
attempt to pay off her outstanding credit card debt using a
handwritten "bill of exchange," Plaintiff filed suit alleging an
array of state and federal claims. Several of these claims are
not valid causes of action, and the remaining claims all rest on
the credit union's failure to recognize this "bill of exchange"
as legal tender. Because this document is clearly not a valid
financial instrument, and because Plaintiff's claims rest on a
mistaken understanding of how lines of credit operate, I will
dismiss Plaintiff's complaint in its entirety.

**I. Relevant Background**
Plaintiff Canya Harp is a member of Defendant Police and
Fire Federal Credit Union ("PFFCU"). Compl. Ex. A ("Ex.
A") at 4, ECF 1-1. Ms. Harp has a PFFCU credit card. *Id.*
From March 21, 2023 to April 6, 2023, Harp incurred charges
totaling $5,480.46 on her PFFCU credit card, in excess of her
$5,000 credit limit. *Id.* In May of 2023, Ms. Harp attempted
to use a "bill of exchange" to satisfy her outstanding credit
card debt. Compl. at 3. The "bill of exchange" that Ms.
Harp sent to PFFCU was fashioned from the Enclosure Form
sent with her credit card statement, on which Harp indicated
that the "Amount Enclosed" was $5,480.46, with notations

stating "ACCEPTED," "PAY TO BEARER," "PAY WITH
INTEREST," and "PAY ON DEMAND." Ex. A. at 6-7. Along
with this "bill of exchange," Harp sent PFFCU a letter titled
"Notice of Acceptance," which stated the following:

> I, Harp, Canya A/agent on behalf of CANYA AVIANA
> HARP/principal, hereby accept all titles, rights, interest,
> and equity owed to CANYA AVIANA HARP/principal. I
> hereby instruct the Chief Financial Officer John La Rosa to
> apply the Principal's balance to the Principal's account ...
> for each and every billing cycle for set off. I also instruct
> the CFO to communicate in writing within five (5) business
> days of completed duties and instructions ...

> I have performed my contractual obligations by remitting
> payment via bill of exchange as collateral security and legal
> tender.

Ex. A at 12. Based on the Complaint and exhibits attached
thereto, the alleged "contractual obligations" alluded to
here involved a "trust contract" between Harp and PFFCU,
whereby Harp would accept a "collateral security" from
PFFCU via a "bill of exchange," which she could tender back
to PFFCU "as legal tender ... for set-off of an obligation."
Compl. at 3.

On May 31, 2023, PFFCU sent Harp a notice stating that it
had not received payment for her credit card bill. Ex. A at 13.
Ms. Harp again delivered a copy of the "bill of exchange" to
PFFCU one week later, and in a corresponding letter alleged
that PFFCU was violating its obligations under the Federal
Reserve Act. Compl. at 5; Ex. A at 14. On June 13, 2023,
PFFCU sent a letter to Harp informing her that the documents
she provided were not legal tender and could not be used
to pay for her credit card balance. Ex. A at 1. On June 19,
2023, Harp sent PFFCU a "Notice of Default" again asserting
that PFFCU was not performing its "contractual obligations,"
was in breach of its contract with her, was not performing
its fiduciary duties, and was exposing itself to "civil money
penalties" under the Federal Reserve Act. Ex. A at 15. Two
days later, Harp again sent her "bill of exchange" to PFFCU
along with a letter, in which she accused PFFCU of violating
its obligations under the Federal Reserve Act and the "Bills
of Exchange Act" [1] by failing to recognize her documents as
legal tender. Compl. at 5; Ex. A at 3.

**\*2** On July 7, 2023, Ms. Harp filed this action *pro se*,
asserting claims against PFFCU for breach of contract,
"violation of security rights leading to security fraud," breach
of fiduciary duties, and breach of trust, and seemingly alleges

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 3 of 67 PageID
#: 253
Harp v. Police and Fire Federal Credit Union, Not Reported in Fed. Supp. (2023)

that PFFCU is violating her "rights" under the Federal Reserve Act. As relief, Harp seeks specific performance of her "contract" with PFFCU, as well as over $5,325,000 in damages. Compl. at 4.

## II. Legal Standard

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In deciding such a motion, courts consider "allegations contained in complaint, exhibits attached to complaint, and matters of public record." *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III. Discussion

PFFCU moves to dismiss all of Harp's claims under Rule 12(b)(6), arguing that Harp fails to state any cognizable claim. Although courts are obliged "to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), "*pro se* litigants must still allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Here, Harp has failed to set forth sufficient facts to state any cognizable claim. And because all of Harp's claims rest upon her mistaken belief that her "bill of exchange" was valid legal tender, and are based on a fundamental misunderstanding of the operation of a credit card, I will dismiss the Complaint with prejudice and without leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that complaint may be dismissed without leave to amend where "amendment would be inequitable or futile").

### A. Harp's breach of contract claim fails.

Ms. Harp primarily claims that PFFCU breached its contractual obligations to her when it failed to honor her "bill of exchange." A breach of contract claim under Pennsylvania law requires a plaintiff to demonstrate (1) the existence of a contract between the plaintiff and defendant, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages. *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1125 (Pa. Super. Ct. 2004). While the Complaint is vague about what the underlying "contract" consisted of, it appears that Harp is alleging a breach of (1) a "trust contract" whereby PFFCU allegedly agreed to essentially give Plaintiff a blank check in the form of her credit card and/or (2)

PFFCU's supposed contractual obligations to its customers to accept and deposit legal tender. Both contract claims fail.

First, Harp's confusing complaint does not set forth sufficient factual material to plead the existence of a contract whereby PFFCU would forgive Harp's debts accumulated on her credit card. The Complaint vaguely alleges the existence of a "trust contract" with PFFCU that formed when Plaintiff opened her credit card account, whereby Plaintiff would "accept[ ] collateral security offered via bill of exchange by Defendant, and tender[ ] it back to Defendant as legal tender ... for set off of an obligation." Compl. at 3. But Harp does not plead sufficient facts to demonstrate the "essential terms" of the contract, nor the exact provision of the alleged contract that PFFCU violated. To the extent that I can make sense of Harp's allegations, she appears to allege that PFFCU gave her essentially a blank check that she could use to pay off her credit card debt. But at their core, these allegations and arguments fundamentally misunderstand the operation of a line of credit in the context of a consumer credit card, and rely on Harp's mistaken belief that by opening her credit card account, the *credit union* was accruing debt owed to *her. See, e.g.*, Pl.'s Opp. at 7, ECF 15 ("The $5,000 applied for by the Plaintiff was delivered by the Defendant from the notes in the dividend bearing account owned by the Plaintiff to a credit device ending with the digits 5677 held by the Plaintiff."); *id.* at 11 (referring to her application to open her account with PFFCU as a "blank check"); *id.* at 12 (noting that Harp waited to "receive the credits of $5,000 on the credit device" and seeming to imply that by the interest accruing on her credit balance belonged to her, rather than PFFCU); *id.* at 14 ("The Bank borrowed Plaintiff's security which was the application, gave security of a bill for allowing them to borrow the initial security that generates interest, and now have to pay the interest in the check to the Plaintiff's account for set-off.").

**\*3** Second, Ms. Harp seems to suggest that PFFCU violated its contractual obligations to accept and deposit all legal tender presented by its members, including Harp. But per the terms of Harp's account agreement, PFFCU has discretion to refuse any financial instrument presented for deposit:

> You may make deposits to Your Account using any method available from Us, including deposits in person, by mail or electronic means. *We have the right to refuse to accept any check*

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 4 of 67 PageID
#: 254
Harp v. Police and Fire Federal Credit Union, Not Reported in Fed. Supp. (2023)

*or instrument for deposit at Our sole
discretion.* If You deposit an item and
it is returned unpaid, We will debit
Your Account for the amount of the
item and charge You a fee. You will be
liable to Us for the amount of any item
You deposit which is returned unpaid,
and in addition, will be responsible for
any of Our costs and expenses incurred
in the collection of such returned
item from You, including reasonable
attorney's fees.

Ex. A at 21 (emphasis added).

Moreover, even if PFFCU lacked such discretion, it is clear
from the Complaint's exhibits that Harp's "bill of exchange"
was not valid legal tender. In other circumstances, a bill of
exchange is certainly a valid financial instrument, often used
to keep track of debt in international trade. *See Nikimiha
Sec. Ltd. v. Trend Grp. Ltd.*, 646 F. Supp. 1211, 1216 (E.D.
Pa. 1986) (defendant entered into agreement establishing a
700,000 Pounds Sterling line of credit for the financing of
imports and purchases, and provided that the resulting debt
would be evidenced by bills of exchange). But here, rather
than a legally enforceable document noting an existing debt
that PFFCU owed to her, Harp simply handwrote an array of
financial buzzwords on her credit card statement and tried to
pass this off to PFFCU as valid legal tender for *her* credit
card debt. This is not a valid financial instrument, and other
courts nationwide have rejected such "frivolous" attempts
to satisfy a debt through a fictitious "bill of exchange."
*See Hennis v. Trustmark Bank*, No. 21-cv-20, 2010 WL
1904860, at *5 (S.D. Miss. May 10, 2010) (collecting cases
and noting that "[f]rom coast to coast, claims that debts
have been paid under the redemption theory by the plaintiffs'
issuance of "bills of exchange" have been dismissed as
frivolous"); *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d
753, 760 (W.D. Va. 2007) (discussing the "revisionist legal
history and conspiracy theory" basis of claims like Harp's,
whereby someone attempts to pass off a "bill of exchange" as
a legitimate form of payment to satisfy a debt). [2]

Harp therefore fails to state a breach of contract claim, and
this claim will be dismissed.

**B. Harp fails to state a claim for breach of trust.**

Because Harp alleges that PFFCU failed to perform its
obligations under an alleged "trust contract," Harp also
brings a claim for breach of trust. But a breach of trust
claim generally arises under circumstances where a trustee
mishandles property or assets that are placed with a trust. *See*
20 Pa. C.S. § 7781 (defining breach of trust as "violation by
a trustee of a duty the trustee owes to a beneficiary"). Cases
involving a breach of trust claim thus involve fundamentally
different factual scenarios than the circumstances present
here. *See, e.g., In re Walker*, 208 A.3d 472, 477-78 (Pa.
Super. Ct. 2019) (analyzing breach of trust claim where
plaintiffs alleged that trustee breached duty by making certain
investments with trust assets). Indeed, Harp does not in any
way establish the existence of a trust nor any details to support
the allegation that PFFCU would be the trustee of such a
trust, beyond the statement that she had a "trust contract" with
PFFCU. This claim will therefore be dismissed.

**C. Harp fails to state a claim for breach of fiduciary
duty.**

*4 Harp further claims that PFFCU breached its fiduciary
duties to her as a member. Preliminarily, courts generally
do not find that a bank has a fiduciary relationship with its
members under Pennsylvania law. *See Deckard v. Emory*, No.
17-cv-5182, 2020 WL 3960421, at *5 (E.D. Pa. July 13, 2020)
(DuBois, J.) (cleaned up) (stating that "as a matter of law,
a bank/customer relationship is not a fiduciary one"); *First
Fed. Sav. & Loan Ass'n of Hazleton v. Off. of State Treasurer,
Unclaimed Prop. Rev. Comm.*, 669 A.2d 914, 915 (Pa. 1995)
(holding that it is "well established that the legal relationship
between a financial institution and its depositors is based on
contract"). But even if PFFCU has a fiduciary duty to her as a
member, Harp's claim here is solely based on PFFCU's refusal
to accept her "legal tender." As discussed, however, Harp's
"bill of exchange" is not a valid financial instrument, and this
claim will also be dismissed.

**D. Harp does not plead a claim for "security fraud."**

Ms. Harp also claims that PFFCU engaged in "security
fraud" by failing to accept her "security" – her supposed
bill of exchange. Preliminarily, I note that any allegations
of fraud must be pled "with particularity" under Rule 9(b)
of the Federal Rules of Civil Procedure, and Harp's vague
and confusing allegations in her Complaint fail to satisfy
this requirement. But more broadly, it is unclear what type
of claim Harp seeks to advance as "security fraud." To
the extent that she is invoking a securities fraud claim
under the Securities Exchange Act of 1934, claims under

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 5 of 67 PageID
#: 255
Harp v. Police and Fire Federal Credit Union, Not Reported in Fed. Supp. (2023)

that statute deal with wholly different circumstances than those present here. The most common cause of action for securities fraud is brought pursuant to Section 10(b) of the Act, codified at 15 U.S.C. § 78j, and involves deceptive conduct connected to the purchase or sale of a "security." The allegations in Harp's complaint – which largely revolve around PFFCU's refusal to accept Harp's alleged "legal tender" – are fundamentally different from the conduct that gives rise to a claim for securities fraud under this statute. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (identifying elements of a securities fraud claim). Ms. Harp's "security fraud" claim is therefore dismissed.

**E. Harp cannot sue under the Federal Reserve Act.**
Finally, to the extent that Harp seeks to assert a claim under the Federal Reserve Act, she lacks a cause of action to do so. In her Complaint, Harp seems to suggest that PFFCU was violating Section 16 of the Federal Reserve Act, 12 U.S.C. §§ 411-21, which governs the issuance and redemption of Federal Reserve notes. As a result, Harp alleges that PFFCU is subject to penalties under Section 29 of the Federal Reserve Act, 12 U.S.C. § 504, which imposes penalties on banks for

an array of misconduct. But the imposition of civil penalties under Section 29 is carried out by federal officials, and private individuals do not have a private right of action to enforce Section 29 of the Federal Reserve Act. *Benz-Puente v. Truist Fin.*, No. 23-cv-2682, 2023 WL 4763998, at *2 (E.D. Pa. July 26, 2023) (Smith, J.) (compiling cases supporting finding that Section 29 "does not create a private right of action"). Harp therefore cannot sue under the identified provisions of the Federal Reserve Act and thus fails to state a claim under that statute.

**IV. Conclusion**
For the reasons set forth above, Defendant's Motion will be granted. Because nothing in the Complaint or response to this Motion shows any conceivable factual basis for a claim, amendment would be futile. *Grayson*, 293 F.3d at 108. An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5152625

---

## Footnotes

1    There is no Act of Congress with this title, though a "Bills of Exchange Act" was passed in Pennsylvania in 1821. *See McPherson v. Tompkins Tr. Co.*, 792 F. App'x 142, 143 (2d Cir. 2020) (briefly discussing statute).

2    In her opposition brief, Harp for the first time claims that this "bill of exchange" was "enforceable as a check." Pl.'s Opp. at 7. But it is "axiomatic" that a complaint may not be amended by briefing in opposition to a motion to dismiss, *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), and regardless, the document she claims was a "check" is clearly her credit card statement and contains insufficient information for PFFCU to have cashed a check to cover her credit card debt – such as the account number that the funds would be pulled from.

---

**End of Document**                               © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 150734
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

Najah CHAVIS, Plaintiff

v.

T-MOBILE US, INC., Defendant

A-23-CV-1513-DII-SH
|
Signed January 11, 2024

**Attorneys and Law Firms**

Najah Chavis, Leander, TX, Pro Se.

## ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

SUSAN HIGHTOWER, UNITED STATES MAGISTRATE JUDGE

**\*1 TO: THE UNITED STATES DISTRICT COURT**

Before the Court are Plaintiff Najah Chavis's Complaint (Dkt. 1) and Application to Proceed *In Forma Pauperis* and Financial Affidavit in Support (Dkt. 2), both filed December 13, 2023. The District Court referred this case to this Magistrate Judge for disposition of the Application and Report and Recommendation as to whether the case should be dismissed as frivolous under 28 U.S.C. 1915(e) pursuant to Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas and the Court Docket Management Standing Order for United States District Judge Robert Pitman.

## I. *In Forma Pauperis* Status

After reviewing Plaintiff's Application, the Court finds that she is indigent. Accordingly, the Court **HEREBY GRANTS** Plaintiff *in forma pauperis* status. This indigent status is granted subject to a later determination that the action should be dismissed if the allegation of poverty is untrue or the action is found frivolous or malicious pursuant to 28 U.S.C. § 1915(e). Plaintiff is further advised that although she has been granted leave to proceed *in forma pauperis*, a Court may impose costs of court at the conclusion of this lawsuit, as in

other cases. *Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994).

As stated below, the Court has conducted a § 1915(e) review of the claims made in the Complaint and recommends that Plaintiff's claims should be dismissed under 28 U.S.C. § 1915(e). Therefore, service on Defendant should be withheld pending the District Court's review of the recommendations made in this report. If the District Court declines to adopt the recommendations, service should be issued on Defendant at that time.

## II. Section 1915(e)(2) Frivolousness Review

### A. Standard of Review

Because Plaintiff has been granted leave to proceed *in forma pauperis*, the Court is required by standing order to review his Complaint under § 1915(e)(2). A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing "fanciful," "fantastic," and "delusional" allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). "Some claims are so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy. Federal courts lack power to entertain these wholly insubstantial and frivolous claims." *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019) (cleaned up).

**\*2** A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for

failure to state a claim, a plaintiff must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice to state a claim on which relief may be granted. *Id.*

While pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the plaintiff's *pro se* status offers "no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### B. Plaintiff's Complaint Should Be Dismissed under § 1915(e)(2)

Plaintiff alleges that on September 4, 2021, she entered into a contract with Defendant T-Mobile US, Inc. in which she agreed "to provide payment for services rendered by T-Mobile." Dkt. 1 ¶ 6. Plaintiff alleges that Defendant "sent plaintiff monthly bill coupons, which was believed to be payments plaintiff owed to them. Unbeknownst to plaintiff, these bill coupons were dividend payments from the revenue generated from plaintiff's securities." *Id.* ¶ 7. Plaintiff alleges that she subsequently "became aware of the proper way to tender payments with a bill of exchange, at which point plaintiff attempted to tender payments in this manner pursuant to The Bill of Exchange Act." *Id.* ¶ 8. Plaintiff contends that Defendant refused to accept the "bill of exchange" as payment and continues to withhold the equity and interest owed to Plaintiff in violation of their contract. Plaintiff alleges breach of contract and securities fraud in violation of "The Bill of Exchange Act."

The Court recommends that Plaintiff's lawsuit should be dismissed as frivolous under § 1915(e)(2) because the Court lacks subject matter jurisdiction over this case and Plaintiff fails to assert any nonfrivolous claims.

### 1. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that "aris[e] under" federal law, § 1331, and cases in which the amount

in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a). These jurisdictional grants are known as "federal-question jurisdiction" and "diversity jurisdiction," respectively.

Plaintiff invokes this Court's diversity jurisdiction under § 1332(a), alleging that "the parties are citizens of different states and the amount in controversy exceeds the jurisdictional threshold." Dkt. 1 ¶ 4. But Plaintiff's allegations do not allege damages in excess of $75,000; rather, Plaintiff alleges that Defendant owes her $11,093.52 in interest, far short of the jurisdictional minimum. [1] The Court therefore does not have subject matter jurisdiction over this lawsuit.

### 2. Frivolous Claims

**\*3** Even if the Court did have subject matter jurisdiction, Plaintiff fails to allege any nonfrivolous claims. Her claims relate to the so-called "sovereign citizenship" theory, which courts have found to be legally frivolous. As one court explained:

> So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States citizens. They claim as grounds for this belief the Uniform Commercial Code, maritime and admiralty law, the idea of strawman trusts, and Bible verses. Sovereign citizens often attempt to use these beliefs to "avoid paying taxes, extinguish debts, and derail criminal proceedings." However, these citizens cannot claim to be sovereigns independent of governmental authority while they simultaneously ask the judicial system to grant them recourse.

*Westfall v. Davis*, No. 7:18-CV-00023-O-BP, 2018 WL 2422058, at *2 (N.D. Tex. May 4, 2018), *R. & R. adopted*, 2018 WL 2414794 (N.D. Tex. May 29, 2018) (internal citations omitted).

Relevant here, a belief of some "sovereign citizens" is that the United States government created individual treasury accounts for each United States citizen in the 1930s. *In re Dominick*, No. 20-MC-80001-DMR, 2020 WL 1173505, at *2 (N.D. Cal. Feb. 20, 2020), *R. & R. adopted*, 2020 WL 1171082 (N.D. Cal. Mar. 11, 2020). The purpose of the trust accounts is apparently to pledge United States citizens and their property as security for the national debt in exchange for the benefits of citizenship. *Id.* The theory holds that an individual may revoke the citizenship contract imposed on

them at birth and thus regain the profits of their individual federal trust accounts. *Id.*

Plaintiff alleges that Defendant's refusal to recognize her endorsed "bills of exchange" as valid legal payments under the contract violates "The Bill of Exchange Act." Dkt. 1 ¶ 6. This claim fails because there is no federal statute entitled The Bill of Exchange Act. While there are foreign statutes entitled Bill of Exchange Acts, those laws do not apply to commercial transactions in the United States between United States citizens. *See Payne v. Spectrum,* No. SA-23-CV-01313-XR, 2023 WL 8681199, at *2 (W.D. Tex. Dec. 15, 2023) (dismissing as frivolous claim under "Bill of Exchange Act" because "[t]he Bill of Exchange Act of 1882 is a Canadian statute with no application here"); *United States Des Rochers v. Moynihan,* No. A-16-CV-560, 2016 WL 11584833, at * 2 (W.D. Tex. May 16, 2016) (dismissing as legally frivolous a complaint alleging claim under English Bill of Exchange Act of 1882).

Any potential securities fraud claim under the Securities Act of 1933, 15 U.S.C. § 77q, would also fail. To state a claim for securities fraud under § 77q, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter—a "wrongful state of mind"; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a causal connection between the material misrepresentation and the loss. *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.,* 58 F.4th 195, 206 (5th Cir. 2023). A complaint alleging a securities fraud also must meet the heightened pleading requirements for fraud claims under Federal Rule of Civil Procedure 9(b), which requires that the complaint "state all allegations of fraud with particularity." *Id.* Plaintiff does not allege that Defendant sold or attempted to sell her a security, and Plaintiff's allegations appear to concern a consumer agreement, not the sale or purchase of a security. In addition, Plaintiff fails to meet the heightened pleading requirements under Rule 9(b). Accordingly, she fails to allege a plausible fraud claim under the Securities Act.

**\*4** Plaintiff also fails to allege a plausible breach of contract claim under Texas law. To prevail on a breach of contract claim under Texas law, a plaintiff must sufficiently allege that: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *USAA Tex. Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 502 n. 21 (Tex. 2018).

Plaintiff fails to allege facts showing that Defendant breached the contract or that she satisfied her obligations under the contract.

Plaintiff alleges that she satisfied her payment obligations under the contract by sending Defendant a "bill of exchange" as payment. But courts have uniformly found that a "bill of exchange" created by a private citizen cannot be used as legal tender in the United States. [2]

## III. ORDER AND RECOMMENDATION

The Court **GRANTS** Plaintiff's Application to Proceed *In Forma Pauperis* and Financial Affidavit in Support (Dkt. 2).

This Magistrate Judge **RECOMMENDS** that the District Court **DISMISS with prejudice** Najah Chavis's lawsuit as frivolous under 28 U.S.C. § 1915(e)(2).

The Court **FURTHER ORDERS** the Clerk to **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the United States District Court.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**All Citations**

Slip Copy, 2024 WL 150734

---

## Footnotes

1    Plaintiff also asks the Court to impose a monetary penalty of $1 million against Defendant under Section 29 of the Federal Reserve Act. But that statute does not provide for a private right of action. *See Payne v. Spectrum*, No. SA-23-CV-01313-XR, 2023 WL 8681199, at *2 (W.D. Tex. Dec. 15, 2023) ("Neither Section 16 nor Section 29 [of Federal Reserve Act] provide Plaintiff with a private right of action and therefore cannot serve as a basis for federal question jurisdiction."). This amount cannot be used to calculate the amount in controversy.

2    *See Bey v. Bray*, No. 4:22-CV-933-SDJ, 2023 WL 5987393, at *5 n.4 (E.D. Tex. Aug. 1, 2023) (holding that plaintiff did not satisfy his obligations under loan agreement by sending bank an "International Bill of Exchange" as payment), *R. & R. adopted*, 2023 WL 6162742 (E.D. Tex. Sept. 21, 2023); *Charles v. Castro*, No. 5:20-CV-00042-RWS, 2020 WL 5670110, at *2 (E.D. Tex. Sept. 24, 2020) ("Plaintiff's purported 'bill of exchange' is a document of his own creation and has no value, and thus cannot be used to satisfy the statutory filing fee obligation."); *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Va. 2007) ("Plaintiff's claim that her Bill of Exchange is a legitimate negotiable instrument is clearly nonsense in almost every detail."), *aff'd*, 282 F. App'x 260 (4th Cir. 2008); *see also* 31 U.S.C. § 5103 ("United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts.").

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6368330
Only the Westlaw citation is currently available.
United States District Court, N.D.
Mississippi, Oxford Division.

Debrayshia DOUGLAS, Plaintiff
v.
AUTONATION HONDA
COVINGTON PIKE, et al., Defendants

CIVIL ACTION NO. 3:23-CV-340-MPM-RP
|
Signed September 12, 2023

**Attorneys and Law Firms**

Debrayshia Douglas, Southaven, MS, Pro Se.

### REPORT AND RECOMMENDATION

Roy Percy, UNITED STATES MAGISTRATE JUDGE

 **\*1** The plaintiff Debrayshia Douglas has filed this *pro se* action seeking the recovery of damages and other relief against AutoNation Honda Covington Pike ("AutoNation"), American Honda Finance Corp, and United Auto Recovery for forgery, securities fraud, breach of contract, and defamation. The complaint is signed both by the plaintiff Debrayshia Douglas and by her purported "agent" named – quite curiously -- Douglas Debrayshia. Because the plaintiff is seeking leave to proceed *in forma pauperis*, her complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for the *sua sponte* dismissal of the complaint if the court finds it is "frivolous or malicious" or if it "fails to state a claim on which relief may be granted." For the reasons below, the undersigned magistrate judge recommends that the plaintiff's complaint be dismissed on both grounds.

A claim is frivolous if it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict

them." *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In her complaint in this case, the plaintiff states grievances against the defendants related to the repossession of her automobile for non-payment of her monthly auto payments. The plaintiff alleges that she submitted to AutoNation a credit application whereby she "extended credit as collateral to [AutoNation] in return for a 2022 Honda Accord Sedan." A copy of the referenced application is attached to the complaint, and contrary to the plaintiff's allegations, it is simply an application by the plaintiff for credit to finance the purchase of a vehicle from AutoNation. ECF #1-1. The application extends no credit to AutoNation as the plaintiff alleges.

According to the complaint, AutoNation forwarded the plaintiff's credit application to American Honda Finance, which produced a "fraudulent second promissory note" that AutoNation had the plaintiff sign. A copy of the referenced "promissory note" is attached to the complaint, and it is simply a retail installment contract wherein the plaintiff agreed to make 75 monthly payments in the amount of $759.92 for the purchase of a 2022 Honda Accord, with AutoNation's interest in the contract assigned to American Honda Finance. ECF #1-2. [1]

 **\*2** Thereafter, the complaint alleges, the plaintiff sent American Honda Finance multiple packets of documents containing "a negotiable instrument with endorsement," and "[t]herefore Plaintiff is not obligated to pay alleged debt and it is discharged." Copies of the referenced packets are attached to the complaint, and the referenced "negotiable instruments with endorsement" are simply copies of the plaintiff's monthly statements from American Honda Finance showing past due amounts and showing total payoff amounts, and on which statements someone – presumably the plaintiff – has hand-written the words, "pay to bearer" followed by sums equal to the payoff amounts reflected on the respective statements (approximately $38,500). ECF #1-3 and #1-4.

According to the complaint, the plaintiff then received from American Honda Finance a "false payoff response," a copy of which is attached to the complaint. In the communication, American Honda Finance notified plaintiff that the documents

she submitted "have no legal effect, are not a valid form of payment, and do not discharge the debt you owe to ACFC." ECF #1-5. The plaintiff then sent American Honda Finance a letter, a copy of which is attached to the complaint, stating "it has come to my attention that I have been making payments in error," stating her credit application "served as an asset, which satisfied the monthly obligation," and demanding that "all credits be returned on all remittances/coupons at the inception of the account." ECF #1-6. Thereafter, according to the complaint, American Honda Finance hired United Auto Recovery "as an accomplice to come and unlawfully reposes [sic] Plaintiffs 22 Honda Accord," which the complaint alleges "was rightfully hers since Plaintiffs extension of credit financed the aforementioned vehicle." The complaint also alleges that "the alleged debt is an obligation of the United States," and that "no such debt ever existed since credit was extended and used to pay for the vehicle."

According to the complaint, the defendants repeatedly violated the plaintiff's "unalienable rights including Life Liberty and Pursuit of Happiness," and in her demand for relief, the plaintiff requests judgment against the defendants in the total amount of $1,000,888.

The undersigned finds that the plaintiff's complaint is delusional and irrational and fails to state a claim that is plausible on its face. What the plaintiff characterizes as a "fraudulent promissory note" is in reality a retail installment contract to make monthly payments for the purchase of an automobile. The plaintiff repeatedly attempted to submit as payment of the total payoff amount "negotiable instruments with endorsement," which in reality were simply marked-up copies of her monthly statements. When it became clear the plaintiff had no intention of making her car payments, the car was repossessed. The plaintiff's claims of forgery, securities fraud, defamation and breach of contract are not grounded in reality and have no arguable basis in fact, and the undersigned RECOMMENDS that the plaintiff's complaint be DISMISSED with prejudice because it is frivolous and fails to state a claim on which relief may be granted.

Federal courts have the authority to levy sanctions against *pro se* litigants and attorneys who violate Rule 11(b). FED.R.CIV.P. 11(c); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003) (holding violation of any provision of *Rule 11(b)* justifies sanctions). Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993). *Pro se* litigants have

"no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). "No one, rich or poor, is entitled to abuse the judicial process. Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Green v. Carlson*, 649 F.2d 285, 287 (5th Cir. 1981) (denying all of petitioner's petitions and motions, and prohibiting filing of further petitions or complaints accompanied by applications to proceed *in forma pauperis*, as sanction for petitioner's filing multiple frivolous petitions) (internal citations omitted).

**\*3** The undersigned recently recommended the dismissal of three similarly frivolous cases filed by the plaintiff. The first case, *Debrayshia Douglas v. Marathon Management LLC, et al.*, No. 3:23cv323-MPM-RP, seeks the recovery of damages against the plaintiff's landlord and the law firm retained to collect her unpaid rent. The second case, *Debrayshia Douglas v. AT&T Services, Inc.*, No. 3:23cv328-MPM-RP, seeks the recovery of damages against AT&T for terminating her cell phone service and attempting to collect her unpaid cell phone bill. The third case, *Debrayshia Douglas v. Entergy*, No. 3:23cv329-MPM-RP, seeks recovery of damages against Entergy for terminating her electricity service and attempting to collect her unpaid utility bill. The undersigned RECOMMENDS that if any two or more other cases filed by the plaintiff are dismissed as frivolous prior to the dismissal of this case, then this case be considered the "third strike" for purposes of sanctions. It is recommended that sanctions be imposed against the plaintiff for repeatedly violating Federal Rule of Civil Procedure 11(b) and that she be barred from further filings.

Plaintiff is referred to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and L. U. Civ. R. 72(a)(3) for the appropriate procedure in the event she desires to file an objection to these findings and recommendations. Objections are required to be (1) specific, (2) in writing, and (3) filed within fourteen (14) days of this date. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within 14 days after being served with a copy bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1998), and (2) appellate review, except on grounds of plain error, of unobjected-to proposed factual

findings and legal conclusions accept by the district court...."
*Douglass v. United States Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc) (citations omitted).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6368330

---

## Footnotes

1    Although alleging that AutoNation had her sign the document, the plaintiff also alleges nonetheless that her signature on it is forged.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6326659
Only the Westlaw citation is currently available.
United States District Court, N.D.
Mississippi, Oxford Division.

Debraysha DOUGLAS, Plaintiff
v.
AUTONATION HONDA
COVINGTON PIKE, et al., Defendants

CAUSE NO. 3:23-CV-340-SA-RP
|
Signed September 28, 2023

**Attorneys and Law Firms**

Debrayshia Douglas, Southaven, MS, Pro Se.

ORDER ADOPTING REPORT
AND RECOMMENDATION

Sharion Aycock, UNITED STATES DISTRICT JUDGE

 **\*1** On August 30, 2023, Debraysha Douglas filed her Complaint [1] against Autonation Honda Covington Pike, American Honda Finance Corp., and United Auto Recovery. In her Complaint [1], she raises allegations of forgery, securities fraud, breach of contract, and defamation. Douglas also filed a Motion [2] seeking to proceed *in forma pauperis*.

On September 12, 2023, Magistrate Judge Percy issued a Report and Recommendation [4] recommending, pursuant to the screening procedure under 28 U.S.C. § 1915(e)(2), that the Complaint [1] be dismissed as frivolous. The reasons for that recommendation are set forth in the Report and Recommendation [4]. Despite being given an opportunity to object to the dismissal recommendation, Douglas has not done so, and her deadline to do so has now passed.

"With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record." *Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 828 (E.D. Tex. 2009) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)).

The Court has reviewed the Report Recommendation [4] and the record as a whole. Having done so, the Court agrees with Magistrate Judge Percy's recommendation. The claims asserted in Douglas' Complaint [1] are indeed frivolous. The Complaint [1] is hereby DISMISSED *with prejudice*.

For the reasons set forth above, the Motion to Proceed in Forma Pauperis [2] is DENIED. The Report and Recommendation [4] is ADOPTED IN FULL. Douglas' claims are DISMISSED *with prejudice*. This CASE is CLOSED.

SO ORDERED, this the 28th day of September, 2023.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6326659

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1506394
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ezekiel FREDERICK, Daniel I. Frederick,
and Aaron T. Frederick, all pro se, Plaintiffs,

v.

WELLS FARGO HOME MORTGAGE, Financial
Equities Mortgage Bankers, New Penn Financial, LLC,
Jeff Doocy, Tom Marino, and Merissa Serna, Defendants.

No. 13–CV–7364 (DLI)(LB).
|
Signed March 30, 2015.

**Attorneys and Law Firms**

Ezekiel Frederick, New York, NY, pro se.

Aaron T. Frederick, Brooklyn, NY, pro se.

Daniel I Frederick, Brooklyn, NY, pro se.

Allison J. Schoenthal, Brian S. McGrath, Lisa Fried, Patrick Joseph Dempsey, Hogan Lovels US LLP, David S. Versfelt, Kirkpatrick Lockport Preston Gates Ellis LLP, New York, NY, Daniel Joseph Herrera, The Law Offices of Michael D. Solomon, Levittown, NY, Andrew Crandell Glass, Kirkpatrick & Lockhart Nicholson Graham LLP, Roger L. Smerage, K&L Gates LLP, Boston, MA, for Defendants.

*OPINION AND ORDER*

DORA L. IRIZARRY, District Judge.

**\*1** *Pro se* [1] plaintiffs Ezekiel Frederick, Daniel I. Frederick, and Aaron T. Frederick (collectively, "Plaintiffs") brought this against defendants Wells Fargo Home Mortgage ("WF"), Financial Equities Mortgage Bankers ("FEM"), and New Penn Financial, LLC ("NPF") (collectively, "Corporate Defendants"), and Jeff Doocy, Tom Marino, and Merissa Serna (collectively, "Individual Defendants") (collectively with the Corporate Defendants, "Defendants"), asserting twenty-three causes of action pertaining to the Corporate Defendants' alleged denial of mortgage loan applications under the Federal Housing Administration's 203(k) program. Defendants jointly moved to dismiss Plaintiffs' action

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiffs filed a motion for "dismissal," but which was actually, inter alia, a motion for judgment on the pleadings and to strike various portions of Defendants' motion. For the reasons below, Defendants' motion is granted, and Plaintiffs' motion is denied.

**BACKGROUND**

In their complaint, Plaintiffs claim that the Corporate Defendants engaged in a concerted effort, through their employees, the Individual Defendants, to deny wrongfully Plaintiffs' mortgage loans under the Federal Housing Administration's 203(k) program. (*See generally* Second Amended Complaint ("SAC."), Docket Entry No. 23.) More specifically, Plaintiffs allege that the Corporate Defendants "knowingly and willfully designed, implemented and maintained facially neutral Fair Housing Act ("FHA") underwriting policy overlays that effectively robbed [Plaintiffs] of their lawful entitlement to rental income credits[,] making FHA mortgage loans and home ownership unavailable to otherwise qualified Plaintiffs, in furtherance of a racially charged overarching scheme and conspiracy." (*Id.* at 15.)

Plaintiffs have brought these same claims twice before. On February 3, 2012, Plaintiffs simultaneously filed (1) complaints with the New York State Division of Human Rights ("DHR") and the United States Department of Housing and Urban Development ("HUD"), alleging violations of Article 15 of the New York Executive Law and the federal Fair Housing Act ("FHA") as to each Corporate Defendant (the "Administrative Complaints"); and (2) a civil complaint in this Court (Docket No. 12–cv–00553), alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"); 42 U.S.C. §§ 1981, 1982, 1985, and 1988; the FHA; the Equal Credit Opportunity Act ("ECOA"); and the New York State Consumer Fraud Act; as well as common law claims for fraud, breach of fiduciary duty, conspiracy, and negligence (the "2012 Action"). Plaintiff Ezekiel Frederick was the only named plaintiff in the 2012 Action, but (1) he purported to file the complaint in that matter on behalf of a putative class that included Plaintiffs Daniel I. Frederick and Aaron T. Frederick, and (2) the purported transactions and occurrences on which the complaint in that matter were based are the same as those that allegedly give rise to the SAC.

(*See generally* Complaint, Docket No. 12–cv–00553, Docket Entry No. 1.) HUD referred the Administrative Complaints to the DHR, which issued a "Determination and Order after Investigation" ("Determination and Order") as to each Corporate Defendant, finding that there was no probable cause to believe discrimination had occurred. Plaintiffs did not exercise their right to appeal via a petition to the New York Supreme Court. (*See* Declaration of Patrick J. Dempsey, Docket Entry No. 45, Exhibits 1–3.) [2] The Court dismissed the 2012 Action pursuant to 15 U.S.C. § 1915(e)(2)(B)'s frivolousness review, concluding that Plaintiffs had failed to state claim for relief. (*See* Memorandum and Order, Docket No. 12–cv–00553, Docket No. 6.)

**\*2** On June 11, 2014, Plaintiffs filed the SAC, again alleging similar violations of RICO; Sections 1981, 1982, 1985, and 1986 of Title 42 of the U.S.Code, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d, *et seq.*); the FHA; the ECOA; and the New York Consumer Fraud Act; as well as common law claims for fraud, breach of fiduciary duty, conspiracy, and negligence. Plaintiffs assert that from September 2011 to January 2012, they engaged in "extensive discussions" with, and submissions to, Defendants regarding prospective loans for the purchase of three and four-unit properties located in Brooklyn, Jamaica, Woodhaven, and Far Rockaway, New York. (SAC at 1–2.) Plaintiffs further claim, that upon learning of their race and the racial composition of the neighborhoods where the properties were located, Defendants engaged in a conspiracy to deny Plaintiffs, as African–Caribbean Americans, of their right to these loans and the associated FHA 203(k) rental income credits associated with those loans. (*Id.* at 1–2.) For similar reasons underlying the Court's dismissal of the 2012 Action, the SAC is devoid of the factual allegations required to state a claim and, therefore is dismissed with prejudice.

## DISCUSSION

### I. Motion to Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal,* 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly,* 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g., Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007).

## II. Plaintiffs Fail to State a Claim Under the Anti–Discrimination Statutes

**\*3** Plaintiffs assert their causes of action under myriad federal and state anti-discrimination laws, namely the FHA, the ECOA, Sections 1981, 1982, 1985, and 1986 of Title 42 of the U.S.Code, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d, *et seq.*), and New York Executive Law § 297. Plaintiffs fail to adequately plead any of these claims.

### a. Failure to Allege Intentional Discrimination Bars Plaintiffs' Civil Rights Claims

Plaintiffs have failed to allege sufficiently that Defendants intentionally discriminated against Plaintiffs, which is fatal to their civil rights claims. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.,* make and enforce

contracts ... )." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam).

To state a claim for relief under section 1982, a plaintiff must allege that he was intentionally "deprived of a property right" because of his race. *Grimes v. Fremont Gen. Corp.,* 785 F.Supp.2d 269, 295 (S.D.N.Y.2011).

"Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protections of the laws." *Barkley v. Olympia Mortgage, Co.,* 2007 WL 2437810, at *10 (E.D.N.Y. Aug.22, 2007). The elements of a § 1985(3) claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian,* 7 F.3d at 1087. "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (citation and internal quotation marks omitted). "[A] § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

"To state a claim under Title VI, a plaintiff must plead, among other things, 'that the defendant discriminated against him on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions.' " *Williams v. City Univ. of N.Y.,* 2011 WL 6934755, at *5 (E.D.N.Y. Dec.30, 2011) (quoting *Tolbert v. Queens College,* 242 F.3d 58, 69 (2d Cir.2001)).

In short, to state a claim for violations of the civil rights statutes set out in Sections 1981, 1982, and 1985 of Title 42 of the U.S.Code, a plaintiff must "plead facts showing that the defendants acted with discriminatory animus," that is, an intent to discriminate. *Morales v. City of N.Y.,* 752 F.3d 234, 238 (2d Cir.2014) (affirming dismissal of Section 1981 and 1985 claims); *accord McKnight v. Middleton,* 699 F.Supp.2d 507, 529, 531 (E.D.N.Y.2010) (dismissing Section 1981, 1982, 1985, and 1986 claims). Similarly, Title VI "prohibits only intentional discrimination." *See Alexander v. Sandoval,* 532 U.S. 275, 279–81, 288–93, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *see also Kajoshaj v. N.Y. City Dep't of Ed.,* 543 F. App'x 11, 14–15 (2d Cir.2013) (affirming dismissal of Title VI claim where plaintiff failed to allege intentional discrimination).

*4  Here, Plaintiffs' allegations that they suffered unconstitutional discrimination and their claims of a conspiracy to deprive them of constitutional rights are vague and conclusory. Plaintiffs fail to allege any facts adequate to show or raise a plausible inference of discriminatory intent on the part of Defendants or of a conspiracy in violation of 42 U.S.C. §§ 1981, 1982, 1985, and 1986. *See Brito v. Arthur,* 403 Fed. Appx. 620, 621 (2d Cir.2010) (summary order) (affirming dismissal of §§ 1985(3) and 1986 claims where, "[a]side from conclusory assertions, [plaintiff] failed to provide any factual allegations that [defendants] engaged in a conspiracy, or that they were motivated by unlawful discriminatory intent or animus"); *see also Sajimi v. City of N.Y.,* 2011 WL 135004, at *7 (E.D.N.Y. Jan.13, 2011) (" '[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss .' " (quoting *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997))). Plaintiffs' failure to plead adequately that Defendants were motivated by a discriminatory animus is similarly fatal to their Title VI claim. *See Williams,* 2011 WL 6934755 at *5 (dismissing a 42 U.S.C. § 2000d claim where it did "not contain any factual allegation sufficient to allow a plausible inference that the [defendant's] actions were motivated by discriminatory animus"). Accordingly, Plaintiffs' Title 42 claims are dismissed for failure to state a claim upon which relief may be granted.[3]

### b. Plaintiffs' NYHRL Claim Is Barred by the Doctrine of Election of Remedies

Plaintiffs purport to assert claims under New York Executive Law § 297, but do not provide any further discussion of these claims. In order to liberally construe Plaintiffs' *pro se* complaint, the Court will consider Plaintiffs to be asserting their strongest possible claims under New York State Human Rights Law ("NYHRL"). NYHRL, which creates a private right of action for unlawful discriminatory practices, requires an allegedly aggrieved person to elect between filing a civil suit or an administrative complaint, with the election of one remedy barring the other. This "election of remedies" provision provides that an individual may bring suit in court "unless such person had filed a complaint ... with any local commission on human rights." N.Y. Exec. Law § 297(9). Here, Plaintiffs' filing of the Administrative Complaints, which were adjudicated and included the same alleged acts of discrimination that Plaintiffs assert in the instant action, constitutes the election of a remedy that now bars this Court from adjudicating the same claims. *See id.; see also*

*Moodie v. Fed. Reserve Bank of New York,* 58 F.3d 879, 884 (2d Cir.1995) (holding that adjudication by DHR "poses an insuperable jurisdictional bar" to federal litigation of NYHRL claim). Because the Court lacks subject matter jurisdiction over Plaintiffs' NYHRL claims, these claims are dismissed.

### III. Plaintiffs Fail to Assert a Cause of Action Under the FHA or the ECOA

**\*5** Plaintiffs assert claims under both the FHA and the ECOA. Section 3604(b) of the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Section 3605(a) makes it unlawful for anyone "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." *Id.* § 3605(a). A "[r]esidential real estate-related transaction" means "(1) [t]he making or purchasing of loans or providing other financing assistance ... for purchasing ... a dwelling" or "(2) [t]he selling, brokering, or appraising of residential real property." *Id.* § 3605(b). FHA claims may be prosecuted on the basis of disparate treatment, *i.e.,* that plaintiffs were treated differently because of their membership in a protected class, or on the basis of disparate impact, *i.e.,* that the defendant's practices have a proportionally greater negative impact on minority populations. *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 425 (2d Cir.1995).

The ECOA states, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1) (2000). "The ECOA provides for a private cause of action based on disparate impact or disparate treatment." 15 U.S.C. § 1691e(c) (2000); *see also Powell,* 310 F.Supp.2d 481, 487 (N.D.N.Y.2004) (citing *Jones v. Ford Motor Credit Co.,* 2002 WL 88431, at *2 (S.D.N.Y. Jan.22, 2002), *rev'd on other grounds,* 358 F.3d 205 (2d Cir.2004)). To state an ECOA claim, a plaintiff must allege that (1) he was a member of a protected class, (2) he was qualified for the loan requested, (3) the lender declined the loan, and (4) the lender showed a preference for a non-protected individual. *Powell,* 310 F.Supp.2d at 487.

Here, Plaintiffs clearly acknowledge that they are proceeding on a disparate impact theory. (*See id.* at 7 (discussing how Plaintiffs would establish "[t]he existence of a disparate impact").) As Defendants note, Plaintiffs assert that their claims "arise from Corporate Defendants' use of a facially-neutral FHA overlay (and Individual Defendants' implementation of that overlay) which had the *effect* of discriminating against Plaintiffs because of their African–Caribbean American heritage." (*See* Defendants' Joint Motion to Dismiss, Docket Entry No. 46 ("Defs. Mem." or "Joint Motion to Dismiss"), at 6 (emphasis in original); *see also* SAC at 15, 20, 30.) Accordingly, the Court will consider Plaintiffs' claims under a disparate impact theory.

**\*6** In order to assert a violation of the FHA or ECOA based on a disparate impact theory, a plaintiff must "demonstrate that an outwardly neutral practice actually or predictably has a discriminatory effect; that is, has a significantly adverse or disproportionate impact on minorities, or perpetuates segregation." *Fair Housing in Huntington Committee Inc. v. Town of Huntington, New York,* 316 F.3d 357, 366 (2d Cir.2003); *see also Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Coop., Inc.,* 2012 WL 762323, at *10 (S.D.N.Y. Mar.8, 2012) ("In a disparate impact analysis case, a plaintiff need not show that the defendant acted with discriminatory intent, rather, discriminatory effect is sufficient." (citing *United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1217 (2d Cir.1987))).

However, Defendants accurately state that "Plaintiffs fail to identify any such specific policy or practice as to any of the Corporate Defendants. Rather, Plaintiffs contend that their claims arise out of *unspecified* " 'FHA underwriting policy overlays.' " (Defs. Mem. at 7 (citing SAC at 4).) This is insufficient for a disparate impact claim. *See Powell,* 310 F.Supp.2d at 487 (holding that "[t]o establish a *prima facie* case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate") (internal citation omitted). While Plaintiffs use the correct legal and technical buzzwords, in the absence of factual allegations, it is not enough to raise Plaintiffs' claims above the speculative level. *See Ng v. HSBC Mortg. Corp.,* 2009 U.S. Dist. LEXIS 125711, at *26–31 (E.D.N.Y. Dec. 15, 2009) (recommending dismissal of FHA claims because the facts were alleged in far too conclusory a fashion and "the claims [were] alleged with little more than buzzwords and conclusory labels, in the absence of the requisite factual allegations"), *adopted,* 2010 U.S. Dist. LEXIS (March 10, 2010). Accordingly, in light of the pleading requirements

set forth by *Iqbal* and *Twombly,* Plaintiffs' failure to provide factual allegations of a specific or particular practice used by Defendants requires dismissal of Plaintiffs' FHA and ECOA discrimination claims. *See Powell,* 310 F.Supp.2d at 487–88, 489 ("Although a motion for dismissal under 12(b)(6) tests only the adequacy of a plaintiff's complaint, Defendants are correct in their assertion that Plaintiff alleges no specific policy to support her disparate impact [ECOA] claim;" "Plaintiff's claims under the FHA suffer from the same deficiencies as her claims under the ECOA.").

Plaintiffs' claims under a disparate impact theory also fail because Plaintiffs' do not plead any actual facts of discriminatory impact based on race; otherwise said, Plaintiffs have not pled the requisite adverse effect on the protected group. *See Powell,* 310 F.Supp.2d at 487 (holding that "plaintiff ... must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group"); *see also Gorham–DiMaggio v. Countrywide Home Loans, Inc.,* 421 F. App'x 97, 100 (2d Cir.2011) (affirming dismissal of FHA and ECOA claims where plaintiff pled no facts demonstrating a discriminatory effect). In fact, Plaintiffs' own pleadings reveal their lack of evidence of a discriminatory effect. Plaintiffs present two different sources for "statistical evidence" for disparate impact, both of which fall short. (*See* SAC at 6–7.)

**\*7** First, Plaintiffs' "invite the creation of a 'per se' evidentiary rule in that the [Defendants] ... are chargeable with purposeful knowledge of [the FHA's] statutory goals and well established mandatory FHA underwriting terms/criteria for 3 and 4 unit properties." (*Id.* at 6.) Without any further explanation, Plaintiffs contend that this so-called evidentiary rule "evidences a 'per se' willful disparate impact on African–Caribbean American," where there is either "[1] "denial of Plaintiffs' mortgage application without notice, or [2] application of subjective, arbitrary and unlawful underwriting policy overlays in a racial discriminatory manner; and that otherwise is in conflict FHA guidelines and directly contravenes the law pursuant to ECOA [and] FHA." (*Id.* at 6.) To the extent the Court is able to decipher what exactly Plaintiffs are requesting, the Court declines this invitation to alter Plaintiffs' pleading requirement as heaving no basis in law. Plaintiffs may not avoid making a *prima facia* showing of discriminatory impact by creating a nonsensical rule that would permit conclusory assertions to be disguised as supported, factual allegations.

Second, Plaintiffs "offer[ ] to procure and provide statistical evidence of disparate impact through a motion to discover," because they currently lack the necessary information to support their claim. (*See* SAC at 6.)[4] In fact, Plaintiffs state that they seek discovery because the detailed information they need to show disparate impact is within the possession and control of the Corporate Defendants. (*Id.* at 7.) Plaintiffs even admit, "Plaintiffs' mere assertion or general perception that a policy or practice disproportionately excludes or injures people [like] them on a prohibited basis may be insufficient for trial on the matter. Therefore, Plaintiffs seek the opportunity to establish disparate impact with particularized facts." (*Id.* at 7.) These admissions by Plaintiffs further support dismissal of these claims, as Plaintiffs cannot state a claim where they rely on the vague hope that discovery may show facts on which the claim could be based. *See Iqbal,* 556 U.S. at 678–79 ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *S. Cherry St. LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 113–14 (2d Cir.2009) (noting that plaintiff's speculation that discovery would reveal facts to support claims "underscores, rather than cures, the deficiency in the Complaint"); *see also Johnson v. County of Nassau,* 411 F.Supp.2d 171, 176 (E.D.N.Y.2006) (finding that plaintiff's request that court deny motion to dismiss "until he has had an opportunity to conduct further discovery ... puts the cart before the horse and ignores the fact that discovery has to be tied to a pleading which passes muster under Rule 12(b)(6)"). Because Plaintiffs fail to sufficiently plead a under a disparate impact theory, Plaintiffs' claims under the FHA and the ECOA are dismissed.

### IV. Plaintiffs Fail to Allege a RICO Violation Sufficiently

**\*8** Plaintiffs' twenty-first through twenty-third claims allege violations of RICO. Defendants argue that Plaintiffs have failed to plead adequately the requisite elements of a RICO claim. The Court agrees. RICO was enacted to " 'prevent organized crime from infiltrating America's legitimate business organizations.' " *Manley v. Doby,* 2012 WL 5866210, at \*3 (E.D.N.Y. Nov.19, 2012) (quoting *Moccio v. Cablevision Sys. Corp.,* 208 F.Supp.2d 361, 371 (E.D.N.Y.2002)). RICO contains a criminal provision, see 18 U.S.C. § 1962, and a civil provision, see 18 U.S.C. § 1964. The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who is "injured in his business or property by reason of a violation of" the criminal provision. 18 U .S.C. § 1964(c). " 'Because the mere assertion of a RICO claim has an almost inevitable

stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.' " *Allstate Ins. Co. v. Valley Physical Med. & Rehabilitation, P.C.,* 2009 WL 3245388, at *3 (E.D.N.Y. Sept.30, 2009) (citation omitted).

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.' " *Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 119 (2d Cir.2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy,* 711 F.3d at 119 (citing 18 U.S.C. § 1961(5)). "Racketeering activity" is defined to include a variety of federal and state crimes, including murder, kidnapping, gambling, arson, robbery, bribery, extortion, wire fraud, and mail fraud. *See* 18 U.S.C. § 1961(1).

Here, in describing the alleged enterprise, Plaintiffs state, "HUD Association–in–Fact RICO Enterprise is the passive national umbrella organization, headed by HUD Secretary Shaun Donovan and consist[s] of the several Association–in–Fact RICO Enterprises named below, which constitutes the active board of managers and moving forces within the HUD Association–in–Fact RICO Enterprise." (SAC at 39.) Plaintiffs contend that each of the Corporate Defendants is one of the "[c]onstituent members of the HUD Association–in–Fact RICO Enterprises." (*Id.*) Plaintiffs add that "[t]he HUD Association–in–Fact RICO Enterprise was formed for the purpose of generating revenue and maximizing profits by engaging in schemes to profile and rob FHA mortgage applicants with African Caribbean–American descent of their lawful entitlement to rental income credits; bribe and extort unwarranted compensating financial factors; notwithstanding the fact that they were otherwise qualified for the loans." (*Id.*) Further, Plaintiffs baldly claim Defendants committed mail and wire fraud, as well as acts of robbery, bribery, and extortion. (*Id.* at 40–41.) However, none of Plaintiffs' allegations amount to a RICO predicate act, much less a pattern of racketeering activity or the existence of an enterprise, and thus, Plaintiffs' claims must be dismissed.

### a. Plaintiffs Have Not Adequately Alleged Mail and Wire Fraud

**\*9** Defendants correctly note, "When, as here, a plaintiff alleges that violations of the mail or wire fraud statutes supply the racketeering activity element, the plaintiff must meet the

heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." (Defs. Mem. at 12) (citing *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 185 (2d Cir.2008).) "The elements of a mail or wire fraud violation are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme." *Grimes,* 785 F.Supp.2d at 299 n. 45. Such allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent. *Spool,* 520 F.3d at 185 (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)). Lastly, a plaintiff must also allege "the specific intent to deceive necessary to support the predicate acts." *McRae v. Norton,* 2011 WL 3625569, at *3 (E.D.N.Y. Apr.11, 2011).

Here, Plaintiffs fail to allege a single fraudulent statement made by any Defendant, much less where and when any fraudulent statement took place. Instead, Plaintiffs state generically that Defendants "knowingly and willfully made materially false and fraudulent representations or omissions they knew to be false at the times of utterances, in order to restrain [Plaintiffs'] pursuit of the mortgage loans, upon which Plaintiffs relied to their injury." (SAC at 40–41.) Moreover, rather than alleging any fraudulent mail or wire transaction, or any facts suggesting that the transactions were part of a fraudulent scheme, Plaintiffs instead assert that Defendants used a web-based program, AppTaker, together with "interstate email," the "U.S. mail," and the "wires for telephone communications in furtherance of the inherently unlawful acts." (*Id.* at 41.) In short, Plaintiffs fail to identify any specific fraudulent communications, who made the communications, what was communicated, where or when the communications took place, why the communications were fraudulent, or how the mails or wires were used to further an alleged fraud. Moreover, Plaintiffs have not alleged any facts, as to any Defendant, establishing intent to defraud. Consequently, Plaintiffs have failed to plead any predicate act of mail and wire fraud. *See Mills,* 12 F.3d at 1176.

### b. Plaintiffs Have Not Adequately Alleged Robbery, Bribery, or Extortion

With regard to the alleged predicate acts of robbery, bribery, and extortion, Defendants argue that "Plaintiffs utterly fail to allege any facts that, if true, would show that such conduct actually occurred." (Defs. Mem. at 13–14.) The Court agrees. For example, Plaintiffs allege that defendant Jeff Doocy "engaged in ... an active extortionate threat of injuring the credit profiles of Plaintiffs Daniel I Frederick and Aaron T

Frederick, by reporting a loan denial to credit bureaus." (SAC at 20–21.) Plaintiffs also allege that defendant Merissa Serna used "the robbery of rental income credits and mortgage loan credits ... as the pretext for attempting to extort unwarranted mortgage underwriting terms—surtaxes and penalties under threat of official denial and injury to the credit profiles of Plaintiffs Daniel I Frederick and Aaron T Frederick." (*Id.* at 27–28.) These sort of conclusory allegations, which make no mention of the substantive criminal statutes that would underlie such liability, are plainly insufficient as predicate acts to support a RICO claim.

**\*10** Moreover, Defendants properly assert that "these purported 'predicate acts' are nothing more than allegations that three separate and distinct businesses (and their employees) independently concluded that Plaintiffs did not meet the underwriting requirements for the loans Plaintiffs sought and attempted to work with Plaintiffs to try and get them approved." (Defs. Mem. at 14.) Plaintiffs may not support their RICO claim by generically labeling Defendants' purported actions as the statutory predicate crimes without more facts about what makes the actions in fact crimes. *See Gregoris Motors v. Nissan Motor Corp. in U.S.A.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986) (dismissing RICO claims, stating that "the conclusory nature of the allegations ... parroting as they do statutory language without necessary facts, make them plainly inadequate"); *see also Twombly,* 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and citations omitted); *Fleming v. Hymes–Esposito,* 2013 WL 1285431, at \*11 (S.D.N.Y. Mar.29, 2013) (dismissing defendant's counterclaims for conspiracy and extortion, because they "are vague and do not rise to the required level of specificity for such allegations.").

**c. Plaintiffs Fail to Allege the Existence of an Enterprise**

In addition to the above-mentioned shortcomings, Plaintiffs also fail to allege adequately the existence of an enterprise, which is a necessary element of a civil RICO claim. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983). An "enterprise" is defined under RICO to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir.1984) (citing 18 U.S.C. § 1961(4)). The Supreme Court has further explained that, under

RICO, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

Where a complaint alleges an association-in-fact enterprise, courts in the Second Circuit look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Saitwood, Inc.,* 385 F.3d 159, 174–75 (2d Cir.2004) (citations and quotations omitted). The Second Circuit has made clear that "the person and the enterprise referred to must be distinct," and, therefore, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994).

**\*11** Here, Plaintiffs rely on an association-in-fact theory, but their sparse allegations do not suffice for establishing an association-in-fact enterprise. Plaintiffs allege that Defendants, in combination with HUD, all "constitute[ ] the active board of managers and moving forces within the HUD Association–in–Fact RICO Enterprise." (SAC at 39.) Further, Plaintiffs allege that the "HUD Association–in–Fact RICO Enterprise" consisted of smaller association-in-fact enterprises, including: the "WF Association–in–Fact Enterprise," consisting of WF and Mr. Doocy; the "NPF Association–in–Fact Enterprise," consisting of NPF and Ms. Serna; and the "FE Association–in–Fact Enterprise," consisting of FEM and Mr. Marino. (*Id.*)

While Plaintiffs offer personalized names for these so-called enterprises, Plaintiffs provide no facts indicating that Defendants associated together for a common purpose of engaging in a course of conduct. The allegations in the SAC are so disjointed and confusing that it is impossible to piece together any facts suggesting that Defendants functioned as a continuing unit. *See First Capital Asset Mgmt.,* 385 F.3d at 174–75 (finding that plaintiffs failed to adequately allege a RICO enterprises because they "failed to provide [the Court] with any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise ... from which [the Court] could fairly conclude that its members function as a unit" (internal quotation marks and citation omitted)); *Rosner v. Bank of China,* 528 F.Supp.2d 419, 429 (S.D.N.Y.2007) (finding that plaintiffs

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 21 of 67 PageID
#: 271
Frederick v. Wells Fargo Home Mortg., Not Reported in F.Supp.3d (2015)

failed to adequately allege RICO enterprise because no facts alleged showed how defendants "improperly functioned as a unit"). Defendants accurately note that "Plaintiffs nowhere even mention how or whether each of the Defendants communicated with each other, nor how each of the sub-associations stands apart from their purported racketeering activities." (Defs. Mem. at 16.) Accordingly, Plaintiffs have failed to allege that Defendants "associated together for a common purpose of engaging in a course of conduct" and, therefore, have not satisfied the "enterprise" element of a RICO claim. *Turkette,* 452 U.S. at 583. Because Plaintiffs have failed to plead the requisite RICO elements, Plaintiffs' RICO claims are dismissed.

## V. Plaintiffs Fail to State a Claim Under Any Common Law Theory

Plaintiffs assert various common law claims, including fraud, constructive fraud, fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, aiding and abetting, tortious interference with contract, civil conspiracy, negligent hiring and supervision, and negligent misrepresentation. (SAC at 35–37.)

### a. Plaintiffs Fail to Plead the Required Elements of Fraud with Particularity

*Federal Rule of Civil Procedure 9(b)* sets forth a heightened pleading standard for allegations of fraud. Thus, the Second Circuit held that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Mills,* 12 F.3d at 1175. The Second Circuit explained "that in order to comply with *Rule 9(b),* 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills,* 12 F.3d at 1175. Additionally, " 'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.' " *Lerner,* 459 F.3d at 290 (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

**\*12** With respect to Plaintiffs' common law causes of action under fraud theories, Defendants argue that "[c]ritically

missing from the SAC are any allegations of fact that give rise to a strong inference of fraudulent intent by the Defendants." (Defs. Mem. at 20.) The Court agrees, as Plaintiffs only assert a single conclusory statement regarding Defendants' intent, namely that Defendants intentionally made false representations regarding "FHA's underwriting criteria for mortgage qualifying purposes" for the purpose of defrauding Plaintiffs so as to prohibit their qualification for mortgage loans. (*See* SAC at 36.) This conclusory allegation fails establish a strong inference of fraudulent intent under *Rule 9(b); see also Iqbal,* 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.). Moreover, Plaintiffs fails to allege any facts: (1) that Defendants had both motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of their conscious misbehavior or recklessness. *See Shields,* 25 F.3d at 1128. Indeed, as Defendants correctly state, "Plaintiffs neglect to articulate any [credible] motivation as to why Defendants would make fraudulent misrepresentations that would result in Defendants purposefully denying qualified applicants a loan. (Defs. Mem. at 21.) Plaintiffs' allegations do not meet the heightened pleading requirements under *Rule 9(b),* and, therefore, Plaintiffs' claims sounding in common law fraud are dismissed.

### b. Plaintiffs Fail to State a Claim for Aiding and Abetting

Plaintiffs also allege that the Corporate Defendants "each aided and abetted each other and did verbally make material misrepresentations of fact." (SAC at 36.) Plaintiffs do not sufficiently allege their claim for aiding and abetting. "To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show (1) the existence of a fraud; (2)[the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.' " *Krys v. Pigott,* 749 F.3d 117, 127 (2d Cir.2014) (quoting *Lerner,* 459 F.3d at 292.) Lastly, as with fraud claims, the plaintiff's aiding and abetting claim must meet the particularity requirements under *Rule 9(b). See Wight v. BankAmerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000).

Here, because Plaintiffs have not properly alleged the existence of the underlying fraud, Plaintiffs' claim for aiding and abetting must be dismissed. Dismissal of this claim is further required because Plaintiffs make no allegations, much less with the particularity required under *Rule 9(b),* that any Defendants had actual knowledge of the alleged underlying fraud or that any Defendants provided substantial assistance

to advance the fraud's commission. Accordingly, Plaintiffs' claim for aiding and abetting is dismissed.

### c. Plaintiffs Fail to State a Claim for Tortious Interference with Contract

**\*13** To establish common law tortious interference with contract, a plaintiff must demonstrate "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *White Plains Coat & Apron Co. v. Cintas Corp.,* 460 F.3d 281, 285–286 (2d Cir.2006). Here, Plaintiffs assert various allegations of tortious interference throughout their complaint, which are mostly incomprehensible. For example, Plaintiffs allege "acted within the lawful scope of their employment or for the benefit of their employers or shareholders when they robbed or otherwise deprived Plaintiffs of their contractual rights and lawful entitlement to rental income credits, FHA mortgage loans and properties, supra, which constitutes tortuous [*sic* ] interference with contract." (SAC at 34.) Similarly, Plaintiffs allege that the Corporate Defendants "knew or should have known that Plaintiffs sought FHA insured mortgage contracts to which they were lawfully entitled based on qualifying *rental income credits* but tortuously [*sic* ] interfered with Plaintiffs['] contractual and due process rights to acquire said properties." (*Id.* at 12) (emphasis in original).

These conclusory statements are clearly insufficient to sustain a claim for tortious interference. *Iqbal,* 556 U.S. at 678. Plaintiffs have failed to set forth any factual allegations suggesting that Plaintiffs had a contract with a third party that Defendants knew about, or that Defendants intentionally procured the breach of that contract. Accordingly, Plaintiffs fail to state a claim for tortious interference with a contract. This claim is dismissed.

### d. New York Law Does Not Recognize a Cause of Action for Civil Conspiracy

Plaintiffs purport to bring a claim for "Civil Conspiracy." (SAC at 35, 37.) "It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 591 (2d Cir.2005) (citing *Durant Bros. & Sons, Inc. v. Flushing Nat. Bank,* 755 F.2d 239, 251 (2d Cir.1985)); *see also Romano v. Romano,* 2 A.D.3d 430, 432, 767 N.Y.S.2d 841 (2d Dep't 2003) ("[A] cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying tort."). Accordingly, Plaintiffs' claim

for civil conspiracy fails to state a cause of action upon which they are entitled to relief, and is dismissed.

### e. Plaintiffs' Claims for Negligent Hiring and Retention and Negligent Representation Both Fail

Plaintiffs purport to bring a claim for "negligent representation" related to the abovementioned common law fraud claims. Plaintiffs also assert a claim for negligent supervision and hiring. With regard to this claim, Plaintiffs argue that the Corporate Defendants owed a duty to Plaintiffs to (1) "provide FHA rental income credits and mortgage loans in a manner that was free from unlawful discrimination; (2) "to properly hire, train and supervise employees/agents relative to compliance with the requirements of fair housing and other state and federal laws; as well as, the proper investigation and referral for prosecution for violations of same;" and (3) "to correct, disciple or terminate ... employees/ agents after Plaintiffs made express written complaints about their conduct." (SAC at 35.)

**\*14** In general, to prevail on a negligence claim a plaintiff must establish: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of that duty; (3) a resulting injury. *See Akins v. Glens Falls City School District,* 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981).

To establish a claim of negligent misrepresentation, a plaintiff must prove that: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir.2000). This special relationship "requires a closer degree of trust than an ordinary business relationship." *Fleet Bank v. Pine Knoll Corp.,* 290 A.D.2d 792, 736 N.Y.S.2d 737 (3d Dep't 2002) (citations omitted).

To state a claim for negligent hiring and retention, in addition to the standard elements of negligence, Plaintiffs must plead that (1) the tortfeasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the alleged tortious conduct; and (3) the tort allegedly was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir.2004).

Here, Plaintiffs incorrectly assert that Defendants owed them a fiduciary duty. (*See* SAC at 37). There is no such general duty between a lender and borrower under New York law. *See Iannuzzi v. Am. Mortg. Network, Inc.,* 727 F.Supp.2d 125, 137–38 (E.D.N.Y.2010) ("As a general matter, a lender is not a fiduciary of its borrower under New York law."); *see also Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993) ("Under New York law, the usual relationship of bank and customer is that of debtor and creditor, and does not create a fiduciary relationship between the bank and its borrower or its guarantors.") (internal citation and quotation marks omitted)); *Fallon v. Wall Street Clearing Co.,* 182 A.D.2d 245, 250, 586 N.Y.S.2d 953 (1st Dept.1992) ("A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former.").

Moreover, with regard to the negligent misrepresentation claim, Plaintiffs fail to allege any special relationship with Defendants, which is fatal to this claim. *See Calcutti v. SBU, Inc.,* 223 F.Supp.2d 517, 522 (S.D.N.Y.2002) (dismissing negligence misrepresentation claim where parties did not have a relationship with each other separate from dealings related to contract). With regarding to their negligent hiring and retention claim, Plaintiffs, besides making mere conclusory statements, do not allege any facts that would establish that the Corporate Defendants knew, or had any reason to know, that any agents or employees had propensity to behave in a negligent or wrongful manner. *See Valentini v. Citigroup, Inc.,* 837 F.Supp.2d 304, 330 (S.D.N.Y.2011) (dismissing claim for negligent hiring and retention where plaintiffs did not "allege[ ] any facts demonstrating that any of the named Defendants knew or should have known of their [employees'] propensity for tortious conduct, prior to the wrongdoing alleged in the Complaint"). Accordingly, Plaintiffs' negligence-based claims are dismissed.

### VI. Plaintiffs Have Failed to Satisfy the Requirements for a Permanent Injunction

 **\*15**  Plaintiffs request that the Court enter "a permanent mandatory injunction directing each of the above named Defendants, their agents, employees and successors" to (1) "exercise such reasonable care and due diligence as will prevent subjective application of FHA underwriting policy overlays that are raced based [*sic* ] discriminatory lending practices in contravention of any/all laws enacted to prevent same;" (2) "make FHA 203(K) loans immediately available to Plaintiffs for 3 and 4 unit properties pursuant to FHA underwriting criteria;" and (3) "take all affirmative steps

necessary to remedy the effects of their past unlawful, discriminatory conduct described [in the complaint] and to prevent similar occurrences in the future." (SAC at 44.)

Plaintiffs have not satisfied the requirements for a permanent induction. "An injunction is a matter of equitable discretion." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 32, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Nonetheless, a party seeking a permanent injunction first must show, "that it will be irreparably harmed if an injunction is not granted," and second, "actual success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.,* 684 F.3d 286, 294 (2d Cir.2011) (citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d 342, 348–49 (2d Cir.2003)) (internal quotation marks omitted). In the instant action, Defendants contend that "Plaintiffs have utterly failed to establish the requisite irreparable harm, likelihood of success on the merits, or lack of adequate remedy at law." (Defs. Mem. at 25.) The Court concurs. Indeed, Plaintiffs' arguments do not even purport to directly address these requirements. Moreover, the sparse allegations in the SAC fail to establish any of the necessary requirements for preliminary injunctive relief. *See, e.g., Kalimantano GmbH v. Motion in Time, Inc.,* 939 F.Supp.2d 392, 421 (S.D.N.Y.2013) (dismissing claim for injunctive relief). Plaintiffs' request for a permanent injunction is denied.

### VII. Plaintiffs' Opposition to the Joint Motion to Dismiss

Throughout their response to Defendants' Joint Motion to Dismiss, Plaintiffs contend that Defendants are seeking summary judgment. (*See, e.g.,* Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss ("Pls.Opp."), Docket Entry No. 50, at 7, 9, 22, 26, 33.) Plaintiffs are incorrect in their assertion. While Defendants do reference, in the Joint Motion to Dismiss, the Administrative Complaints, the Determination and Orders, and Plaintiffs' prior civil action, these references do not convert the motion into a motion for summary judgment. It is well settled that in disposing of a Rule 12(b)(6) motion to dismiss, a court's review of DHR or judicial proceedings (and to the papers filed or issued therein) does not trigger Rule 12(d)'s provision for conversion of the motion into one for summary judgment. *See Ferrari v. County of Suffolk,* 790 F.Supp.2d 34, 38 n. 4 (E.D.N.Y.2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice.").

**\*16** With regard to the scope of Plaintiffs' opposition papers, Defendants complain that "Plaintiffs themselves make repeated reference to facts that are not pleaded in the SAC and to documents that are not incorporated into the SAC by reference or that are otherwise proper for the Court to consider at the Rule 12(b)(6) stage." (Defendant's Reply in Support of Joint Motion to Dismiss, Docket Entry No. 55, at 2–3; *see, e.g.,* Pls. Opp. at 2 (assertions regarding non-FHA loans), 4–5 (presenting hypothetical fact pattern), 11–12 (attempting to plead new facts regarding NPF), 16–18 (asserting that Defendants fail to comply with the Home Mortgage Disclosure Act), 21–22 (referencing "transcribed email communiques," many of which are not referenced in the SAC, and a purported "discrimination letter," which is similarly not referenced in the SAC), 24 (alleging that HUD somehow "deputized" the Corporate Defendants), and 31–32 (same).) Plaintiffs also raise a new claim in their opposition that Defendants violated New York General Business Law § 349. (Defs. Opp. at 27–28.)

Defendants' objections are well founded. A plaintiff may not amend his or her pleadings through an opposition brief. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998); *Willner v. Doar,* 2013 WL 4010205, at \*5 (E.D.N.Y. Aug.5, 2013) ("These allegations are nowhere to be found in plaintiff's amended complaint. Plaintiff may not amend his complaint through motion papers and the Court will not consider this newly raised claim.") Accordingly, the Court will disregard the abovementioned additional facts and newly raised claim that Plaintiffs sought to introduce in their response papers. For the above stated reasons, Defendants' motion to dismiss is granted in its entirety.

**VIII. Leave to Amend Would be Futile**
Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should freely grant a party leave to amend "when justice so requires," leave to amend is not required where, as here, a further amendment would be futile. *Hill v. Curcione,* 657 F.3d 116, 123–24 (2d Cir.2011) ("Where a proposed amendment would be futile, leave to amend need not be given.") (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 18 (2d Cir.1997)).

The Court is aware that leave to amend must be granted where a *pro se* pleading "gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000), but the allegations here raise no hint of a viable claim. Plaintiffs have been given ample opportunity to correct the deficiencies in their pleadings and have been

unable to do so. Another attempt by Plaintiffs to state a claim in this action would be futile. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 273 F.Supp.2d 351, 390 (S.D.N.Y.2003), *aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161 (2d Cir.2005), *cert. denied,* 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005) (plaintiffs had no right to amend and re-plead where they had "ample opportunity to craft their complaints" and were on notice of pleading deficiencies). Therefore, because Plaintiffs' deficient pleading cannot be remedied by amendment, the SAC is dismissed with prejudice. *See Konowaloff v. Metro. Museum of Art,* 2011 WL 4430856, at \*8 (S.D.N.Y. Sept.22, 2011) *aff'd,* 702 F.3d 140 (2d Cir.2012) ("This is [plaintiff's] second attempt to craft a viable complaint, and its shortcomings are of the sort that cannot be remedied by amendment. Accordingly, I dismiss the Amended Complaint with prejudice.").

**IX. Plaintiffs' Cross-motion to "Dismiss"**
**\*17** On August 22, 2014, Plaintiffs filed a cross-motion seeking an order: (1) striking exhibits submitted with Defendants' Joint Motion to Dismiss, (2) enjoining Defendants from proffering certain evidence regarding non-discriminatory reasons for Defendants' denial of Plaintiffs' loan applications because Defendants allegedly did not comply with ECOA requirements, (3) granting Plaintiffs a judgment on the pleadings or summary judgment, and (4) granting leave for Plaintiffs to add the DHR as a defendant. (*See generally* Plaintiffs' Cross-motion ("Pls.Cross"), Docket Entry No. 51.) This motion is without merit.

As an initial matter, in light of the Court's rulings discussed above, Plaintiffs' cross-motion is moot. Even assuming Plaintiffs' cross-motion is not moot, it lacks any substance. First, as noted above, the Court is permitted to consider the Administrative Complaints and the Determination and Orders. Moreover, Plaintiffs' attempt to relitigate the DHR's findings in this cross-motion is both inappropriate and unpersuasive. Second, the Court finds Plaintiffs' argument against the consideration of Defendants' non-discriminatory reasons for the denial of Plaintiffs' loan applications to be wholly unsupported. Plaintiffs provide no factual or legal support for their argument that the Court should not consider Defendants' evidence due to Defendants' purported non-compliance with an ECOA requirement that a lender send a written statement of the reasons for denial of a loan within thirty days of the denial. Third, Plaintiffs' motion for judgment on the pleadings and summary judgment is procedurally improper, because no pre-motion conference was sought before making the motion, as required by this

Court's rules. The motion for summary judgment also is procedurally improper because it is unsupported by a Rule 56.1 statement, which is required by this District's Local Rules. Substantively, it is without merit because it seeks to obtain judgment on Plaintiffs' claims regarding Defendants' lending practices without providing undisputed facts on the basis of which such a motion could be granted. Indeed, the Court has already found that Defendants are entitled to a dismissal of the SAC for failure to state claim upon which relief may be granted, and there is nothing in Plaintiffs' motion for judgment on the pleadings or summary judgment that alters that conclusion.

Lastly, Plaintiffs' request for leave to amend their complaint to add the DHR is futile. Plaintiffs seek to add the DHR because it is supposedly "a RICO Enterprise Government unit as an indispensable party opponent and active member of the HUD Association–in–Fact RICO Enterprise." (Pls. Cross at 7.) Plaintiffs add, *inter alia,* "DHR is liable for state and federal law violations against Plaintiffs including the commission of inter lia [*sic* ], RICO predicate acts of obstruction of justice and witness tampering during the pendency of federal judicial proceedings." (*Id.*) Given the Second Circuit's guidance that

a *pro se* complaint should not be dismissed without leave to amend unless amendment would be futile, *Cuoco,* 222 F.3d at 112, the Court has considered carefully whether leave to amend is warranted here to permit the addition of DHR as a defendant. Because the defects in Plaintiffs' claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend is denied. Accordingly, Plaintiffs' cross-motion is denied in its entirety.

### CONCLUSION

**\*18**  For the reasons stated above, Defendants' motion to dismiss is granted, Plaintiffs' Second Amended Complaint is dismissed in its entirety, and Plaintiffs' Cross-motion is dismissed in its entirety.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1506394

---

### Footnotes

1    In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Accordingly, the Court interprets the complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis omitted).

2    Although a court deciding a Rule 12(b)(6) motion generally is limited to considering the facts alleged in the complaint, a district court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice may be taken. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Further, a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Evans v. New York Botanical Garden,* 2002 WL 31002814, at \*4 (S.D.N.Y. Sept.4, 2002) (citations omitted). Accordingly, the Court takes judicial notice of the DHR's rulings on the Administrative Complaints at the Rule 12(b)(6) stage in this matter because (1) Plaintiffs reference the Administrative Complaints in the SAC, and (2) administrative records are public records. *See Johnson v. County of Nassau,* 411 F.Supp.2d 171, 178 (E.D.N.Y.2006) (considering DHR records on defendants' motion to dismiss).

3    The Court also notes claims under 42 U.S.C. § 1986 must be commenced within one year after the cause of action has accrued. *See* 42 U.S.C. § 1986; *see also Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001). The alleged conduct of which Plaintiffs complain, by their own admission, ceased on

or about January 8, 2012. (*See* SAC at 1.) Yet, Plaintiffs did not commence this action until December 30, 2013. Thus, Plaintiffs' Section 1986 claim also is barred by the statute of limitations.

4    Plaintiffs separately filed a motion for discovery, which sought "a list of all 3 and 4 unit FHA and *FHA look-a-like* mortgage acquisition loans/applications received by each of the Corporate Defendants in and from the New York Metropolitan area." (Motion for Discovery, Docket Entry No. 52, at 9.) (emphasis in original). Plaintiffs added that such discovery would "identify the specific policies or practices, which the Corporate Defendants has used in their race-based racketeering schemes and provide the statistical evidence, as is required, that these policies or actual practices has an adverse effect on the protected group. (*Id.* at 10.) This is motion was denied. (*See* Order dated January 16, 2015.)

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8088601
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri, Eastern Division.

Brennen HURT, Plaintiff,

v.

EXETER FINANCE, LLC, Defendant.

No. 4:23-CV-1285 JSD
|
Signed November 21, 2023

**Attorneys and Law Firms**

Brennen Hurt, Florissant, MO, Pro Se.

**OPINION, MEMORANDUM AND ORDER**

HENRY EDWARD AUTREY, UNITED STATES
DISTRICT JUDGE

**\*1** This closed civil matter is before the Court upon a
document filed by self-represented plaintiff Brennen Hurt
titled, "Motion for Reconsideration." [ECF No. 7]. Because
plaintiff appears to include two pages of a proposed amended
complaint, the Court construes this document as a motion for
reconsideration and a motion to amend. For the following
reasons, plaintiff's requests will be denied.

**Background**

Plaintiff initiated this action on October 11, 2023, by filing
a form "Civil Complaint" naming Exeter Finance LLC, as
the sole defendant in this action. [ECF No. 1]. In addition
to his complaint, plaintiff filed a motion to proceed in forma
pauperis in this matter. [ECF No. 2].

In his "Civil Complaint," plaintiff claimed that the
jurisdictional basis for the present action was "breach of
contract, breach of fiduciary duties, security fraud, and unjust
enrichment." He purported that the amount in controversy
was $78,000 for "breach of contract, failure to respond,
deprivation, defamation of character, payments returned to
owner, profits made of vehicle being sold, and security fraud."

Hurt alleged in his "Civil Complaint" that on March 8, 2021,
he signed a "security," or installment loan agreement with
Exeter as an "investor" in a consumer credit transaction.
A review of the complaint and accompanying documents
showed that plaintiff entered a contract to buy a 2016 Honda
Odyssey on that date with approximately 71,497 miles. It
appears plaintiff put down $1,800 dollars for the vehicle while
financing approximately $15,635.64 at a finance rate of 20.24
percent, making the total sale price of the vehicle $38,330.64.
Plaintiff agreed to pay $507.37 per month for 72 months.

Hurt asserted in his complaint that he sent defendant Exeter
Finance, LLC, "multiple notices" to "apply the principals"
balance to the "principals account for set off." He claimed that
defendant ignored the notices and instead seized the vehicle
after he stopped paying cash for the vehicle, which was
purportedly worth $11,153.49 at the time. Plaintiff called this
a "bill of exchange." Plaintiff accused defendant of breaching
its fiduciary duty because he believed he owned the vehicle,
and he blamed defendant for making him use "federal reserve
notes."

In his complaint, plaintiff accused defendant of committing
security fraud by reporting plaintiff's poor credit/failure
to pay for the payments on the vehicle to a crediting
reporting agency. He believed that defendant would be
unjustly enriched if he is made to pay defendant in "federal
reserve notes," with the seized vehicle/security and tender
of payment. He also complained that defendant had failed
to honor his "coupon's value," and had seized his private
property in violation of the Fourth and Fifth Amendments.
Not only did plaintiff seek an order from this Court regarding
damages, but he also sought "full discharge of his debts
according to the U.C.C."

Attached to plaintiff's complaint were grievances plaintiff
made to the Missouri Consumer Protection Agency, as well
as the Missouri Attorney General's Office relating to his
transaction with Exeter Finance, LLC. Also attached were
copies of the bill of sale with Exeter Finance, LLC and
the response to the Missouri Attorney General from Exeter
Finance, LLC.[1]

**\*2** Prior to reviewing plaintiff's complaint pursuant to 28
U.S.C. § 1915 for frivolousness, maliciousness and for failure
to state a claim, the Court took note of plaintiff's prior lawsuits
in this Court.

**Plaintiff's Prior Lawsuits**

The Court noted in its November 1, 2023 Opinion, Memorandum and Order reviewing plaintiff's complaint that this was the second action plaintiff had filed against Exeter Finance, LLC (Exeter) in this Court. *See* ECF No. 5. Plaintiff filed his first Missouri state law breach of contract action against Exeter on June 29, 2023. *See Hurt v. Exeter Finance, LLC*, No. 4:23-CV-836 HEA (E.D.Mo.), hereinafter referred to as "*Exeter I.*"

In *Exeter I*, plaintiff alleged that defendant and its Chief Financial Officer, James Kulas, had unlawfully repossessed his vehicle even though he had "tendered" a "negotiable instrument" to them to "set off" his account. The Court, on July 13, 2023, ordered plaintiff to show cause why his action should not be dismissed due to lack of subject matter jurisdiction. Plaintiff based his jurisdictional arguments on the Uniform Commercial Code (UCC) and several other conclusory assertions. The Court found his arguments unavailing and dismissed the action for lack of jurisdiction on August 25, 2023. *Id.*

Undeterred, plaintiff filed a second lawsuit in this Court on Jul 17, 2023. However, this time, he alleged a Missouri breach of contract action against defendant GMC Auto Sales. *See Hurt v. GMC Auto Sales*, No. 4:23-CV-909 RLW (E.D.Mo.). On August 28, 2023, the Court ordered plaintiff not only to amend his pleading on a court-provided form, but also to provide the jurisdictional basis for filing his lawsuit in federal court. *Id.* Because it was not apparent if plaintiff's breach of contract action against GMC Auto Sales was related to his lawsuit against Exeter Finance, LLC, the Court also ordered plaintiff to identify the contract of which he was complaining of, the date when the contract occurred, if he received a vehicle relative to the contract, the person with whom he purportedly signed the contract, the factual allegations relative to the breach, whether he provided money and/or a trade in for the purported vehicle and the purported damages. Plaintiff was also specifically instructed to indicate the jurisdictional basis under which he was suing – whether it was diversity or federal question jurisdiction. He was informed that if he wished to bring an action under the Truth in Lending Act, he would need to name the specific provisions of TILA under which he was suing.

Plaintiff responded to the Court Order by filing an amended pleading on September 15, 2023. *Id.* He claimed that he had

filled out an application for credit on or about March 14, 2023, at GMC Auto Sales and that this application turned into a contract and promissory note when he turned in the filled-out credit application to defendant. Apparently, he wished to purchase a 2020 Dodge Durango with this alleged "promissory note." Because plaintiff failed to articulate federal question jurisdiction within the basis of his complaint, the Court dismissed his action for failure to allege a jurisdictional basis for suing in federal court. *Id.*

**November 1, 2023 Order of Dismissal in This Case**

**\*3**  On November 1, 2023, the Court reviewed plaintiff's history of filings in this Court and found that plaintiff had a pattern of litigation in this Court and against defendant Exeter Finance, LLC that was malicious, and as such, his complaint should be dismissed. [2]  *See* 28 U.S.C. § 1915(e)(2)(B)(i); *see also Horsey v.* Asher, 741 F.2d 209, 212 (8th Cir. 1984) (an allegation the plaintiff knows to be false is malicious, and a complaint containing only fabricated allegations is properly deemed malicious). Furthermore, the Court reminded plaintiff that he had been repeatedly told that this Court lacks jurisdiction over state law breach of contract claims, and he had been made aware that his claims of attempting to give non-legal tender for a vehicle were specious, yet he continued to make claims that he was owed either a vehicle or monetary value. Additionally, he was continuing to harass defendant Exeter by writing consumer complaints and filing lawsuits regarding their legal behavior concerning removal of the contracted for vehicle because of his failure to pay under the contract. [3]

Last, the Court found that plaintiff was advancing frivolous arguments such as those advanced by sovereign citizens and others who claim that they are not subject to government laws or proceedings. Such arguments lead the Court to surmise that his claims against Exeter were meritless. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (stating that a complaint lacks an arguable basis in law if it is based upon an indisputably meritless legal theory). [4]  Because plaintiff's arguments for relief were found to have no basis in federal law, and because plaintiff's lawsuits and pattern of behavior was found to be harassment, the Court dismissed this action as frivolous, malicious and for failure to state a claim on November 1, 2023. [ECF Nos. 5 and 6].

Case 1:25-cv-02653-RER-JAM   Document 11-2   Filed 06/03/25   Page 29 of 67 PageID #: 279

Hurt v. Exeter Finance, LLC, Not Reported in Fed. Supp. (2023)

**Plaintiff's Motion for Reconsideration and to Amend**

**\*4**  Plaintiff filed his "Motion for Reconsideration" on November 15, 2023. [ECF No. 7]. As set forth above, plaintiff's motion includes both arguments for reconsideration of the dismissal of this action, as well as two pages of what appears to be an amended complaint.

In his arguments for reconsideration plaintiff asserts that the Court should reopen the present matter and allow him to file an amended pleading because in his prior cases he lacked knowledge of the Federal Rules of Civil Procedure. He claims that he did not understand that he could have filed an appeal in his older cases instead of filing multiple cases in this Court. Additionally, he asserts that his claims against GMC Auto Sales did not involve the same vehicle as the two cases against Exeter, and he asserts that he is not a sovereign citizen or Moorish National.

Hurt asserts that if he was allowed to amend, he would assert claims against Exeter under the Truth in Lending Act relating to the "non-transferability of void security interest under law." Plaintiff also argues that he sent "numerous securities and negotiable instruments to set off debt" to Exeter. He "deposited a security with defendant, and defendant committed security fraud, not returning any securities or claiming that plaintiff is not secured or sent securities at all." Plaintiff further asserts that Exeter purportedly failed to provide "required TILA disclosures to plaintiff after assignment of the sales contract" which resulted in plaintiff's lack of awareness of critical credit terms. [5]

In plaintiff's proposed amended complaint, he claims that he "sold a promissory note to Bommarito Honda for the vehicle in which it was assigned to the defendant." He asserts that he also sent "negotiable instruments which is cash equivalent or a bill of exchange for full payment of the alleged debt."

Plaintiff seeks monetary damages and injunctive relief in his proposed amended complaint.

**Discussion**

This closed case is before the Court upon plaintiff Brennen Hurt's request for reconsideration and to amend. As discussed below, the Court finds that plaintiff's request for reconsideration and to reopen this matter should be denied.

Additionally, it would be futile to reopen this case because plaintiff's proposed amended complaint would be subject to dismissal under 28 U.S.C. § 1915.

Rule 59(e) allows a court to correct its own mistakes in the time immediately following judgment. Rule 59(e) motions "serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' " *Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1998)). Rule 60(b) allows the court to relieve a party from a final judgment for, among other reasons, mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b). It "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *U.S. Xpress Enterprises, Inc. v. J.B. Hunt Transport, Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (internal citation omitted).

**\*5**  The Court has reviewed the instant filing, and finds no basis for altering or amending its prior decision. Plaintiff does not point to any manifest errors of law or fact or any newly discovered evidence, nor does he demonstrate any exceptional circumstances warranting relief. Rather, the sole basis of his argument appears to be that he is unlearned in the law and although he has submitted similar claims as those of sovereign citizens he does not belong to their group.

"[P]ro se representation does not excuse a party from complying with the Court's orders and with the Federal Rules of Civil Procedure." *Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). *See also Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives."); *Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017) (party's "status as a pro se litigant [does] not excuse [him] from following the local rules."). Plaintiff was given several chances to comply with the Federal Rules and plead his case. As noted above, the Court allowed him to plead jurisdiction several times, twice in *Exeter I*, and twice in *GMC Auto Sales*, which also alleged a breach of a consumer contract relating to an auto sale. Additionally, the Court provided him with several indications that his theory of the case was incorrect, and that this Court had no jurisdiction over such a case, yet he kept pursuing the same theories.

Furthermore, plaintiff has consistently insisted that he has paid defendant Exeter with tender other than cash or "federal

Hurt v. Exeter Finance, LLC, Not Reported in Fed. Supp. (2023)

reserve notes." In fact, he attached to his complaint in the present action the "coupons" he attempted to give Exeter as tender, which are nothing more than handwritten "coupons" and fake "securities" in which plaintiff insists that he paid for the vehicle in question. *See* ECF No. 1, pp. 15-17. One cannot pay a debt by writing "pay to the bearer" and "accepted" on a piece of paper, nor turn such into an agreement or a "security instrument." This type of argument smacks of a sovereign citizen argument, as noted in the Court's November 1, 2023 Opinion, Memorandum and Order and Order of Dismissal.

Nevertheless, plaintiff insists he be given an opportunity to amend his complaint, or replead allegations against Exeter a third time in this Court. This time, plaintiff insists Exeter breached TILA, after the fact, when entering into an installment loan contract with him. Once again, however, he has failed to articulate the specific provision of TILA he believes was violated.[6] Plaintiff attached the installment loan agreement to his complaint. *See* Ex.1, pp. 22-23. He has not indicated in his proposed amended complaint or any of his prior pleadings in this Court that any of the terms of the installment contract were changed after the fact by Exeter.

**\*6** Because plaintiff has not indicated how he would fix his claims against Exeter, plaintiff's "right to amend as a matter of course ended with the entry of the judgment of dismissal." *Fearon v. Henderson*, 756 F.2d 267, 268 (2nd Cir. 1985), *overruled on other grounds by Campos v. LeFevre*, 825 F.2d 671 (2nd Cir. 1987); *cf. United Steelworkers of America, AFL-CIO v. Mesker Bros. Industries, Inc.*, 457 F.2d 91, 93 (8th Cir. 1972). Plaintiff had several opportunities to file a complaint in compliance with the Court's instructions, and he failed to do so. Plaintiff may not file motions or other documents in this case to advance or support previously filed claims for relief.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for reconsideration or to amend [ECF No. 7] is **DENIED.**

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8088601

---

## Footnotes

1    The Court considered these attachments pursuant to Federal Rule of Civil Procedure 10(c).

2    Plaintiff was not only filing multiple suits against Exeter in this Court, but he was harassing Exeter by filing letters and complaints against Exeter through the Missouri Consumer Protection Division and the Missouri Attorney General's Office, making specious arguments that Exeter had wrongfully repossessed his car.

3    When determining whether an action is malicious, the Court need not look only to the complaint before it but may also look to plaintiff's prior litigious conduct. *See Cochran v. E.C. Morris*, 73 F.3d 1310 at 1316 (4th Cir. 1996) (plaintiff's past litigious conduct should inform the district court's determination of whether an action is malicious); *see also Carter v. Schafer*, 273 F. App'x 581 (8th Cir. 2008) (finding that a plaintiff's history of abusive litigation supported a determination of maliciousness).

4    Plaintiff was attempting to assert that he was entitled to relief under the "UCC," and he was asserting claims that he had tendered a "negotiable instrument" for payment of the vehicle rather than "federal reserve notes." Additionally, he claimed that he signed a "security" rather than an installment loan agreement, and that defendant failed to honor his "coupons" or "notices" for payment/ "bill of exange" as a "setoff." These are classic arguments used by sovereign citizens or those who believe that state and federal laws do not apply to them. The United States does not recognize the Moorish Nation or any other Indigenous Nation as a sovereign state, *see Benton-El v. Odom*, 2007 WL 1812615, at \*6 (M.D. Ga. June 19, 2007), *Khattab El v. United States Justice Dept.*, 1988 WL 5117, at \*2 (E.D. Pa. Jan. 22, 1988), and plaintiff cannot unilaterally bestow sovereign immunity upon himself. *See United States v. Lumumba*, 741 F.2d 12, 15 (2d Cir. 1984).

Even those who voluntarily relinquish their citizenship are subject to, and must obey, federal, state, and local laws. *See* *Khattab*, 1988 WL 5117. *See also* *United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983) (rejecting jurisdictional challenge based on defendant's argument he was a sovereign citizen); *United States v. Sterling*, 738 F.3d 228, 233 n. 1 (11th Cir. 2013); *United States v. Benabe*, 654 F.3d 753, 761-67 (7th Cir. 2011) (describing the conduct of another "sovereign citizen" and collecting cases rejecting the group's claims as frivolous); *Fullilove v. Glass*, No. 4:16-CV-2143-PLC, 2017 WL 1549776, at *2 (E.D. Mo. Apr. 28, 2017) (argument that petitioner is a "flesh and blood man" serves no basis for habeas relief); *Carter v. Wands*, 431 F. App'x 628, 629 (10th Cir. 2011).

5      Plaintiff cites to *First National Bank of Amarillo v. Lajoie*, 537 P.2d 1207 (Okla. 1975) in support of his arguments. This case deals with the Oklahoma Consumer Protection Act, which is not at issue in this action.

6      This Court specifically informed plaintiff in the August 28, 2023 Memorandum and Order, in GMC Auto Sales, to allege a violation under TILA, plaintiff needed to identify the specific section of TILA that defendant had violated. *See, e.g.,* *Kosobucki v. Bank of America, N.A.,* No. 15-60458-Civ-Scola, 2015 WL 11198244 at *2 (S.D. Fla. July 30, 2015) (finding the defendant was not afforded fair notice and explaining that the "TILA and RESPA are highly specific statutes and the [plaintiffs'] claims do not clearly indicate what TILA violation occurred and what RESPA violation occurred."); *Yancey v. First Bank*, No. 6:16-CV-00028, 2016 WL 4126661, at *4 (W.D. Va. Aug. 2, 2016) (dismissing TILA and Regulation Z claim when complaint failed to reference the specific section of the TILA being violated); *Robinson v. Capital One Auto Finance,* No. 1:20-cv-23105-UU, 2020 WL 8186266, at *2 (S.D. Fl. Dec. 11, 2020) (dismissing amended complaint because plaintiff failed to allege a specific provision of TILA allegedly violated by defendant).

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 802242
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana,
Lafayette Division.

Lee Joseph VIDRINE

v.

CAPITAL ONE BANK

CASE NO. 6:23-CV-01500
|
Signed February 9, 2024

**Attorneys and Law Firms**

Lee Joseph Vidrine, Eunice, LA, Pro Se.

**REPORT AND RECOMMENDATION**

CAROL B. WHITEHURST, UNITED STATES
MAGISTRATE JUDGE

 *1 Before the Court is the Motion to Dismiss under
F.R.C.P. Rule 12(b)(6) filed by Defendant, Capital One,
N.A. (Rec. Doc. 4). Plaintiff, proceeding *pro se*, did not file
an opposition. The motion was referred to the undersigned
magistrate judge for review, report, and recommendation
in accordance with the provisions of 28 U.S.C. § 636 and the
standing orders of this Court. Considering the evidence, the
law, and the arguments of the parties, and for the reasons
explained below, the Court recommends that Capital One's
Motion be granted and that Plaintiff's claims be dismissed
without prejudice.

Plaintiff filed a *pro se* complaint asserting diversity
jurisdiction and attempting to state claims based on three
letters he allegedly sent to Capital One's CFO. (Rec. Doc.
1). He states that he "is seeking relief from the court by
demanding [Capital One] the plaintiff's rights to his credits
by accepting the indorsed bill of exchange as payment and
applying the principals balance to the principals account every
billing cycle for set-off and or $15,000,000." (Rec. Doc. 1,
¶5).

Capital One moves to dismiss the complaint as nonsensical
and devoid of cognizable factual allegations or causes of
action. The pleadings of *pro se* litigants are held to a more
lenient standard than those of attorneys and are construed

liberally to prevent a loss of rights that might result from
inartful expression. *Taylor v. Books A Million, Inc.*, 296
F.3d 376, 378 (5th Cir. 2002). However, *pro se* plaintiffs
are required to plead factual allegations that rise above a
speculative level, and courts should not create causes of action
where none exist. *Chhim v. University of Texas at Austin*,
836 F.3d 467, 469 (5th Cir. 2016). A *pro se* litigant should
ordinarily be offered an opportunity to amend his complaint
before it is dismissed, but leave to amend is not required if an
amendment would be futile, or if, in other words, an amended
complaint would still fail to survive a Rule 12(b)(6) motion to
dismiss. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th
Cir. 2020); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368,
378 (5th Cir. 2014).

In determining whether a complaint filed by a plaintiff
proceeding *in forma pauperis* fails to state a claim, the court
should apply the same standards governing dismissals under
Fed. R. Civ. P. 12(b)(6). *Samford v. Dretke*, 562 F.3d 674, 678
(5th Cir. 2009). Thus, the court must limit itself to the contents
of the pleadings, accept all well-pleaded facts as true, view the
facts in a light most favorable to the plaintiff, and determine
whether the plaintiff has plead "enough facts to state a claim
to relief that is plausible on its face." *In re Katrina Canal
Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
Even applying the mandated plaintiff-friendly standard, the
Court agrees that Plaintiff's complaint lacks sufficient facts
to support any cognizable cause of action. Plaintiff did not
oppose Capital One's Motion to Dismiss and has not indicated
a desire to amend the complaint. Accordingly, the Court
recommends that Capital One's Motion to Dismiss (Rec. Doc.
4) be GRANTED and that Plaintiff's claims be dismissed
without prejudice.

 *2 Under the provisions of 28 U.S.C. § 636(b)(1)(C)
and Fed. R. Civ. P. 72(b), parties aggrieved by this
recommendation have fourteen days from service of this
report and recommendation to file specific, written objections
with the Clerk of Court. A party may respond to another
party's objections within fourteen days after being served with
of a copy of any objections or responses to the district judge
at the time of filing.

Failure to file written objections to the proposed factual
findings and/or the proposed legal conclusions reflected
in the report and recommendation within fourteen days
following the date of its service, or within the time frame
authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved
party from attacking either the factual findings or the legal

**Vidrine v. Capital One Bank, Not Reported in Fed. Supp. (2024)**

conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 9th day of February, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 802242

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8681199
Only the Westlaw citation is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

Jaurice Antwain PAYNE, Plaintiff,
v.
SPECTRUM, et al., Defendant

SA-23-CV-01313-XR
|
Signed December 15, 2023

**Attorneys and Law Firms**

Jaurice Antwain Payne, San Antonio, TX, Pro Se.

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

ELIZABETH S. ("BETSY") CHESTNEY, UNITED
STATES MAGISTRATE JUDGE

 **\*1** **To the Honorable United States District Judge Xavier
Rodriguez:**

Before the Court is the above-styled cause of action. On
October 26, 2023, the Court granted Plaintiff's motion to
proceed *in forma pauperis* and ordered the docketing of
Plaintiff's Complaint [#4]. However, the Court withheld
service pending the filing of a More Definite Statement
regarding the claims Plaintiff is attempting to bring through
this suit. Plaintiff timely filed an Amended Complaint [#4]
to address the Court's concerns about the sufficiency of the
pleadings and the legal plausibility of his claims. The Court
now undertakes a review of Plaintiff's pleadings pursuant
to 28 U.S.C. § 1915(e). For the reasons that follow, the
undersigned recommends that Plaintiff's case be dismissed
pursuant to Section 1915(e). The undersigned has authority to
enter this report and recommendation pursuant to 28 U.S.C.
§ 636(b)(1)(B).

**I. Analysis**

Pursuant to 28 U.S.C. § 1915(e), this Court may screen any
civil complaint filed by a party proceeding *in forma pauperis*
to determine whether the claims presented are (1) frivolous

or malicious; (2) fail to state a claim on which relief may be
granted; or (3) seek monetary relief against a defendant who
is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).
"A complaint is frivolous if it lacks an arguable basis in law
or in fact." *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir.
1995). This court is "vested with especially broad discretion"
in making the determination of whether an IFP proceeding is
frivolous or fails to state a claim. *Green v. McKaskle*, 788 F.2d
1116, 1119 (5th Cir. 1986).

Plaintiff's Complaint and Amended Complaint name
one Defendant—Spectrum. Plaintiff's Original Complaint
attempted to allege a claim of securities fraud under Section
17 of the Securities Act of 1933, codified at 15 U.S.C.
§ 77q. Plaintiff claimed that he entered into a consumer
credit transaction with Defendant, and Defendant committed
securities fraud. Plaintiff provided no other details regarding
the allegations underlying his proposed Complaint.

In the undersigned's order directing the filing of a More
Definite Statement, the undersigned noted that Section 17
of the Securities Act of 1933 prohibits fraudulent conduct
and material misstatements and omissions in connection with
the sale of securities. 15 U.S.C. § 77q. There were several
deficiencies identified in Plaintiff's Complaint. Plaintiff did
not allege that Defendant sold or attempted to sell him a
security, and Plaintiff's allegations appeared to concern a
consumer agreement, not the sale or purchase of a security.
Further, to assert a claim under Section 17, a plaintiff must
allege (1) a misstatement or omission (2) of a material fact (3)
made with scienter (4) on which the plaintiff relied (5) that
proximately caused his injury. *Abrams v. Baker Hughes Inc.*,
292 F.3d 424, 430 (5th Cir. 2002) (internal quotation marks
omitted); *Landry v. All Am. Assurance Co.*, 688 F.2d 381, 387
(5th Cir. 1982). In alleging fraud or mistake, a party must
state with particularity the circumstances constituting fraud
or mistake, i.e., the who, what, when, where, and how of the
fraud. Fed. R. Civ. P. 9(b). Plaintiff's Original Complaint also
failed to satisfy this heightened pleading standard.

 **\*2** The Order directing a More Definite Statement asked
Plaintiff to answer the following questions in filing an
Amended Complaint:

- What security did you purchase or were you attempting
  to purchase from or invest in with Defendant?

- Please identify the "who, what, when, where, and how"
  of the alleged fraud.

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 35 of 67 PageID #: 285

Payne v. Spectrum, Not Reported in Fed. Supp. (2023)

○ Who specifically committed the fraud?

○ What was the alleged fraudulent misrepresentation?

○ When was the fraud committed?

○ Where did the fraud occur?

○ How was the fraud perpetuated?

• How do you know the person who committed the fraud knew the representations were fraudulent? What do you believe the person's state of mind to have been at the time of the alleged fraud?

• What did you do in response to the misrepresentations?

• How were you harmed?

Plaintiff's Amended Complaint did not respond to these questions and instead dropped the claim of securities fraud and cites two federal statutes—the Bill of Exchange Act and the Federal Reserves Act. Plaintiff contends that Spectrum is a "federal savings association" and that in January 2023, Plaintiff entered into a consumer credit transaction with Defendant, which set certain payment schedules and rates. Plaintiff appears to be arguing that Plaintiff attempted to make payments according to a contract, and Defendant failed to correctly apply the funds to his account.

Federal courts like this one are courts of limited jurisdiction. This Court only has jurisdiction and authority to entertain cases that either (a) raise a federal question (involve claims arising under the United States Constitution or a federal statute) or (b) fall under the Court's diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. For the Court to have jurisdiction over a state-law claim under the Court's diversity jurisdiction, the matter in controversy must exceed $75,000 and be between citizens of different states. *Id.* at § 1332(a).

There is no federal subject matter jurisdiction over this case. Plaintiff is not able to pursue civil remedies under the Bill of Exchange Act or Federal Reserve Act, and the undersigned finds these claims to be legally frivolous. Plaintiff references Sections 16 and 29 of the Federal Reserve Act. Neither Section 16 nor Section 29 provide Plaintiff with a private right of action and therefore cannot serve as a basis for federal question jurisdiction. Section 16 concerns the issuance of federal reserve notes to federal reserve banks. *See* 12 U.S.C. § 411. Section 29 imposes civil penalties on banks for an array

of misconduct. *See* 12 U.S.C. § 504. Plaintiff has not pleaded that Spectrum is governed by these provisions. And district courts across the country have repeatedly rejected attempts to invoke these provisions as a private cause of action. *See White v. Lake Union Ga Partners LLC*, No. 1:23-CV-02852-VMC, 2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023) (collecting cases). The Bill of Exchange Act of 1882 is a Canadian statute with no application here.

Insofar as Plaintiff is attempting to plead a breach of contract action, he has not established diversity jurisdiction either. Although Plaintiff seeks $10 million in damages, Plaintiff does not identify the goods and services he purchased from Defendant that resulted in the credit transaction or the amount of the payments owed to Defendant. Plaintiff has not pleaded a plausible claim of breach of contract satisfying the jurisdictional threshold to confer subject matter jurisdiction over this Court.

**\*3** The undersigned also informs the District Court that Plaintiff has filed three other lawsuits in this Court in the last several months, all of which allege securities fraud and contain similar allegations against other Defendants: 5:23-cv-1254-FB-RBF, 5:23-cv-1298-OLG-HJB, and 5:23-cv-1305-JKP-RBF. All three of these cases remain pending.

## II. Conclusion and Recommendation

Having considered Plaintiff's Complaint under the standards set forth in 28 U.S.C. § 1915(e), the undersigned recommends that Plaintiff's claims be **DISMISSED** for lack of subject matter jurisdiction, for failure to state a claim, and as frivolous pursuant to Section 1915(e).

## III. Instructions for Service and
## Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the

objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8681199

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Arnold v. Santander Consumer USA, Slip Copy (2025)

2025 WL 1358546
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Edward ARNOLD, Plaintiff,

v.

SANTANDER CONSUMER USA, Defendant.

3:24-CV-1125 (VDO)
|
Signed May 9, 2025

**Attorneys and Law Firms**

Edward Arnold, New Britain, CT, Pro Se.

Elizabeth M. Lacombe, Duane Morris LLP, Hartford, CT, for Defendant.

### MEMORANDUM & ORDER GRANTING MOTION TO DISMISS

VERNON D. OLIVER, United States District Judge:

**\*1** Plaintiff Edward Arnold, proceeding *pro se*, sued Santander Consumer USA following a dispute over a vehicle upgrade and auto loan payments. Santander Consumer USA now moves to dismiss the complaint, arguing that the pleading does not state a claim upon which relief can be granted and fails to conform to Federal Rule of Civil Procedure 8(a)(2). For the reasons set forth below, the Court **grants** the motion to dismiss and gives Plaintiff leave to file an amended complaint.

### I. BACKGROUND

Construing Arnold's allegations liberally, the Court infers that Arnold purchased a car on credit from a dealership, which assigned its interest in the purchase agreement to Santander Consumer USA ("Santander"). [1] Around April 2, 2024, Santander informed Arnold that the "estimated amount to pay off [his] account [was] $8,104.47." [2] That same month, Arnold spoke with a Santander representative on the phone about the possibility of upgrading his vehicle. [3] The representative may have indicated that Santander would approve the upgrade once Plaintiff "provide[d] the remaining balance on [his] current loan." [4] However, Plaintiff also suggests that Santander promised to approve the upgrade if

the payments were "current." [5] Plaintiff seems to have paid some portion of the balance at some point between April and July of 2024. [6]

When Arnold attempted to secure the upgrade, the dealership ran a credit check, and Santander denied the vehicle upgrade. [7] Plaintiff then "tr[ied] to endorse [his] car payment" in May and June of 2024. [8] He sent several letters to Santander's Chief Financial Officer, instructing the executive to "apply [Plaintiff's] balance of $740.92 to their account" and apply "the remaining balance of $7,932.06 [ ] to the [Plaintiff's] account for setoff." [9] At some point, Arnold's vehicle was repossessed. [10] Plaintiff demands that Santander "accept [his] form of payment," upgrade the car, issue a credit card, and return "all unearned interest ... in the form of a check[.]" [11]

On June 26, 2024, Arnold filed the instant complaint, alongside a motion for leave to proceed *in forma pauperis*. [12] The Court denied the motion without prejudice, finding it incomplete, and Arnold paid the filing fee on August 20, 2024. [13] On December 6, 2024, Arnold effected service of process. [14] Santander filed its motion to dismiss on December 30, 2024. [15] Arnold filed an opposition brief on January 21, 2025, [16] and an amended opposition brief on January 24, 2025. [17]

### II. LEGAL STANDARDS

**\*2** A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]' " *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must construe the submissions of a *pro se* litigant liberally and interpret them "to make 'the strongest arguments

that they suggest.' " *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citation and quotation marks omitted).

## III. DISCUSSION

As explained below, Plaintiff fails to state a claim under the various authorities to which he cites. The Court further notes that, though the complaint is difficult to parse, Plaintiff appears to raise meritless arguments that flow from the sovereign citizen movement.

### A. Cited Authorities

To the extent that Plaintiff attempts to bring a claim under the Federal Reserve Act, the claim fails as a matter of law. Plaintiff cites to "Section 16 issue notes 1 and 2" of the Federal Reserve Act, as well as "Section 29 Civil Money Pen[al]ties." In the Court's view, Plaintiff intends to refer to 12 U.S.C. §§ 411, 412, the codification of these two notes, and 12 U.S.C. § 504, the codification of Section 29. [18]

The Federal Reserve Act, however, does not create a private right of action. *See Scriven v. Barnum*, No. 24-CV-1805, 2024 WL 1769318, at *1 (E.D.N.Y. Apr. 24, 2024) (finding that "there is no private right of action under the Federal Reserve Act"). No law in the Second Circuit—or in the country— suggests that a private individual may bring a claim under 12 U.S.C. § 411 or § 412. *See Yancey v. Fulton Financial Corp.*, No. 23-CV-1791, 2024 WL 1344534, at *1 (E.D. Va. Mar. 8, 2024). Further, only federal officials can impose civil penalties under 12 U.S.C. § 504; private individuals have no right to enforce Section 29. *See Nunez v. Credit Acceptance Corp.*, No. 24-CV-1122, 2024 WL 4202448, at *3 (D. Conn. Aug. 27, 2024) (finding the same). Because the relevant statute does not create a private right of action, the Court must dismiss all claims under the Federal Reserve Act. *See Fair v. Verizon Commc'ns Inc.*, 621 F. App'x 52, 53 (2d Cir. 2015) (summary order) ("Determinations that a federal statute does

not provide a private right of action are typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) (the 'Rules') for failure to state a claim.").

**\*3** The Court must also dismiss Plaintiff's claim under 15 U.S.C. § 1615. Citing this provision of the Truth in Lending Act ("TILA"), Plaintiff "demands the return of the unearned interest to the principal." [19] The statute in question requires a creditor to "promptly refund any unearned portion of the interest charge" to "a consumer [who] prepays in full the financed amount under any consumer credit transaction[.]" 15 U.S.C. § 1615(a)(1). Here, however, Plaintiff does not appear to have "prep[aid] in full the financed amount" under a consumer credit transaction. Plaintiff may have paid some part of the total amount due, but the Court cannot conclude that he prepaid in full the financed amount. The letters that Plaintiff appends to his complaint suggest that he owed Santander at least $7,000,000 as of July 2024. Further, Plaintiff does not allege that he paid *unearned interest* to Santander. Without these crucial facts, Plaintiff does not make out a claim under 15 U.S.C. § 1615. [20] *See Nunez*, 2024 WL 4202448, at *4 (noting that a plaintiff had not "alleged any facts to suggest a violation of" § 1615). The Court must dismiss this claim.

Plaintiff also cites to the "Bill of Exchange Act of 1882" throughout his complaint and opposition briefs. [21] He claims that the "Bill of Exchange is a financial document used to order a party to pay a specific sum of money to another party[.]" [22] However, the Court cannot trace this citation back to any federal or state law currently in effect. Because the law does not appear to exist, other courts in the District of Connecticut—and again, throughout the country —have dismissed claims purportedly based on the "Bill of Exchange." *See Nunez*, 2024 WL 4202448, at *3 (dismissing a *pro se* plaintiff's claims under the "Bill of Exchange" and collecting cases); *Thomas v. BMO Harris Bank*, No. 23-CV-224, 2024 WL 477542, at *6 (S.D. Ala. Jan. 19, 2024). This Court must do the same.

In addition, in the portion of the complaint form allotted to jurisdiction, Plaintiff cites to Uniform Commercial Code section 3-603. Because the Uniform Commercial Code provides no basis for federal jurisdiction, the Court assumes instead that Plaintiff attempts to bring a claim under this section. However, the U.C.C. is not a federal law, nor is it a state law, and it provides Plaintiff with no cause of action. *See Nunez*, 2024 WL 4202448, at *3 (citing *Moss v. Stanley*,

No. 8:20-CV-3194, 2020 WL 6111002, at *2 (D.S.C. Oct. 6, 2020)). Even if section 3-603 carved out a right of action, Plaintiff does not explain how this section applies to his auto loan.

In the same vein, the Court must dismiss any claims that Plaintiff attempts to bring under 31 C.F.R. §§ 328.5 and 357.13. First, not only does § 328.5 create no private cause of action, *see Nunez*, 2024 WL 4202448, at *3, but this section also seems to pertain to bearer securities. The Court sees no link between Plaintiff's allegations and this section of the Code of Federal Regulations. Section 357.13 deals with Government obligations with regards to book-entry securities that are in the commercial book-entry system. *See* 31 C.F.R. § 357.13. Again, the Court can find no link between this provision and Plaintiff's complaint, devoid of any allegations involving securities. No private individual has ever brought a claim under either provision of the Code of Federal Regulations.

Finally, Plaintiff cites to 12 U.S.C. § 1431 in his complaint. He suggests that this section "mandates that banks are borrowers and consumers like [P]laintiff [ ] are creditors who bring business to the bank." [23] As the court noted in *Nunez*, however, this section "defines the powers and duties of the Federal Home Loan Banks[.]" 2024 WL 4202448, at *3 (citing *Anderson v. Navy Fed. Credit Union*, No. 23-CV-5506, 2023 WL 6481518, at *2 (W.D. Wash. Oct. 25, 2023)). But Plaintiff takes issue with how Santander has handled and serviced his auto loan—not a home loan. Again, the Court cannot link the authority to any facts alleged in the complaint. Even if this section were relevant to the complaint, it does not appear to create a private right of action. [24]

**\*4** In sum, Plaintiff refers to a variety of authorities, including federal statutes, but he cannot make out a claim under any of them. The Court must therefore dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### B. Sovereign Citizen Theories

Though the complaint is difficult to follow, the Court notes that some of Plaintiff's arguments resemble those put forward by so-called sovereign citizens. The Second Circuit has described the movement as a "loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x

105, 106 n.1 (2d Cir. 2013) (summary order). The Third Circuit has summarized one of the movement's fundamental theories:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman[.]

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008).

In a document entitled "Durable Power of Attorney," appended to the complaint, Plaintiff appears to appoint "ARNOLD EDWARD" as his "attorney-in-fact," authorized to act on his behalf. In other words, Plaintiff suggests that ARNOLD EDWARD, in capital letters, refers to a legal entity distinct from Edward Arnold himself. [25] Sovereign citizens believe that "when a person's name is spelled ... with initial capital letters and small letters, it represents the 'real person' ... [and w]henever a person's name is written in total capitals, ... only [a] 'strawman' is referenced, and the flesh and blood person is not involved.' " *Santana v. United States*, No. 16-CV-5750, 2017 WL 2470834, at *2 (S.D.N.Y. June 6, 2017).

Further, in his opposition to the motion to dismiss, Plaintiff explains that he "decided to endorse the contract for the remaining balance on the vehicle," after Santander (or the dealership) denied the requested upgrade. To that end, Plaintiff "submitted the endorsed Tender of payment with said instructions to Santander, [ ] who insisted on cash payment." [26] In his letters to the Chief Financial Officer of Santander, entitled "Instructions for Principal Account Setoff," Plaintiff sought to apply certain "balance[s]" to other accounts "for setoff." [27] The Court understands these muddled statements to mean that Plaintiff attempted to pay off the auto loan with an "endorsement, or other non-standard, self-generated document[.]" *Sears v. Rocket Mortgage, LLC*, No. 25-CV-409, 2025 WL 1001586, at *3 (E.D. Cal. Apr. 3, 2025).

The Court dismisses these arguments as frivolous. Indeed, courts in this Circuit and throughout the country have labeled

these theories as such. *See, e.g., Moore v. Discover Bank*, No. 24-CV-3194, 2024 WL 2784878, at *2 (S.D.N.Y. May 28, 2024) (dismissing a complaint where a plaintiff directed a bank executive to "apply the positive value of the negotiable instruments on the account to set off the account and bring it to zero"); *Masala v. Napolitano*, No. 22-CV-1641, 2024 WL 1157261, at *2–3 (D. Conn. Mar. 18, 2024) (dismissing an appeal where a plaintiff argued that he "tender[ed a] payment" that included a "Private Registered Set-Off Bond valued at One Million Dollars"); *Sears*, 2025 WL 1001586, at *2–3 (dismissing a complaint where "the underlying premise of the complaint [was] that plaintiff's promissory note to defendant was legal tender that discharged the debt on his mortgage"). To the extent that Plaintiff argues that he paid his loan off by "endors[ing] it"—that is, by submitting an "endorsed Tender of payment" to Santander—the Court must dismiss those arguments. [28]

### C. Leave to Amend

**\*5** The Court will grant Plaintiff leave to amend the complaint. Generally, a court should allow amendment "unless the court can rule out any possibility, however unlikely it may be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007); *see Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 795 (2d Cir. 1999). Plaintiff does not identify a valid cause of action in his complaint and the Court dismisses the specious arguments that flow from the sovereign citizen movement, but the Court concedes that Plaintiff could make out a claim with additional **factual allegations**. Plaintiff must file a motion to amend the complaint by **June 6, 2025**, and he must append to his motion the proposed amended complaint, which will replace in its entirety the initial complaint. If Plaintiff fails to file a motion to amend by this date, the Court will close the case.

### IV. CONCLUSION

For these reasons, the Court **grants** Santander's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). If Plaintiff wishes to amend his complaint, he must file a motion to amend, including a proposed amended complaint, on or before **June 6, 2025**.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1358546

---

### Footnotes

1    Compl., ECF No. 1, at 1; ECF No. 1-1 at 7. On a motion to dismiss, a court generally does not look beyond the facts in the complaint, documents appended to the complaint or incorporated by reference, and matters of which it may take judicial notice. *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016). Thus, the Court reviews not only the complaint, here, but also the letters and documents appended to the pleading.

2    ECF No. 1-1 at 7.

3    ECF No. 1-1 at 6.

4    *Id.*

5    Compl. at 2.

6    ECF No. 1-1 at 11.

7    *Id.*; Compl. at 2.

8    *Id.*

9    ECF No. 1-1 at 2–5.

10    Compl. at 2.

11    *Id.* at 4.

12    ECF No. 2.

13    ECF No. 10.

14    ECF No. 20.

15    ECF No. 23.

16    ECF No. 25.

17    Am. Opp., ECF No. 28. Plaintiff filed the amended opposition brief without leave of the Court. Given Plaintiff's *pro se* status, however, the Court will consider the amended opposition brief in ruling on the motion to dismiss. *See Matthews v. City of N.Y.*, No. 23-CV-3959, 2023 WL 3505634 at *1 (S.D.N.Y. Sept. 10, 2024) (considering a *pro se* plaintiff's amended opposition brief, though it was filed without the court's leave).

18    *See* Federal Reserve Act, "Section 16. Note Issues," https://www.federalreserve.gov/aboutthefed/section16.htm (last visited April 24, 2025); Federal Reserve Act, "Section 29. Civil Money Penalties," https://www.federalreserve.gov/aboutthefed/section29.htm (last visited April 24, 2025).

19    Am. Opp. at 4.

20    Defendant also suggests that this statute does not create a private cause of action. Because the Court dismisses Plaintiff's claim on other grounds, it does not reach this argument. The Court notes, however, that several district courts have entertained complaints brought by private individuals under 15 U.S.C. § 1615(a). *See, e.g., Richardson v. Capital One, N.A.*, 839 F. Supp. 2d 197, 200–03 (D.D.C. 2012).

21    Compl. at 2; Am. Opp. at 2.

22    Am. Opp. at 2.

23    Am. Opp. at 3.

24    The Court notes that Plaintiff cites to 18 U.S.C. § 8 in his opposition briefs, but not in his complaint. Even if Plaintiff had properly included this statute in the complaint, it would not provide a valid cause of action. *See Nunez*, 2024 WL 4202448, at *3 (noting that 18 U.S.C. § 8 simply defines a term without creating a cause of action).

25    ECF No. 1-1 at 1.

26    Am. Opp. at 1.

27    ECF No. 1-1 at 2–5.

28    Compl. at 2; Am. Opp. at 1.

---

End of Document                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1769318
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Charles SCRIVEN, Plaintiff,
v.
Jeremy BARNUM, Defendant.

24-CV-1805(EK)(MJ)
|
Signed April 24, 2024

**Attorneys and Law Firms**

Charles Scriven, Brooklyn, NY, Pro Se.

### MEMORANDUM & ORDER

ERIC KOMITEE, United States District Judge:

**\*1** On March 8, 2024, plaintiff Charles Scriven filed this action against defendant Jeremy Barnum, the Chief Financial officer of Chase Bank. Proceeding *pro se,* Scriven invoked the court's federal-question jurisdiction under 28 U.S.C. § 1331. Compl., ECF No. 1. By Order dated March 19, 2024, the court granted Scriven's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), ECF No. 2, but dismissed the complaint with leave to amend. On April 9, 2024, Scriven filed an amended complaint. Am. Compl., ECF No. 4. As set forth below, the amended complaint is now dismissed with prejudice for failure to state a claim.

### I. Background

Scriven alleges that in October 2022, he purchased a car from South Shore Mitsubishi with financing provided by Chase Bank. Am. Compl. at 5. Scriven further alleges that "Mr. Barnum has breach[ed] the contract by failing to perform his duty by not accepting negotiable instrument." *Id.* at 6. The "negotiable instrument" Scriven refers to is a "notice of claim to interest." *Id.* at 5-6. The complaint does not explain what exactly that is, but alleges that Scriven sent the notice to Barnum at least three times and that the notices were ignored. *Id.* On February 16, 2024, the car was repossessed. *Id.* at 6. Scriven seeks "the title to [his] car, [his] car back or the full amount of the cost of the car." *Id.* at 7.

### II. Standard of Review

To state a valid claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). [1] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9 (1980).

Still, when a plaintiff is proceeding *in forma pauperis* (as is the case here), the court must dismiss a complaint that fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### III. Discussion

Plaintiff brings claims against Barnum under the Federal Reserve Act, "12 U.S.C. §§ 1431/372," and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, 6802. See Am. Compl. at 4. He has not alleged facts to support a plausible federal claim under either statute.

First, there is no private right of action under the Federal Reserve Act. *See* 12 U.S.C. § 504; *Jones v. Farney,* No. 1:23-CV-563, 2023 WL 5345173 (N.D.N.Y. Aug. 21, 2023) (dismissing pro se complaint alleging violation of Federal Reserve Act on that basis). "Determinations that a federal statute does not provide a private right of action are typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) ... for failure to state a claim." *Fair v. Verizon Commc'ns Inc.,* 621 F. App'x 52, 53 (2d Cir. 2015).

**\*2** Second, to the extent that Scriven attempts to allege a claim under the FDCPA, 15 U.S.C. § 1692, he fails to do so. Scriven does not set forth facts to show or to suggest a claim under the FDCPA and, in any event, the FDCPA does not apply to a creditor, such as Barnum. See *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir. 1998)("As a general matter, creditors are not subject to the FDCPA."); *Shieh v. Flushing Branch, Chase Bank USA, N.A.,* No. 11-CV-5505, 2012 WL 2678932, at \*7-8 (E.D.N.Y. July 6, 2012)(dismissing pro se plaintiff's FDCPA claims against

Chase Bank because "Chase, as Shieh's former creditor, is exempted from the FDCPA."). [2]

Thus, Scriven has not articulated a claim for relief under either cause of action specified in the complaint.

### IV. Conclusion

Accordingly, this action is dismissed with prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)(affirming dismissal of *pro se* complaint without leave to replead because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it"); *Liner v. Goord*, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000) ("When a plaintiff does not correct the defects in an initial pleading through the filing of a more detailed amended complaint, the amended complaint may be dismissed with prejudice.") (collecting cases).

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1769318

---

### Footnotes

1    Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2    This is true even if the creditor-bank has an in-house collections function. "A creditor's in-house collection division, such as Citicorp's Debtor Assistance, is not considered a debt collector [under the FDCPA] so long as [it uses] the creditor's true business name when collecting .... An in-house collection unit will be exempt from the provisions of the FDCPA if it collects its own debts in the true name of the creditor or a name under which it has consistently done business." Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 235 (2d Cir. 1998).

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Skvarla v. MRS BPO, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 2941118
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brian SKVARLA, on behalf of himself
and all others similarly situated, Plaintiffs,
v.
MRS BPO, LLC and John and
Jane Does 1-10, Defendants.

21 Civ. 55
|
Signed 07/12/2021

**Attorneys and Law Firms**

Alla Gulchina, Price Law Group, APC, Hoboken, NJ,
Simon Goldenberg, Law Office of Simon Goldenberg PLLC,
Brooklyn, NY, for Plaintiffs.

Michael Thomas Etmund, Moss & Barnett, Minneapolis,
MN, for Defendant MRS BPO, LLC.

**OPINION & ORDER**

| SINGLE PAYMENT | NEED MORE TIME? | MONTHLY PAYMENTS |
|---|---|---|
| Make a **ONE-TIME** payment of $7,233.52 by 11/20/2019 to resolve your account | Make **TWO PAYMENTS** of $4,621.42 as follows: Payment 1 by 11/20/2019 Payment 2 by 12/20/2019 to resolve your account | Can't make a settlement right now? We can work with you on a payment plan for the full balance of your account |

If you need additional time to respond to these offers, please
contact us. We are not obligated to renew these offers.

Ex. A to Pl.'s Compl.
The Complaint is premised on the contention that the phrase
"[w]e are not obligated to renew these offers" is false and
misleading. Doc. 1. at 7.

**b. Procedural History**

Ramos, D.J.:

**\*1**  Brian Skvarla, on behalf of himself and all persons
similarly situated, brings this action against MRS BPO, LLC,
and John and Jane Does 1-10, claiming that MRS improperly
attempted to collect an alleged debt from him in violation of
the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C.
§§ 1692-1692p. Before the Court is MRS's motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 10. For the reasons
set forth below, the motion is GRANTED.

**I. BACKGROUND**

**a. Factual Background**
MRS is a debt collector that regularly engages in the
collection of "defaulted consumer debts." Doc. 1 at 6. Skvarla
alleges that he received a letter (the "Letter") from MRS on
November 6, 2019, seeking to collect on a debt of $20,093.12
owed to JP Morgan Chase Bank. *Id.* at 7. The Letter included
the following language making several offers to settle the
debt:

On November 6, 2020, Skvarla filed this action in the
Supreme Court of the State of New York, County of New
York. Doc. 10. On January 5, 2021, it was removed to this
Court pursuant to 28 U.S.C. § 1441. *Id.* at 1. On February 19,
2021, MRS moved to dismiss the complaint pursuant to Fed.
R. Civ. P. 12(b)(6). *Id.*

**II. LEGAL STANDARD**

*Motion to Dismiss Fed. R. Civ. P. 12(b)(6)*

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 45 of 67 PageID #: 295

Skvarla v. MRS BPO, LLC, Not Reported in Fed. Supp. (2021)

Under Rule 12(b)(6), a complaint may be dismissed for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the Court accepts that all the factual allegations are true and draws "reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The question on a motion to dismiss " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

*Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act was enacted in 1977 to address practices that were "abusive, deceptive, and unfair" by debt collectors, "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a),(e). The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Wiener v. Bloomfield*, 901 F. Supp. 771, 774 (S.D.N.Y. 1995); 15 U.S.C. § 1692(e). It also forbids debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

 **\*2** To establish a violation under the FDCPA, three elements must be proven: "(1) the plaintiff [must] be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017) (citing *Scott v. Greenberg*, No. 15-CV-05527 (MKB), 2017 WL 1214441, at \*4 (E.D.N.Y. Mar. 31, 2017)).

To determine if there has been a violation of the FDCPA, this district applies the "least sophisticated consumer" standard to the communications in question. *See Ellis v. Solomon & Solomon, PC.*, 591 F.3d 130, 135 (2d Cir. 2010). When applying this standard, courts ask "how the least sophisticated consumer [...] would understand the collection notice." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016).

## III. DISCUSSION

### A. The Letter is Not Misleading under the FDCPA

In applying the least sophisticated customer standard, "courts have held that collection notices violate the FDCPA if the notices contain language that 'overshadows' or 'contradicts' other language that informs consumers of their rights." *Cloman v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). Skvarla claims that the Letter is materially false, deceptive, and misleading under § 1692e of FDCPA. In particular, he alleges that the statement "we are not obligated to renew these offers" is false and misleading, because MRS is "always" obligated to renew such offers. Doc. 11 at 1. Skvarla also insists that the statement, in conjunction with the deadlines, created a sense of urgency of "one-time take-it-or-leave-it settlement offers" by requiring that the first payment be made only 14 days after the date of the Letter. *Id.;* Doc. 10 at 1. He also alleges that the Letter might influence the "least sophisticated consumer" to accept one of the offers in fear that it will not be renewed. Doc. 1 at 8.

MRS argues the statement "we are not obligated to renew this offer" is not misleading as a matter of law. In support, it cites several cases that have upheld this phrase as "safe harbor" language that does not violate the FDCPA, because it "merely inform[s] the consumer that there may not be other settlement offers, while 'dispel[ling] any false impression by the consumer as to his or her options.' " *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 778 (7th Cir. 2020); *see also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (finding no FDCPA violation when the safe harbor language "[w]e are not obligated to renew this offer" was used). Other courts, including the Eastern District of New York, have also held that this "safe harbor" language provides a defense against allegations that a debt collection communication is false or misleading under the FDCPA. *See Saraci v. Capital Mgmt. Servs., L.P.*, 18-cv-05149-AMD-RER, 2019 WL 4602827 (E.D.N.Y. Sept. 23, 2019); *Dillard v. FBCS, Inc.*, 19-CV-968(KAM)(RER), 2020 WL 4937808, at \*5 (E.D.N.Y. Aug. 24, 2020).

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 46 of 67 PageID #: 296

Skvarla v. MRS BPO, LLC, Not Reported in Fed. Supp. (2021)

The Court finds MRS's argument more persuasive. In *Evory*, the Seventh Circuit concluded that identical language would adequately address the chance that a debtor would receive a "false impression of his options by the debt collector's including [the safe harbor language] with the offer." *Evory*, 505 F.3d at 776. The Seventh Circuit noted that the word "obligated" would effectively communicate to the unsophisticated consumer that "there is a renewal possibility but that it is not assured." *Id.* If debt collectors disclosed that their offers would continue even after a rejection, the court reasoned, then the offers would be useless and payments never paid. *Id.* at 775; *see also Sarder v. Acad. Collection Serv., Inc.*, No. 02-CV-2486 (NG)(VVP), 2005 WL 615831, at *3 (E.D.N.Y. Mar. 3, 2005) (concluding that if disclosure was necessary, then it would deter collectors "from ever offering a lower settlement amount, and thus eliminat[ing] settlement possibilities.").

 **\*3** In *Saraci*, the E.D.N.Y. relied on *Evory* and rejected the challenge to the statement "we are not obligated to renew this offer." *Saraci*, 2019 WL 4602827 at *2. The court held that "[t]here is nothing misleading or improper about making a settlement offer and including a deadline with that offer." *Saraci*, 2019 WL 4602827 at *2 n.3 (citing *DeGeorge v. Financial Recovery Service, Inc.*, No. 11-CV-04288, 2012 WL 4473229, at *6 (E.D. Pa. Sep. 28, 2012)). According to the court, there was nothing in the statement that suggested the offer was a onetime deal. *Id.* Conversely, the court found that the intent of the letter was to communicate that "the defendant could renew the offer, but was not obligated to do so." *Id.* at *3 (citing *Evory*, 505 F.3d at 769).

In *Dillard*, the defendant sent the plaintiff a letter offering to resolve her account, which provided four different options (three of which were payments and one of which offered the ability to discuss with a representative). *See Dillard*, 2020 WL 4937808 at *1. On the front page, the letter stated, "[p]lease see reverse side for important information," which included the language "FBCS, Inc. is not obligated to renew this offer." *Id.* at *1-2. The court held that the Defendant properly used the safe harbor language, and that it was not misleading to the least sophisticated consumer when viewing the letter as whole, even though the safe harbor language appeared on the back of the letter. *Id.* at *5. The court held that the letter was clear, reasonable and concise. *Id.* at *6.

Skvarla argues in response that the Court should not follow *Evory* and its use of the safe harbor language, contesting that MRS *is* obligated to renew the offer. *See Evory*, at 505 F.3d 769; *see also* Doc. 1. However, Skvarla's allegation is not supported by facts that would provide a basis for there being an obligation to renew the offer, and is thus conclusory. *See Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 544) (pleadings must allege facts that are plausible and not merely conclusory statements). It is true that "debt collectors [...] frequently renew their offers if the consumer fails to accept the initial offer." *Evory*, 505 F.3d at 775. However, this is not the same as MRS having an obligation to renew the offer. Rather, the safe harbor language exists so that the least sophisticated consumer does not believe that this offer will be final or that it will be certainly renewed. *See Evory*, 505 F.3d at 769; *see also Preston*, 948 F.3d at 772.

The Court finds that the safe harbor language does not mislead the "least sophisticated consumer" by creating a false sense of urgency regarding the offers. Debt collection letters must be read as a whole, "[s]o long as nothing on the front of the letter overshadows or contradicts the [information required by statute]." *McStay v. I.C. Sys. Inc.*, 308 F.3d 188, 191 (2d Cir. 2002). When looking at the Letter as a whole, the safe harbor language follows the offers. Moreover, Skvarla's argument that the Letter creates a "sense of urgency" is rebutted by the language that immediately follows the offers, that "[i]f you need additional time to respond to these offers, please contact us." Doc. 1. This statement undermines Plaintiff's argument that the language is misleading.

Consistent with the decisions of other circuits that have analyzed the same language under similar circumstances, the statement made by MRS in the Letter is not misleading as a matter of law.

### B. Materiality Requirement

MRS also argued that "[e]ven if MRS' letter is misleading, there is no material violation of the FDCPA." Doc. 10 at 9. A statement is considered material "if it is capable of influencing the decision of the least sophisticated [consumer]." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015)); *see also Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."). Here, it is not necessary to address the materiality requirement because the Court finds the safe harbor language adequate and not misleading as a matter of law. 15 U.S.C. §§ 1692-1692p. Because it is not misleading, it also cannot be *materially* misleading.

**IV. CONCLUSION**

**\*4**  For the foregoing reasons, MRS's motion to dismiss Skvarla's complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 9, and enter judgment for MRS.

It is SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2941118

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 478068
Only the Westlaw citation is currently available.
United States District Court, S.D.
Alabama, Southern Division.

Michael THOMAS, Plaintiff,
v.
WELLS FARGO BANK, Defendant.

CIVIL ACTION NO. 23-00206-TFM-B
|
Signed January 12, 2024

**Attorneys and Law Firms**

Michael Thomas, Thomasville, AL, Pro Se.

Victor Lee Hayslip, Jackson Alexander Freese, Burr &
Forman LLP, Birmingham, AL, for Defendant.

**REPORT AND RECOMMENDATION**

SONJA F. BIVINS, UNITED STATES MAGISTRATE
JUDGE

 **\*1**  This action is before the Court on Defendant Wells Fargo
Bank, N.A.'s motion to dismiss Plaintiff Michael Thomas'
amended complaint (Doc. 11). The motion has been referred
to the undersigned Magistrate Judge for consideration and
recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docs.
4, 10). Upon consideration of all matters presented, the
undersigned recommends, for the reasons stated herein, that
Defendant's motion (Doc. 11) be **GRANTED in part**, and
that this action be **DISMISSED with prejudice**.

**I. BACKGROUND**

Plaintiff Michael Thomas ("Thomas"), who is proceeding
*pro se*, filed a complaint against Defendant Wells Fargo
Bank, N.A. ("Wells Fargo") [1] and paid the filing fee for a
civil action. (Docs. 1, 2). In his original complaint, Thomas
asserted the existence of federal question jurisdiction based
on "Breach of Contract" and described his claim as follows: "I
sent a Power of attorney proving I'm the agent acting on behalf
of the principal along with instructions to the CFO. I sent
instructions three times with my endorsed bill of exchange
and fiduciary duties was not performed." [2] (Doc. 1 at 3-4).
For relief, Thomas requested "1% of total assets because

Federal Reserve Act Section 29 states after third tier the
penalty is $1,000,000 a day or 1% of total assets ... plus
$5,000,000 attorney fees." (Id. at 4).

On July 10, 2023, Wells Fargo filed a motion to dismiss
Thomas' original complaint. (Doc. 6). On July 14, 2023,
Thomas filed an amended complaint on his own initiative. [3]
(Doc. 8). Thomas' amended complaint superseded his original
complaint and became the operative pleading in this case.
Wells Fargo's motion to dismiss the original complaint was
therefore denied as moot. (Doc. 10).

In his operative amended complaint, Thomas asserts the
existence of federal question jurisdiction based on: "Federal
Reserve Act 29 (Breach of Fiduciary duty), Federal Reserve
Act Section 16 part 1 & 2, Bill of Exchange Act, 12
USC 1431, 15 USC 1605, 15 USC 1615, Cestui Que Vie
Act." (Doc. 8 at 3). Thomas describes his claim as "Breach
of Contract" and requests the following relief: "I want owed
Interest and equity as well as title to vehicle, refund of every
payment made over one dollar." (Id. at 4).

Thomas also attaches various documents to his amended
complaint. (Id. at 6-25). These include a power of attorney
form that purports to designate "Michael Thomas" as the
"agent" for "MICHAEL THOMAS" as "principal," as well
as three purported affidavits signed by "Michael Thomas"
as "agent" on behalf of "MICHAEL THOMAS/Principal." [4]
(Id. at 6-19, 21).

 **\*2**  The first purported "Affidavit" attached to the amended
complaint states:

> On the 18th day of April 2023,
> I, Thomas, Michael/agent, on behalf
> of MICHAEL THOMAS/Principal
> herby accept all titles, rights, intertest
> and equity owed to MICHAEL
> THOMAS/Principal. I hereby instruct
> the CFO of WELLS FARGO BANK
> to transfer the principal's balance to
> the principal's account every monthly
> billing cycle for set off. I would like
> the title for the 2016 Subaru Legacy
> to be mailed to the principal's address
> that's on file. I instruct the CFO to
> communicate in writing within five
> (5) business days once the instructions

are completed. If instructions are not completed, I instruct the CFO to respond within five (5) business days giving reason for non-performance of fiduciary duties. If no communication is made within five (5) business days I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/PRINCIPAL can assume that the instructions have been completed.

(Id. at 18).

The second purported "Affidavit" subtitled "Opportunity to Cure (Second Tier)" states:

> On the 26th day of April 2023, I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/Principal herby accept all titles, rights, intertest and equity owed to MICHAEL THOMAS/Principal. I hereby instruct the CFO of WELLS FARGO BANK to transfer the principal's balance to the principal's account# ... for set off. I instruct the CFO to communicate in writing within five (5) business days once the instructions are completed. If instructions are not completed, I instruct the CFO to respond within five (5) business days giving reason for non-performance of fiduciary duties. If no communication is made within five (5) business days I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/PRINCIPAL can assume that the instructions have been completed.

(Id. at 19).

The third purported "Affidavit" subtitled "Default Judgement (Third Tier)" states:

> On the 4th day of May 2023, I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/Principal herby accept all titles, rights, intertest and equity owed to MICHAEL THOMAS/Principal. I hereby instruct the CFO of WELLS FARGO BANK to transfer the principal's balance to the principal's account# ... for set off. I instruct the CFO to communicate in writing within five (5) business days once the instructions are completed. If instructions are not completed, I instruct the CFO to respond within five (5) business days giving reason for non-performance of fiduciary duties. If no communication is made within five (5) business days I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/PRINCIPAL can assume that the instructions have been completed.

(Id. at 21).

Additionally, Thomas attaches correspondence from Wells Fargo providing payoff details for his auto loan, which Thomas apparently wrote on and returned to Wells Fargo along with his second purported affidavit. (Id. at 20). This document contains handwritten notations "By: Thomas, Michael/agent For: MICHAEL THOMAS/Principal" that include the terms "Accepted For deposit" and "Payable to bearer," along with handwritten instructions to "Pay on demand" the amount of $9,466.33, which was the payoff amount for Thomas' auto loan. (Id.). Thomas also attaches a Bill of Sale and other documents apparently relating to his purchase of a 2016 Subaru Legacy from Ethan Hunt Automotive, LLC. (Id. at 22-25).

**\*3** On July 28, 2023, Wells Fargo filed the instant motion to dismiss Thomas' amended complaint and a supporting memorandum. (Docs. 11, 11-1). Wells Fargo argues that Thomas' amended complaint is due to be dismissed for lack of subject matter jurisdiction because none of the laws referenced in the amended complaint convey federal question jurisdiction in this case. (Doc. 11-1 at 4-6). Wells

Fargo further argues that if the Court finds subject matter jurisdiction present, the amended complaint is due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. (Id. at 6-8).

Thomas filed a timely response to the motion, which states that Wells Fargo's motion to dismiss should be denied for the following reasons:

> The breach of contract occurred when the first letter of instructions was sent to the CFO to transfer the principal's balance to the principal's account for set off and it wasn't done which was a violation of my rights. The violation was when I submitted my negotiable instrument for set off and it wasn't performed which made it a problem on behalf of the account, which I'm the beneficiary owner of the account, which made it a problem for me. I'm using the constitution and the defendant should state why I'm not able to use the Bill of Exchange Act. The defendant should state which constitution they are going by to keep me from claiming and using the interest and equity that's owed to the principal and using it to set off the account.

(Doc. 13).

Wells Fargo filed a reply to Thomas' response. (Doc. 14). Thomas then filed a second response in opposition to Wells Fargo's motion to dismiss, which was not timely filed and was filed without the Court's permission. (Doc. 15). Thus, Wells Fargo's motion to dismiss has been fully briefed and is ripe for resolution.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction and are authorized by Constitution and statute to hear only certain types of actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).

Federal district courts have subject matter jurisdiction in two primary types of cases. First, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Second, district courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a)(1).

"The plaintiff bears the burden of affirmatively asserting facts that show the existence of jurisdiction and including 'a short and plain statement of the grounds upon which the court's jurisdiction depends.' " DeRoy v. Carnival Corp., 963 F.3d 1302, 1311 (11th Cir. 2020) (citing Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); Fed. R. Civ. P. 8(a)). A plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 when he "pleads a colorable claim 'arising under' the Constitution or laws of the United States." Arbaugh v. Y&H Corp., 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). A plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1332 when he "presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount [of] $75,000." Id.

**\*4** A party may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) challenge to subject matter jurisdiction may take the form of a facial attack or a factual attack on the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam). In a facial attack, such as the one apparently made by Wells Fargo in this case, the court must evaluate whether the complaint alleges a sufficient basis for subject matter jurisdiction, while accepting all factual allegations as true for purposes of the motion. Id. at 1529. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Dismissal for lack of subject

matter jurisdiction "must be without prejudice." McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1313 (11th Cir. 2021).

### B. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations that plausibly support each essential element of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011). A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. A court reviewing a motion to dismiss under Rule 12(b)(6) must typically limit its consideration to the complaint and exhibits attached thereto. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam).

### C. *Pro Se* Litigation.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order

to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted). Even a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

### III. DISCUSSION

As noted, Wells Fargo asserts that Thomas has failed to state a federal question and moves to dismiss his amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 11 at 1-2; Doc. 11-1 at 4-6). As an alternative basis for dismissal, Wells Fargo contends that the amended complaint fails to state a claim upon which relief can be granted and moves to dismiss under Rule 12(b)(6). (Doc. 11 at 1-2; Doc. 11-1 at 6-8).

**\*5** In determining whether subject matter jurisdiction exists, courts must "respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted." Blue Cross & Blue Shield of Ala. v. Sanders, 138 F.3d 1347, 1351–52 (11th Cir. 1998). A federal court may dismiss a claim invoking federal question jurisdiction under 28 U.S.C. § 1331 for lack of subject matter jurisdiction only if the claim "is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " Arbaugh, 546 U.S. at 513 n.10, 126 S.Ct. 1235 (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "[T]he category of claims that are 'wholly insubstantial and frivolous' is exceedingly narrow." Resnick v. KrunchCash, LLC, 34 F.4th 1028, 1034 (11th Cir. 2022). "To strip a district court of subject matter jurisdiction, a plaintiff's federal claim must have 'no plausible foundation, or [ ] the court [must] conclude[ ] that a prior Supreme Court decision clearly forecloses the claim.' " Id. at 1035 (quoting Barnett v. Bailey, 956 F.2d 1036, 1041 (11th Cir. 1992)). A district court should be even more reluctant to dismiss a case under Rule 12(b)(1) where the plaintiff is proceeding *pro se*. Simanonok v. Simanonok, 787 F.2d 1517, 1520 (11th Cir. 1986).

For reasons explained below, the Court finds that Thomas' threadbare pleading fails to state a claim upon which relief can be granted. The Court has also considered whether the amended complaint alleges a basis for this Court's subject matter jurisdiction, given that the complaint's factual content is so thin and some of the authorities referenced clearly cannot form the basis for a federal claim. See Taylor, 30 F.3d at 1366. While it is questionable whether the amended

complaint raises a federal question, the undersigned finds that some of Wells Fargo's arguments for dismissal under Rule 12(b)(1) arguably depend on Thomas' procedurally deficient pleading or relate to the merits of his claims. [5] Accordingly, the undersigned submits that dismissal under Rule 12(b)(6) is the better approach here.

Assuming *arguendo* that subject matter jurisdiction exists, the undersigned finds that Thomas' amended complaint fails to articulate facts plausibly suggesting any entitlement to relief. The Court notes as a preliminary matter that Thomas' amended complaint violates the Federal Rules' requirements that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that a complaint's allegations must "be simple, concise, and direct." See Fed. R. Civ. P. 8(a)(2) & 8(d)(1). The threadbare allegations in Thomas' amended complaint form are neither plain nor direct. Indeed, Thomas labels his claim as one for "Breach of Contract" without providing even a single direct factual allegation in support of such a claim, and he attaches various documents to the amended complaint without offering any explanation as to the relevance of those documents to his complaint. Neither this Court nor Wells Fargo are required to sift through Thomas' attachments and other filings in an effort to decipher his legal theories or the factual grounds for his claims. Nevertheless, because the frivolous nature of Thomas' allegations is reasonably apparent based on a review of Thomas' pleadings, the Court will address Thomas' putative claims and the issues raised in Wells Fargo's motion to dismiss rather than require Thomas to replead in order to comply with Rule 8.

### A. Authorities Cited as the Basis for Federal Question Jurisdiction.

**\*6** As noted *supra*, Thomas alleges that federal question jurisdiction exists because the following "federal statutes, federal treaties, and/or provisions of the United States Constitution" are at issue in this case: "Federal Reserve Act 29 (Breach of Fiduciary duty), Federal Reserve Act Section 16 part 1 & 2, Bill of Exchange Act, 12 USC 1431, 15 USC 1605, 15 USC 1615, Cestui Que Vie Act." (Id.). However, Thomas fails to articulate any facts suggesting that Wells Fargo violated any of the statutes or other authorities referenced in his amended complaint.

First, to the extent Thomas seeks to assert claims under Sections 16 and 29 of the Federal Reserve Act, "district courts across the country have repeatedly rejected attempts to invoke these provisions as a private cause of action." Payne v. Spectrum, 2023 U.S. Dist. LEXIS 223441 at \*5, 2023 WL 8681199, at \*2 (W.D. Tex. Dec. 15, 2023); see White v. Lake Union Ga. Partners LLC, 2023 U.S. Dist. LEXIS 184024 at \*3-5, 2023 WL 6036842, at \*2 (N.D. Ga. July 14, 2023) ("Section 16 of the Federal Reserve Act ... was codified at Subchapter XII of Title 12, Chapter 3 of the United States Code; 12 U.S.C. § 411, *et seq.* Multiple courts across the country have held that this section does not provide plaintiffs with a private right of action and therefore does not establish federal question jurisdiction.... Similarly, Section 29 of the Federal Reserve Act does not provide Mr. White with a cause of action. Section 29 of Federal Reserve Act was added by Financial Institutions Regulatory and Interest Rate Control Act of 1978, and was codified, as amended, at 12 U.S.C. § 504. But that statute provides that '[a]ny penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by (1) in the case of a national bank, by the Comptroller of the Currency; and (2) in the case of a State member bank, by the Board [of Governors of the Federal Reserve System].' 12 U.S.C. § 504(e). Courts have therefore rejected attempts by private individuals to bring claims under that statute."); Morton v. Am. Express, 2023 U.S. Dist. LEXIS 209318 at \*6, 2023 WL 7923927, at \*3 (D.S.C. Oct. 18, 2023) (stating that "it is well settled that Sections 16 and 29 of the Federal Reserve Act do not create a private cause of action"); Harp v. Police & Fire Fed. Credit Union, 2023 U.S. Dist. LEXIS 139418 at \*12, 2023 WL 5152625, at \*4 (E.D. Pa. Aug. 10, 2023) ("[T]o the extent that Harp seeks to assert a claim under the Federal Reserve Act, she lacks a cause of action to do so. In her Complaint, Harp seems to suggest that PFFCU was violating Section 16 of the Federal Reserve Act, 12 U.S.C. §§ 411-21, which governs the issuance and redemption of Federal Reserve notes. As a result, Harp alleges that PFFCU is subject to penalties under Section 29 of the Federal Reserve Act, 12 U.S.C. § 504, which imposes penalties on banks for an array of misconduct. But the imposition of civil penalties under Section 29 is carried out by federal officials, and private individuals do not have a private right of action to enforce Section 29 of the Federal Reserve Act."); Mims v. Bank of Am., 2023 U.S. Dist. LEXIS 226577 at \*4, 2023 WL 8804324, at \*2 (E.D. Tex. Dec. 20, 2023) (noting courts' "collective agreement that neither Section 16 nor Section 29 of the Federal Reserve Act creates a private right of action"); Escobar v. All. Credit Union, 2023 U.S. Dist. LEXIS 225734 at \*10, 2023 WL 8720903, at \*3 (N.D. Tex. Nov. 30, 2023) (finding that Sections 16 and 29 of the Federal Reserve Act, "while federal law, do not create a private right of action"),

report and recommendation adopted, 2023 U.S. Dist. LEXIS 224445, 2023 WL 8720693 (N.D. Tex. Dec. 18, 2023).

 **\*7**  Next, as numerous courts have held when faced with similar complaints filed by *pro se* litigants seeking to evade their financial obligations, Thomas' unexplained reference to a "Bill of Exchange Act" does not provide him with a federal cause of action. See White, 2023 U.S. Dist. LEXIS 184024 at *6, 2023 WL 6036842, at *3 (finding that plaintiff's reference to a string of miscellaneous authorities, including "Bills of Exchange Act 1882," did not "provide him with a federal cause of action"); Wilson v. Aqua Fin., 2023 U.S. Dist. LEXIS 207303 at *9, 2023 WL 7924150, at *4 (D.S.C. Oct. 26, 2023) (finding that plaintiff's reference to "Bills of Exchange Act 1882" did not provide plaintiff with a federal cause of action); Slaughter v. US Cellular, 2023 U.S. Dist. LEXIS 230723 at *6-7, 2023 WL 9051307, at *3 (E.D. Wis. Dec. 29, 2023) ("The plaintiff says that the defendant has violated 'The Bill of Exchange Act,' but did not provide a citation. The court has been unable to identify a federal statute with this name. The British Parliament appears to have adopted a 'Bills of Exchange Act' in 1882 .... There is a Canadian statute called the 'Canada Bills of Exchange Acts.' ... These statutes do not apply to commercial transactions in the United States."); Griffin v. Gen. Elec. Credit Union, 2023 U.S. Dist. LEXIS 163030 at *7, 2023 WL 5955735, at *3 (S.D. Ohio Sept. 13, 2023) ("In what may be intended as a reference to federal law, Plaintiff includes an allegation that the credit union has refused 'to accept my performance per the Bill of Exchange Act of transferring accepted credits to the account of performance of full contract continuing to keep/withhold my securities.' ... But again, the allegations as pled require this Court to speculate as to both what law is referenced and what violation is alleged."), report and recommendation adopted, 2023 U.S. Dist. LEXIS 207449, 2023 WL 8022825 (S.D. Ohio Nov. 20, 2023); Des Rochers v. Moynihan, 2016 U.S. Dist. LEXIS 196284 at *5-6, 2016 WL 11584833, at *2 (W.D. Tex. May 16, 2016) (finding plaintiff's "attempt to enforce an English law in an American court" to be "legally frivolous" where plaintiff purported to bring suit pursuant to the "Bills of Exchange Act of 1882"); Sabrina v. Scott Credit Union, 2023 U.S. Dist. LEXIS 218355 at *2-3, 2023 WL 8470105, at *1 (S.D. Ill. Dec. 7, 2023) ("The Plaintiff cites the Bill of Exchange Act, which is a Canadian law. Canadian law does not apply here; thus the Plaintiff's claims under foreign law are invalid."); Harp, 2023 U.S. Dist. LEXIS 139418, at *4& n.1, 2023 WL 5152625, at *1 & n.1 (where plaintiff accused defendant of violating its obligations under the "Bills of Exchange Act" by failing to recognize her manufactured

documents as legal tender, noting that "[t]here is no Act of Congress with this title"); Payne, 2023 U.S. Dist. LEXIS 223441 at *5, 2023 WL 8681199, at *2 ("Plaintiff is not able to pursue civil remedies under the Bill of Exchange Act ..., and the undersigned finds these claims to be legally frivolous.... The Bill of Exchange Act of 1882 is a Canadian statute with no application here.").

Thomas also lists 12 U.S.C. § 1431, "which defines the powers and duties of the Federal Home Loan Banks." Anderson v. Navy Fed. Credit Union, 2023 U.S. Dist. LEXIS 180090 at *4, 2023 WL 6481518, at *2 (W.D. Wash. Oct. 5, 2023). However, Thomas fails to allege any facts relating to this statute or suggesting how it might apply to his claims against Wells Fargo. Thomas' unexplained reference to 12 U.S.C. § 1431 does not state a viable claim under the statute. See White, 2023 U.S. Dist. LEXIS 184024 at *6, 2023 WL 6036842, at *3 (N.D. Ga. July 14, 2023) (finding that plaintiff's reference to a string of miscellaneous authorities, including "12 U.S.C. § 1431," did not "provide him with a federal cause of action"); Stephens v. Regal Car Sales & Credit, 2023 U.S. Dist. LEXIS 56021 at *6-7, 2023 WL 2760061, at *3 (N.D. Okla. Mar. 31, 2023) (finding that "Plaintiff has not alleged a colorable claim arising under federal law" where plaintiff alleged that defendants violated 12 U.S.C. § 1431 but made no specific factual allegations in support of such a claim); Wilson v. City of Cayce, 2023 U.S. Dist. LEXIS 207301 at *8-9, 2023 WL 7924163, at *4 (D.S.C. Oct. 26, 2023) (finding that plaintiff's bare reference to 12 U.S.C. § 1431 did not provide her with a federal cause of action); Barnes v. Santander Consumer USA, Inc., 2023 U.S. Dist. LEXIS 47903 at *11-12, 14, 2023 WL 2585537, at *4-5 (N.D. Ohio Mar. 21, 2023) ("Plaintiff cites to several statutes that appear irrelevant to the facts alleged in this Complaint. These include ... 12 U.S.C. § 1431 (defining the powers of banks) .... She fails to allege any facts to suggest how these statutes might apply.... I conclude [that plaintiff's pleadings] fail to state a claim upon which relief may be granted.").

Thomas also cites 15 U.S.C. § 1605, a portion of the Truth in Lending Act ("TILA") which sets forth items that should and should not be included when a finance charge is calculated. However, the amended complaint fails to provide any facts to suggest how this statute applies to the circumstances of this case or was violated by Wells Fargo. Accordingly, the complaint fails to state a claim under 15 U.S.C. § 1605. See, e.g., Parker v. Reg'l Acceptance Corp., 2021 U.S. Dist. LEXIS 172099 at *5-6, 2021 WL 4137527, at *3 (D.S.C. Sept. 10, 2021) ("Parker fails to allege any facts from which the court,

using even the most liberal construction, can discern how Regional violated any disclosure obligations imposed by [15 U.S.C.] § 1605 or any other provision set forth in [the Truth in Lending Act]. Thus, the court concludes that Parker has failed to state a claim under TILA."); Clark v. Carvana, 2021 U.S. Dist. LEXIS 115841 at *9-10, 2021 WL 2478570, at *3 (N.D. Ga. Apr. 28, 2021) ("[A]s for Clark's claim based on [15 U.S.C.] § 1605 that defendants took cash in a consumer credit transaction in which a finance charge was involved, ... he does not elaborate on this claim or provide any facts in support, and his allegation is therefore insufficient to state a plausible claim for relief.").

 *8 Thomas further references 15 U.S.C. § 1615, which "obligates a creditor to 'promptly refund any unearned portion of [an] interest charge to [a] consumer' where a consumer 'prepays in full the financed amount under any consumer credit transaction.' " Greene v. Discover Bank, 2024 U.S. Dist. LEXIS 3814 at *7, 2024 WL 85872, at *3 (N.D. Cal. Jan. 8, 2024) (quoting 15 U.S.C. § 1615(a)(1)). Again, however, Thomas fails to allege any facts in support of his claim. To the extent Thomas' amended complaint can be construed to suggest that Wells Fargo violated § 1615 by charging interest after failing to accept his "endorsed bill of exchange" [6] (i.e., the letter on which Thomas had handwritten an array of financial buzzwords) as payment for his remaining auto loan balance, Thomas' submissions plainly did not constitute valid loan payments. See id., 2024 U.S. Dist. LEXIS 3814 at *8, 2024 WL 85872, at *3; see also Slaughter, 2023 U.S. Dist. LEXIS 230723 at *9, 2023 WL 9051307, at *5 (dismissing plaintiff's claim that defendant's alleged refusal to accept his "Bill of Exchange" as payment for his cell phone bill violated 15 U.S.C. § 1615 because "the defendant is not a consumer credit lender and the plaintiff has not alleged that he is owed a refund of unearned interest on a consumer credit transaction"). Accordingly, Thomas has failed to plausibly allege that Wells Fargo violated 15 U.S.C. § 1615.

Finally, Thomas purports to bring a claim under the Cestui Que Vie Act of 1666, "a seventeenth century Act of the English Parliament that presumes a person is dead if there is no 'sufficient and evident proofe' that the person is still alive, for instance if a person is lost at sea." Faulkner v. Decker, 2023 U.S. Dist. LEXIS 223978 at *1, 2023 WL 8653847, at *1 (D. Idaho Dec. 14, 2023). However, this English law appears to have no application to Thomas and in any event plainly provides him with no federal cause of action. See White, 2023 U.S. Dist. LEXIS 184024 at *3-5,

2023 WL 6036842, at *2 (finding that plaintiff's reference to the "Cestui que Vie Act 1666" did not provide him with a colorable federal cause of action). Indeed, Thomas' reliance on the Cestui Que Vie Act "appears to be derived from popular but erroneous 'Constitutionalist' or 'sovereign citizen' theories of government" that have "been consistently rejected by the courts." Faulkner, 2023 U.S. Dist. LEXIS 223978 at *5, 2023 WL 8653847, at *2; see Wood v. United States, 161 Fed. Cl. 30, 34-35 (Fed. Cl. 2022) ("Sovereign citizens also sometimes reference the Cestui Que Vie Act of 1666, or a 'cestui que vie' trust, as support for their arguments in court.... In short, the legal fiction presented by plaintiff in the complaint is not based in law but in the fantasies of the sovereign citizen movement."); Anderson, 2023 U.S. Dist. LEXIS 180090 at *7, 2023 WL 6481518, at *3 ("Although Anderson does not expressly state he is a 'sovereign citizen,' his allegations, explanations, and exhibits are all demonstrative of his claims being rooted in sovereign citizen ideology. Specifically, Anderson cites the Cestui Que Vie Act of 1666 as basis for federal question jurisdiction and includes a document entitled 'DURABLE POWER OF ATTORNEY[,]' both of which are tied to theories associated with the sovereign citizen movement.") (internal citation omitted).

**B. Breach of Contract and Breach of Fiduciary Duty.**

As noted, Thomas describes his claim as one for "Breach of Contract." (Doc. 8 at 4). To the extent Thomas is attempting to assert a standalone claim for breach of contract, that cause of action is presumed to arise under state law, not federal law. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Tangen v. Ideacom of the Gulf Coast, Inc., 590 F. App'x 836, 838 (11th Cir. 2014) (per curiam) (quoting Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009)).

 *9 Thomas does not plead facts plausibly suggesting that each of the above-listed elements are met. Thomas has not identified any specific contractual provision that he believes has been breached. More fundamentally, to the extent Thomas suggests that handwriting financial buzzwords on loan-related correspondence and repeatedly sending "instructions" to "transfer the principal's balance to the principal's account# ... for set off" amounted to legitimate performance under a contract, Thomas' assertion is highly

implausible and, indeed, frivolous. Also highly implausible is Thomas' suggestion that Wells Fargo's failure to comply with his nonsensical demands amounted to nonperformance under a contract between the parties. See Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758-60 (W.D. Va. 2007) (finding plaintiff's "claim that tendering the Bill of Exchange amounted to legitimate performance of the contract ... highly implausible" when "the legal authorities [plaintiff] cites and the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper"), aff'd, 282 F. App'x 260 (4th Cir. 2008) (per curiam); McGee v. Nissan Motor Acceptance Corp., 619 F. App'x 555, 555-56 (7th Cir. 2015) (finding plaintiff's assertion that his loan obligations were discharged by lender's refusal to honor a "bill of exchange" that plaintiff said made the United States Treasury responsible for his debt to be frivolous); Harp, 2023 U.S. Dist. LEXIS 139418 at *8-9, 2023 WL 5152625, at *3 (dismissing with prejudice breach of contract claim where it was clear from the complaint's exhibits that plaintiff's "bill of exchange" was not valid legal tender for payment of credit card debt, and "rather than a legally enforceable document noting an existing debt that [defendant] owed to her, [plaintiff] simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to [defendant] as valid legal tender for *her* credit card debt") (emphasis in original). Additionally, to the extent Thomas seeks to bring a breach of contract claim under any of the sources cited in his complaint as bases for federal question jurisdiction, he fails to state a plausible claim for relief under those authorities for the reasons previously discussed.

Thomas also alleges "(Breach of Fiduciary duty)" in connection with his assertion that Section 29 of the Federal Reserve Act is at issue in this case. (Doc. 8 at 3). To state a claim for breach of fiduciary duty under Alabama law, "a party must allege: (1) the existence of a fiduciary relationship between the parties; (2) a breach of the fiduciary duty; and (3) damages caused by the breach." Prudential Mut. Fund Servs., LLC v. Meredith, 2021 U.S. Dist. LEXIS 136582 at *12, 2021 WL 3116819, at *4 (S.D. Ala. July 22, 2021). The amended complaint is utterly devoid of facts plausibly suggesting the existence of a fiduciary relationship between Wells Fargo and Thomas or that Wells Fargo breached any fiduciary duty to Thomas, either by refusing to accept Thomas' "endorsed bill of exchange" as payment or otherwise. Thus, to the extent Thomas seeks to assert a standalone breach of fiduciary duty claim, he fails to allege facts in support of such a claim. And, to the extent Thomas asserts a breach of fiduciary duty claim under Section 29 of the Federal Reserve Act, he fails to state

a viable claim because Section 29 of the Federal Reserve Act does not create a private cause of action.

### C. Dismissal With Prejudice.

Wells Fargo asserts that Thomas' claims rely on theories that have been wholly rejected by federal courts and argues that the amended complaint should be dismissed with prejudice. (Doc. 11-1 at 2). Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a deficient complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a) (2). However, leave to amend may be denied if amendment would be futile. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). Here, the undersigned concludes that the most glaring defects in Thomas' amended complaint are substantive, such that any further amendments would be futile. More specifically, as the Court has explained previously, [7] Thomas' pleadings bear unmistakable hallmarks of the sovereign citizen movement and are plainly founded on redemptionist legal theories that have been uniformly rejected as a frivolous waste of court resources. [8]

**\*10** Thomas' amended complaint and other filings in this action are similar to many others "filed by *pro se* litigants filled with frivolous and nonsensical quasi-legal assertions and baseless theories in an attempt to avoid paying their debts and the consequences of their failure to pay their debts, in particular by alleging that they have satisfied their obligations through their own manufactured documents rather than legal forms of payment." White v. Regular-Ascendant Holidays, 2023 WL 8797513, at *3 (N.D. Ga. Oct. 25, 2023). The legal authorities Thomas cites and the documents he attaches to his complaint reflect that, like many other borrowers who have attempted to discharge their debts under a redemption theory by unilaterally issuing "bills of exchange" or similar manufactured documents, he did not tender valid payment "but rather a worthless piece of paper" when he "simply handwrote an array of financial buzzwords" on his loan correspondence "and tried to pass this off" to Wells Fargo as valid payment for his auto loan. See Bryant, 524 F. Supp. 2d at 760; Harp, 2023 U.S. Dist. LEXIS 139418 at *8-9, 2023 WL 5152625, at *3.

Like the redemptionist theory itself, Thomas' legal arguments are convoluted. (See Docs. 9, 13, 15). Nevertheless, it is readily apparent despite the nonsensical nature of Thomas' arguments that the obscurely pled claims in his amended complaint are predicated on a variation of the redemptionist

legal theory, which is fundamentally frivolous. Consequently, any amendments to Thomas' amended complaint would be futile and non-curative. Thus, this action should be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### IV. CONCLUSION

For the reasons set forth above, the undersigned recommends that Wells Fargo's motion to dismiss Thomas' amended complaint (Doc. 11) be **GRANTED in part**, and that this action be **DISMISSED with prejudice**.

#### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala.

GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **12th** day of **January, 2024.**

### All Citations

Slip Copy, 2024 WL 478068

---

### Footnotes

1    The Defendant's name is listed as "Wells Fargo Bank" in Thomas' complaint and amended complaint. (Doc. 1 at 1-2; Doc. 8 at 1-2).

2    Unless otherwise indicated by brackets, quoted language from Thomas' *pro se* filings is reproduced herein without modification or correction for typographical, grammar, or spelling errors.

3    Thomas utilized a complaint form titled "Pro Se 1 (Rev. 12/16) Complaint for a Civil Case" for both his original complaint and his amended complaint. (See Docs. 1, 8).

4    None of the purported affidavits were sworn to and subscribed before a notary. (See Doc. 8 at 18-19, 21).

5    See Greene v. Discover Bank, 2024 U.S. Dist. LEXIS 3814 at *1, 5, 7-8, 2024 WL 85872, at *1-3 (N.D. Cal. Jan. 8, 2024) (where bank did not accept plaintiff's attempt to pay off his credit card account balance by mailing a payment coupon on which he had written that payment of his entire balance should be made "on demand," and plaintiff subsequently asserted claims against the bank that included an alleged violation of 15 U.S.C. § 1615, which obligates a creditor to "promptly refund any unearned portion of [an] interest charge to [a] consumer" where a consumer "prepays in full the financed amount under any consumer credit transaction," the court determined that to the extent the plaintiff based his claim on interest charged despite his attempts to pay his balance by mailing a marked-up payment coupon, the mailings did not constitute valid payments; thus, the court dismissed plaintiff's claims under Rule 12(b)(6)).

6    See Doc. 15 at 1 (Thomas' assertion that he "sent an endorsed bill of exchange, and the Defendant didn't accept it [and] denied it as a form of payment").

7    See Thomas v. Servbank, 2023 WL 9226936, at *—— – ——, 2023 U.S. Dist. LEXIS 218115, at *17-23 (S.D. Ala. Dec. 7, 2023) (explaining why the claims in Thomas' pending actions bear hallmarks of discredited sovereign citizen and redemptionist legal theories and are frivolous).

8    Thomas filed several substantially similar actions in June 2023 that appear to be predicated on the same bizarre and frivolous legal theories presented in this action. See Thomas v. All In Credit Union, No. 1:23-cv-00215-TFM-B (S.D. Ala. 2023); Thomas v. Capital One, No. 1:23-cv-00216-TFM-B (S.D. Ala. 2023); Thomas v. Family Security Credit Union, No. 1:23-cv-00222-TFM-B (S.D. Ala. 2023); Thomas v. Servbank, No. 1:23-cv-00223-TFM-B (S.D. Ala. 2023); Thomas v. BMO Harris Bank, No. 1:23-cv-00224-TFM-B (S.D. Ala. 2023); Thomas v. Progressive, No. 1:23-cv-00225-TFM-B (S.D. Ala. 2023).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 474903
Only the Westlaw citation is currently available.
United States District Court, S.D.
Alabama, Southern Division.

Michael THOMAS, Plaintiff,
v.
WELLS FARGO BANK, Defendant.

CIV. ACT. NO. 1:23-cv-206-TFM-B
|
Signed February 7, 2024

**Attorneys and Law Firms**

Michael Thomas, Thomasville, AL, Pro Se.

Victor Lee Hayslip, Jackson Alexander Freese, Burr & Forman LLP, Birmingham, AL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

TERRY F. MOORER, UNITED STATES DISTRICT JUDGE

**\*1** On January 12, 2024, the Magistrate Judge entered a Report and Recommendation which recommends the Defendant's motion to dismiss (Doc. 11) be granted in part and this action dismissed with prejudice. *See* Doc. 16. No objections were filed and the deadline passed.

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and there having been no objections filed, the Report and Recommendation of the Magistrate Judge (Doc. 16) is **ADOPTED** as the opinion of this Court. Accordingly, the motion to dismiss (Doc. 11) is **GRANTED** and this action **DISMISSED with prejudice**.

**DONE** and **ORDERED** this 7th day of February, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 474903

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 59 of 67 PageID #: 309

Vidrine v. Capital One Bank, Not Reported in Fed. Supp. (2024)

2024 WL 790380
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana,
Lafayette Division.

Lee Joseph VIDRINE
v.
CAPITAL ONE BANK

CASE NO. 6:23-CV-01500
|
Signed February 26, 2024

**Attorneys and Law Firms**

Lee Joseph Vidrine, Eunice, LA, Pro Se.

Joel Michael Lutz, Troutman Pepper & Hamilton,
Philadelphia, PA, for Capital One Bank.

**JUDGMENT**

Terry A. Doughty, United States District Judge

**\*1** The Report and Recommendation of the Magistrate
Judge [Doc. No. 11] having been considered and no
objections thereto having been filed,

**IT IS ORDERED, ADJUDGED, AND DECREED** that
Defendant's Motion to Dismiss [Doc. No. 4] is **GRANTED**,
and the case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to
Amend [Doc. No. 12] is **DENIED** because amending the
complaint is futile.

THUS DONE in Chambers on this 26 [th] day of February
2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 790380

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7924150
Only the Westlaw citation is currently available.
United States District Court, D. South Carolina.

Olivia WILSON, Plaintiff,

v.

AQUA FINANCE, Defendant.

C/A No. 3:23-5348-SAL-SVH
|
Signed October 26, 2023

**Attorneys and Law Firms**

Olivia Wilson, West Columbia, SC, Pro Se.

REPORT AND RECOMMENDATION

Shiva V. Hodges, United States Magistrate Judge

**\*1** Olivia Wilson ("Plaintiff"), proceeding pro se, brings this civil action alleging claims against Aqua Finance ("Defendant"). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), this matter has been referred to the undersigned for all pretrial proceedings. For the following reasons, the undersigned recommends this matter be summarily dismissed.

I. Factual Background
In Plaintiff's complaint and attached documentation, Plaintiff alleges

> The parties have been in a contract since May 6, 2021. The defendant acted as the assumed owner of the contract and required the plaintiff to make monthly cash payments. However, on September 12, 2023, the plaintiff came forth as the owner of the contract and instructed the defendant to use the provided bill of exchange to accept and transfer the credits to satisfy the remaining balance of the principal's account. The defendant failed three times to perform

> the necessary fiduciary duties to settle the account.

[ECF No. 1 at 7]. Plaintiff further alleges that she submitted to Defendant three documents including the "bill of exchange" referenced above, as well as an "opportunity to cure" and "notice of default." *See id.* at 7–8. Plaintiff has provided the court these documents, including the "bill of exchange" which states:

> Letter of Instructions Tier 1 (Claim of Credits)
>
> I Wilson, Olivia/agent on behalf of OLIVIA WILSON/ principal, hereby accept all titles, rights, interest, and equity Owed to OLIVIA WILSON/principal.
>
> I hereby instruct CFO or indentured trustee for Aqua Finance to apply the principal's balance to the principal's account #S003801222 for each and every billing cycle for set-off.
>
> 1 also instruct CFO or indentured trustee for Aqua Finance to communicate in writing within 5 business days once instructions are completed.
>
> If instructions are not completed, I instruct cfo or indentured trustee for Aqua Finance to respond in writing within 5 business days giving reason for non-performance of fiduciary duties.
>
> If no communication is made within 5 business days, I Wilson, Olivia/agent on behalf of OLIVIA WILSON/ principal can assume that instructions have been completed.
>
> I would like to utilize the interest from my security collateral to fully perform the contract. Negotiable instruments, security instruments, and bills of exchange are lawful forms of payment per the Federal Reserve Act Section I 6 and the Bills of Exchange Act.

[ECF No. 1-1 at 1]. [1]
In her complaint, Plaintiff states that the sole basis for this court's jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and that the following federal statutes, treaties, and provisions of the United States Constitution are at issue: "Cestui Que Vie Act, 18 USC 8, 12 USC 1431, Federal Reserve Action Section 16 & 29, 15 USC 1605, Securities Exchange Act, Emergency Banking Act, HOR 192, The Constitution Article I Sections 7 & 8, Bills of Exchange Act." [ECF No. 1 at 3]. [2]

## II. Discussion

### A. Standard of Review

**\*2** Plaintiff filed his complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss a case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). Although the court must liberally construe a pro se complaint, the United States Supreme Court has made it clear a plaintiff must do more than make conclusory statements to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### B. Analysis

Plaintiff is not the first to send a "bill of exchange" to a lender in hopes of settling a given debt. In *Harp v. Police & Fire Fed. Credit Union*, C/A No. 23-2577, 2023 WL 5152625, at \*1 (E.D. Pa. Aug. 10, 2023), the court granted defendant's motion to dismiss, dismissing the plaintiff's claims for breach of contract, breach of trust, breach of fiduciary duty, security fraud, and any claim attempted to be asserted under the Federal Reserve Act. In that case the plaintiff submitted a bill of exchange employing almost identical language to that used by Plaintiff. *See id.* The court held that "because all of Harp's claims rest upon her mistaken belief that her 'bill of exchange' was valid legal tender, and are based on a fundamental misunderstanding of the operation of a credit card, I will dismiss the Complaint with prejudice and without leave to amend." *Id.* at \*2; *see also Spells v. Bay Country Fin.*, No. 23-CV-01942-LKG, 2023 WL 4868405, at \*1 (D. Md. July 31, 2023) (summary dismissal of complaint where the plaintiff claimed he issued a bill of exchange to the lender, he was a sovereign citizen, and he should have received a paid off vehicle for his bill of exchange).

**\*3** As indicated above in *Spells*, these cases invoke "sovereign citizens' " ideology:

> As explained by the FBI, 'Sovereign citizens view the [U.S. government ("USG")] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Sovereign citizens exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department.

*El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013) (citing Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010), http://info.publicintelligence.net/FBI-SovereignCitizens.pdf)); *see also, e.g., Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753 (W.D. Va. 2007), aff'd, 282 Fed. Appx. 260 (4th Cir. 2008) (collecting cases and dismissing plaintiff's breach of contract claim after finding that plaintiff's "Bill of Exchange" allegedly payable by the Treasury was a "worthless piece of paper" that could not satisfy her mortgage payment)).

Based on the above, and even though Plaintiff does not use the specific words "sovereign citizen," Plaintiff's claims are based in that ideology, are frivolous, and subject to summary

dismissal. As has been held by this court addressing a similar situation:

Plaintiff's Amended Complaint has many hallmarks of the "sovereign citizen" redemption theory. *See Parker v. Spencer*, No. 4:13-CV-00430-RBH, 2015 WL 3870277, at *3 (D.S.C. June 23, 2015) (quoting *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013)) ("sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior"); *Presley v. Prodan*, No. CA 3:12-3511-CMC-JDA, 2013 WL 1342465, at *2 (D.S.C. Mar. 11, 2013), adopted by, 2013 WL 1342539 (D.S.C. Apr. 2, 2013) (collecting cases describing the "sovereign citizen" movement and its common features); *see also* U.S. Dep't of Justice, F.B.I., Counterterrorism Analysis Section, Sovereign Citizens: A Growing Domestic Threat to Law Enforcement, (Sept. 2011), https://leb.fbi.gov/articles/featured-articles/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement (last visited Feb. 9, 2021) (explaining hallmarks of the sovereign-citizen redemption theory and redemption scheme used "to defraud banks, credit institutions, and the U.S. government" by filing purported U.C.C. forms "for illegitimate purposes, believing that doing so correctly will compel the U.S. Treasury to fulfill its debts, such as credit card debts, taxes, and mortgages"). Here, Plaintiff's various claims, including assertions that she has a credit, does not have to pay her water bill based on such a credit, and/or her service cannot be turned off because of such a credit, are frivolous. *See, e.g., Miller v. Exelon*, No. 19-CV-0231, 2019 WL 952273 (E.D. Pa. Feb. 26, 2019), appeal dismissed sub nom. *Miller v. PECO Exelon*, 775 F. App'x 37, at *3 (3d Cir. 2019) (finding legally frivolous plaintiff's claims against his utility providers that were based on the UCC, plaintiff's belief that there is no lawful money, and/or federal statutes that did not have any relevance to the payment of his utility bill). Plaintiff's attempts to assert sovereign-citizen type claims should be dismissed as frivolous. *See Smalls v. Sterling*, No. 2:16-4005-RMG, 2017 WL 1957471, at *1 (D.S.C. May 11, 2017); *Gaskins v. South Carolina*, No. 2:15-CV-2589-DCN, 2015 WL 6464440, at *4 (D.S.C. Oct. 26, 2015); *see also Mitchell v. Vesely*, No. 5:17-CV-325-OC-30PRL, 2017 WL 11049094, *1 (M.D. Fla. Aug. 23, 2017) ("While Plaintiff does not state that he is a 'sovereign citizen,' his arguments are similar to the 'sovereign citizen' arguments that courts have routinely rejected as frivolous.").

**\*4** *Palmer v. Charleston Water Sys.*, C/A No. 2:20-3506-DCN-MHC, 2021 WL 11490999, at *4 (D.S.C. Feb. 10, 2021), report and recommendation adopted, C/A No. 2:20-3506 DCN, 2021 WL 11491095 (D.S.C. Mar. 2, 2021); *see also Hennis v. Trustmark Bank*, C/A No. 2:10-20-KS-MTP, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); *Taylor v. Leviner*, C/A No. 9:23-3435-RMG-MHC, 2023 WL 5985332, at *2 (D.S.C. Aug. 30, 2023) (collecting cases), report and recommendation adopted, C/A No. 9:23-3435-RMG, 2023 WL 5984482 (D.S.C. Sept. 14, 2023). [3]

Out of an abundance of caution, the court additionally addresses each of the claims Plaintiff asserts. First, Plaintiff seems to suggest that Defendant violated Section 16 of the Federal Reserve Act, 12 U.S.C. §§ 411–21, which governs the issuance and redemption of Federal Reserve notes, further indicating that Defendant is subject to penalties under Section 29 of the Federal Reserve Act, 12 U.S.C. § 504, which imposes penalties on banks for an array of misconduct. But the imposition of civil penalties under Section 29 is carried out by federal officials, and private individuals do not have a private right of action to enforce Section 16 or 29 of the Federal Reserve Act. *See White v. Lake Union Ga Partners LLC*, C/A No. 1:23-02852-VMC, 2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023) (compiling cases supporting finding that Section 16 and Section 29 do not create a private right of action); *Benz-Puente v. Truist Fin.*, C/A No. 23-2682, 2023 WL 4763998, at *2 (E.D. Pa. July 26, 2023) (compiling cases supporting finding that Section 29 "does not create a private right of action"); *Murphy v. Capital One*, No. 4:23-CV-1120 HEA, 2023 WL 5929340, at *3 (E.D. Mo. Sept. 12, 2023) (same). [4]

Plaintiff also references "a string of other miscellaneous authorities," as plaintiffs asserting similar claims in other cases have done, including 18 U.S.C. § 8, 12 U.S.C. § 1431, and 15 U.S.C. § 1605(a) ... and two Acts of Parliament of the United Kingdom: 'Cestui que Vie Act 1666' and Bills of Exchange Act 1882." *White*, 2023 WL 6036842, at *3. As has been held by numerous courts, "none of these [references] provide [Plaintiff] with a federal cause of action." *See id.* (citing *Barnes v. Santander Consumer USA, Inc.*, C/A No. 3:22-02184, 2023 WL 2585537, at *4 (N.D. Ohio Mar. 21, 2023) ("Plaintiff cites to several statutes that appear irrelevant to the facts alleged in this Complaint. These include 15

U.S.C. § 1605 (definition of finance charges), ... 12 U.S.C. § 1431 (defining the powers of banks), ... and 18 U.S.C. § 8 (defining the United States obligations and securities). She fails to allege any facts to suggest how these statutes might apply."); *Wood v. United States*, 161 Fed. Cl. 30, 34–35 (2022) ("Sovereign citizens also sometimes reference the Cestui Que Vie Act of 1666, or a 'cestui que vie' trust, as support for their arguments in court .... In short, the legal fiction presented by plaintiff in the complaint is not based in law but in the fantasies of the sovereign citizen movement. There is no jurisdiction in this court for fictitious claims.").

**\*5** Likewise, Plaintiff's brief and unexplained invocation of certain articles of the Constitution, the Emergency Banking Act, and the Securities Exchange Act does not assist her. *See, e.g., Loyola v. Env't Prot. Agency*, C/A No. 2:21-02714-JD-MGB, 2022 WL 507648, at \*5 (D.S.C. Jan. 11, 2022) (summarily dismissing complaint and noting that "while Plaintiff's Complaint contains isolated references to the United States Constitution ... it is very difficult to distill an actionable federal claim from Plaintiff's rambling, nonsensical allegations"), report and recommendation adopted, C/A No. No. 2:21-02714-JD-MGB, 2022 WL 507439 (D.S.C. Feb. 18, 2022); *Lewis v. Lewis*, C/A No. 1:12-2072-TLW-PJG, 2012 WL 5384822, at \*3 (D.S.C. Sept. 12, 2012) ("although Plaintiff expressly references the Constitution and its Amendments, merely invoking the Constitution is insufficient when there are no facts alleged to support a federal claim"), report and

recommendation adopted, C/A No. 1:12-02072-TLW, 2012 WL 5381646 (D.S.C. Oct. 31, 2012); *Hughes v. Virginia Emp. Comm'n*, No. 4:21CV100, 2022 WL 14049886, at \*3 (E.D. Va. Oct. 3, 2022) ("courts have explained that a mere passing reference to a Constitutional right is insufficient to invoke federal question jurisdiction") (citations omitted, collecting cases); *White*, 2023 WL 6036842, at \*3 (rejecting plaintiff's argument that Articles IV and VI of the Constitution can be brought against a private company where the plaintiff asserted sovereign citizen-based claims); *Mallory v. Obama*, C/A No. 1:15-1090, 2015 WL 7722034, at \*2 (W.D. Mich. Nov. 30, 2015) (rejecting as frivolous sovereign-citizen claims under the Emergency Banking Relief Act of 1933); *Davis v. United States*, No. 23-707 C, 2023 WL 4761577, at \*2 (Fed. Cl. July 26, 2023) (rejecting plaintiff's argument as "fanciful" that the Securities Exchange Act, among other laws, supports sovereign citizen redemption theory claims). [5]

III. Conclusion and Recommendation
For the foregoing reasons, the undersigned recommends the district court dismiss this action as frivolous and with prejudice [6] and without issuance and service of process.

IT IS SO RECOMMENDED.

**All Citations**

Slip Copy, 2023 WL 7924150

---

## Footnotes

1    Plaintiff has also submitted to the court a "durable power of attorney" she alleges she also sent to Defendant claiming to have appointed herself as her own power of attorney. [ECF No. 1-1 at 22–29].

2    In documentation attached to her complaint, however, Plaintiff indicates she is only asserting violations of the following statutes: 12 U.S.C. § 411, 12 U.S.C. § 412, 12 U.S.C. § 504, 18 U.S.C. § 1344. [ECF No. 1 at 9].

3    Courts have recognized complaints being "rooted in sovereign citizen ideology" where, as here, plaintiffs have not stated the words "sovereign citizen" or "redemption theory" but have, as Plaintiff also does here, cited the Cestui Que Vie Act of 1666 and included documents such as a "durable power of attorney," "both of which are tied to theories associated with the sovereign citizen movement." *Anderson v. Navy Federal Credit Union*, C/A No. 3:23-05506-DGE, 2023 WL 6481518, at \*3 (W.D. Wash. Oct. 5, 2023) (collecting cases).

4       Plaintiff also cites 18 U.S.C. § 1344, a criminal statute concerning bank fraud that does not provide for a private cause of action. *See, e.g., Johnson v. Bank of Am. Corp.*, C/A No. 4:22-CV-2975-JD-KDW, 2023 WL 2727533, at *1 n.2 (D.S.C. Mar. 31, 2023).

5       The court additionally rejects Plaintiff's brief references to "HOR 192" as a possible cause of action. *See, e.g., Hargrove v. Georgia*, C/A No. 5:11-349 CAR, 2011 WL 4526755, at *2 (M.D. Ga. Sept. 28, 2011) ("As relief, Plaintiff asks this Court to allow Plaintiff to 'use ... HOR–192/UCC1–104/UCC–10–104 [to support his claim to extinguish his bankruptcy debt] .... Plaintiff's allegations, on their face, are 'fanciful,' 'fantastic,' and 'delusional,' and therefore factually frivolous.").

6       It is recommended that this action be dismissed without leave to amend. *See Britt v. DeJoy*, 45 F.4th 790 (4th Cir. 2022); *see also Watkins v. Ridgeland Corr. Inst.*, C/A No. 4:22-3545-JFA-TER, 2022 WL 17327157, at *2 (D.S.C. Oct. 25, 2022) (collecting cases in support and recommending that where the plaintiff's allegations are frivolous on the face of the relevant filings, allowing amendment of the pleadings would be futile), report and recommendation adopted, C/A No. 4:22-3545-JFA-TER, 2022 WL 17325000 (D.S.C. Nov. 29, 2022).

---

**End of Document**                                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.     5

2010 WL 1223934
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Curtis J. YARBOROUGH, Plaintiff,

v.

QUEENS AUTO MALL, INC., M & T Bank, Wynn's
Extended Care, Inc., Star Auto Funding, Inc., Defendants.

No. 08–CV–3179 (DLI)(ALC).
|
March 23, 2010.

### MEMORANDUM AND ORDER

DORA L. IRIZARRY, District Judge.

**\*1** Plaintiff Curtis Yarborough brought suit in this "lemon law" case against defendants Queens Auto Mall ("QAM"), Star Auto Funding, Inc. ("Star Auto"), Wynn's Extended Care, Inc. ("Wynn's"), and M & T Bank ("M & T") asserting three federal and eleven state law causes of action. [1] M & T moved to dismiss plaintiff's claims arising under the Magnuson–Moss Warranty Act (claim 3), Truth in Lending Act (claim 8), and Racketeer Influenced and Corrupt Organization Act (claim 14). In his Affirmation in Opposition to M & T's Motion to Dismiss, plaintiff moved to withdraw claims 3 and 14, and sought leave to amend his complaint to assert three new causes of action, including a federal claim arising under the Fair Credit Reporting Act. (Pl.'s Aff. in Opp'n ¶¶ 6, 12.) Plaintiff also cross-moved to dismiss M & T's counterclaim for breach of contract. (Pl.'s Answer to Countercl. 3.) For the reasons set forth below, claims 3, 8, and 14 are dismissed with prejudice, plaintiff is denied leave to amend, and his motion to dismiss defendant's counterclaim is denied. The remaining claims, all of which arise under state law, are dismissed without prejudice as the court declines to exercise supplemental jurisdiction.

### I. Background

On June 25, 2007, plaintiff purchased a car from QAM and signed two contracts—a service contract with Wynn's for a two year/24,000 mile warranty, and a retail installment contract with QAM which was later assigned to M & T. (Def's. Affirm. in Opp'n Ex. B(b).) Plaintiff alleges that, before the

purchase, defendants assured him that the car was in "perfect" condition, was covered by a "thirty-day/sixty-day warranty," and they would repair the car pursuant to the warranty without charge. (Compl.¶ 9.) However, immediately after taking possession of the car, it allegedly malfunctioned. Plaintiff claims that he brought the car back to QAM approximately three other times within the warranty period, and that, each time, QAM refused to repair the car or return his down payment and installment payments. (*Id.* ¶¶ 3, 11.) The car allegedly stopped running altogether on August 22, 2007, at which point plaintiff returned the car to QAM, and claims to have properly revoked the contract. (*Id.* ¶ 11.) As a consequence of the foregoing, plaintiff initiated this action on August 5, 2008.

### II. Discussion

#### A. Legal Standard

In deciding a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the court accepts all allegations as true and draws all inferences in favor of the plaintiff. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Dismissal is warranted if the factual allegations are insufficient to "raise a right to relief above the speculative level." *Price v. N.Y. State Bd. of Elections,* 540 F.3d 101, 107 (2d Cir.2008).

#### B. Statute of Limitations under the Federal Truth in Lending Act (Claim 8)

Plaintiff's eighth cause of action involves purported violations of the Truth in Lending Act ("TILA") [2] for M & T's alleged mischaracterization of, and failure to provide, several material disclosures before the parties entered into the car transaction. Specifically, plaintiff alleges that M & T: (1) inaccurately disclosed the annual percentage rate, amount financed, and finance charge under the transaction; (2) should have marked certain disclosures during the negotiation process as estimates; and (3) should have delivered "disclosures to Plaintiffs [sic] in a form that they [sic] could keep prior to the consummation of the transaction." (Compl.¶¶ 80–85.)

**\*2** TILA actions are subject to a one-year statute of limitations from the date of the occurrence of the violation. 15 U.S.C. § 1640(e) (2010). In a closed-end credit transaction, such as an automobile installment contract, the "occurrence of the violation" is "the date on which a plaintiff enters into a loan agreement." *Cardiello v. The Money Store, Inc.,* 2001 WL 604007, at \*3 (S.D.N.Y. June 1, 2001). Plaintiff entered

Case 1:25-cv-02653-RER-JAM    Document 11-2    Filed 06/03/25    Page 66 of 67 PageID
#: 316
Yarborough v. Queens Auto Mall, Inc., Not Reported in F.Supp.2d (2010)

into the loan agreement for his automobile under a retail installment contract on June 25, 2007, and filed suit more than one year later on August 5, 2008. Therefore, pursuant to the plain language of the statute, his claim is time barred. [3]

Recognizing this reality, plaintiff now claims "rescission damages" pursuant to 15 U.S.C. 1635(a) [4] for M & T's purported failure to rescind the transaction upon plaintiff's notice. (Pl's. Mem. in Opp'n 3.) Plaintiff asserts that the one-year statute of limitations for TILA "disclosure" violations is somehow "irrelevant to a suit that is also seeking Rescission Letter Damages," and that, in such cases, the one-year limitations period "begins to run on the 21 st day after the lender received the borrower's rescission notice—not from the consummation date." (*Id.*)

There is no mention of § 1635 or a claim for "rescission damages" in plaintiff's complaint. Rather, plaintiff raised his § 1635 claim for the first time in his Memorandum of Law in Opposition to the Motion to Dismiss. Plaintiff may not amend his complaint through his motion papers. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (rejecting new claim raised for first time in plaintiff's opposition to a motion to dismiss). This is a transparent attempt by plaintiff to morph his TILA claim for disclosure damages into a claim for rescission damages because of the one-year statute of limitations. Accordingly, this court will not consider plaintiff's claim under § 1635.

However, even if the court considered the § 1635 claim, it would fail because the right of rescission only applies to transactions in which the creditor acquires a security interest in the borrower's principal dwelling. Section 1635(a) provides:

"[I]n the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended, the obligor shall have the right to rescind the transaction...." 15 U.S.C. § 1635(a) (emphasis added); *see also* 12 C.F.R. 226.23(a) (same limitation to principal dwelling); *Beach,* 523 U.S. at 411. Accordingly, plaintiff has no right of rescission under § 1635.

**C. Plaintiff's Other Federal Claims (Claims 3 & 14)**
Plaintiff also has asserted a Magnuson–Moss Warranty Act claim (claim 3) and a Racketeer Influenced Corruption Act

Claim (claim 14) in his complaint. (Compl.¶ ¶ 53–56, 109–18.) In his Affirmation in Opposition to M & T's Motion to Dismiss, plaintiff moved to voluntarily dismiss these claims. (Pl.'s Aff. in Opp'n. ¶¶ 6, 12 .) In addition, plaintiff considers claim 3 moot since he has settled with the warranty company (Wynn's). (*Id.* ¶ 8.) Based on plaintiff's Affirmation, the court hereby dismisses these two claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

**D. Plaintiff's Request to Amend the Complaint**
  **\*3**  Plaintiff seeks leave in his Affirmation to file an amended complaint which would include claims pursuant to the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*), and state law claims for conversion and the "Motor Vehicle Finance Sales Act and/or Motor Vehicle Retail Installment Sales Act." (Pl.'s Aff. in Opp'n ¶¶ 6, 12.)

Rule 7(b) of the Federal Rules of Civil Procedure requires that motions "state with particularity the grounds for seeking the order, and state the relief sought." FED. R. CIV. P. 7(b). Motions to amend a complaint must explain the basis for, and nature of, the proposed amendment, and should include a complete copy of the proposed amended complaint so that both the court and opposing parties can understand the exact changes sought. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1485 (2d ed.2009). Plaintiff failed to file a formal motion to amend, a memorandum of law in support of amendment, or even the proposed amended complaint for the court's review. As such, the court is unaware of the exact nature of the proposed amendments, providing the court with sufficient reason to deny leave to amend. Moreover, all the federal claims plaintiff has heretofore raised have been meritless, as illustrated by the dismissal of the TILA claim and plaintiff's voluntary withdrawal of claims 3 and 14. No federal claims remain in this action, and the court therefore lacks subject-matter jurisdiction over this matter as it declines to exercise supplemental jurisdiction over the remaining claims arising under state law. Under these circumstances, the court denies leave for plaintiff to amend his complaint for what appears to be the sole purpose of keeping the case in federal court.

**E. Plaintiff's Motion to Dismiss M & T's Counterclaim**
On March 28, 2008, plaintiff moved to dismiss M & T's breach of contract counterclaim. [5] Because no federal claims remain in this case, this motion is denied without prejudice to renew in state court.

---

### III. Conclusion

For the foregoing reasons, claims 3, 8, and 14 are dismissed with prejudice, plaintiff is denied leave to amend, and his motion to dismiss defendant's counterclaim is denied. The remaining claims, all of which arise under state law, are dismissed without prejudice.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1223584

---

## Footnotes

1    Plaintiff has since settled with all defendants except M & T.

2    The primary purpose of the TILA is to help consumers avoid "the uninformed use of credit" by assuring meaningful disclosure of credit terms. 15 U.S.C. § 1601 (2010). In furthering this purpose, TILA and its implementing Regulation Z require creditors to disclose certain material terms clearly and concisely in a written document which consumers may retain. *Cardiello v. The Money Store, Inc.,* 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001). 15 U.S.C. § 1640 creates a private right of action for violations of TILA. *Id.*

3    Because plaintiff has not asserted that the doctrine of equitable tolling applies, the court declines to examine its application here.

4    The right of rescission pursuant to § 1635(a) allows a borrower to rescind a loan agreement if the lender fails "to deliver certain forms or to disclose important terms accurately." *See Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 411, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).

5    The court deemed plaintiff's letter of March 28, 2009 as a cross-motion to dismiss defendant's counterclaim. (Electronic Order dated Mar. 31, 2009.)

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.