UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**Mohamed Roshan,**
 Plaintiff,

v.

**Capital One Financial Corporation,**
 Defendant.

Case No. 25-CV-2653 (RER) (JAM)

\*\*\* Filed \*\*\*
08:21 AM, 13 Aug, 2025
U.S.D.C., Eastern District of New York

Clerk's Office
Filed Date: 8/13/2025
Received on 8/14/2025 CCF

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

**PLAINTIFF'S SUPPLEMENTAL SUBMISSION
IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Plaintiff Mohamed Roshan respectfully submits this supplemental filing to present verifiable, self-authenticating United States Securities and Exchange Commission ("SEC") evidence and specific factual allegations that directly refute the Report and Recommendation's "futility" finding under Fed. R. Civ. P. 15(a)(2).

This evidence, taken as true, establishes that:

1. **Capital One Financial Corporation sold and transferred all rights, title, and interest** in the subject receivable.

2. Thereafter, Capital One acted **only as servicer** under the Pooling and Servicing Agreement ("PSA") — collecting payments, managing accounts, and remitting funds to trust beneficiaries — without ownership.

3. The trust and investors are **bona fide purchasers for value**, not Capital One.

4. The servicer's **two-percent fee** creates a pecuniary conflict of interest.

5. **No evidence** of any repurchase or reassignment has been produced.

6. Plaintiff's obligation is **discharged** under U.C.C. §§ 3-603, 9-406, and 1-304.

7. SEC statements constitute **judicial admissions** and are **self-authenticating** under Fed. R. Evid. 902(5), and admissible under Fed. R. Evid. 803(8).

## I. SEC Filings Confirm Full Transfer of Rights and Servicer-Only Role

### A. Bank to Funding/Company (Sale of All Rights)

> "Capital One does hereby sell, transfer, assign, set over and otherwise convey to Funding, without recourse… all of its right, title and interest… in, to and under the Receivables… and all proceeds… thereof."
> Source: Exhibit 4.1, *Amended and Restated Receivables Purchase Agreement*, p. A-2.
> https://www.sec.gov/Archives/edgar/data/922869/000119312507151052/dex41.htm

Upon information and belief, Plaintiff's account was among the receivables conveyed under this agreement.

### B. Funding/Company to Master Trust

> "The Company has conveyed the Receivables, collections thereon and certain related property to the Capital One Master Trust (the 'Master Trust') pursuant to the Amended and Restated Pooling and Servicing Agreement…"
> Source: EX-1.1, *Underwriting Agreement excerpt*, p. 2.
>
> https://www.sec.gov/Archives/edgar/data/922869/000119312522060493/d277273dex11.htm

### C. Prospectus Admission – Transfer Chain

> "The assets of the master trust consist primarily of receivables… which receivables have been transferred by the bank to Capital One Funding and have been transferred by Capital One Funding to the master trust."
> Source: 424B5 *Prospectus Supplement*, pp. 6 & 78.
>
> https://www.sec.gov/Archives/edgar/data/922869/000119312516784838/d297129d424b5.htm

---

# Capital One – Chain of Title

Below is the structured chain of title showing how the subject receivable was transferred and Capital One's limited role as servicer:

Capital One Bank (USA), N.A.
  |



▼
Sells, transfers, assigns ALL right, title & interest in receivables
|
▼
Capital One Funding, LLC (Depositor)
|
▼
Conveys receivables, collections, and related property
|
▼
Capital One Master Trust (Issuing Entity / Trust & Investors)
|
▼
Issues Asset-Backed Securities to Investors
|
▼
Capital One Bank (USA), N.A. – Servicer Only (2% fee), No Ownership

Note: SEC-filed agreements confirm the above chain. Once the receivable is sold into the Trust, Capital One Bank serves only as the servicer and does not retain ownership or enforcement rights unless a repurchase or reassignment occurs (none evidenced).

## II. Capital One's Role Is Limited to Servicer

> "Capital One Bank (USA), National Association is the servicer for the master trust and is responsible for servicing, managing and making collections on the receivables in the master trust."
>  Source: 424B5, p. 5.

> https://www.sec.gov/Archives/edgar/data/922869/000119312516784838/d297129d424b5.htm

**Monthly Form 10-D filings confirm this role:**

> "CAPITAL ONE MULTI-ASSET EXECUTION TRUST (Issuing Entity)… By: CAPITAL ONE, NATIONAL ASSOCIATION (Servicer)"

https://www.sec.gov/Archives/edgar/data/1163321/000116332124000023/form10-djune2024.htm

---

### III. Notes Are Obligations of Issuing Entity Only — Rule 17(a) Defect

"The Card series notes are obligations of the issuing entity only and are not obligations of or interests in Capital One Bank (USA), National Association, Capital One Funding, Limited Liability Company, their affiliates or any other person."
Source: 424B5 *Prospectus Supplement*, front summary.

https://www.sec.gov/Archives/edgar/data/922869/000119312521218328/d186464d424b5.htm

---

### IV. Servicer's Pecuniary Conflict of Interest

"As servicer, the bank will receive a master trust servicing fee… The Card series servicing fee will be an amount equal to 2.00% of the aggregate nominal liquidation amount of each tranche of Card series notes for any month."
Source: 424B5, p. 7.

https://www.sec.gov/Archives/edgar/data/922869/000119312524221915/d875466d424b5.htm

# Chain of Title Diagram



## V. Anticipating and Preempting Defenses

- **Servicer Authority:** Demand production of PSA provisions authorizing Defendant to sue in its own name.

- **Repurchase Claim:** Demand documentary proof of any repurchase (none produced).

- **Authentication & Hearsay:** SEC filings are self-authenticating under Fed. R. Evid. 902(5) and admissible under 803(8).

- **Judicial Admissions:** SEC statements are binding admissions made under penalty of securities fraud laws.

## VI. Targeted SEC Document Production

Plaintiff requests authenticated production of:

1. *Amended & Restated Receivables Purchase Agreement* (Form 8-K, Ex. 4.1)

2. *Underwriting Agreement excerpt* (EX-1.1)

3. 424B5 *Prospectus Supplements* (2013, 2016, 2021, 2024)

4. Monthly Form 10-D Servicer Reports (relevant months)

5. Annual Form 10-K filings of Capital One Master Trust

## VII. U.C.C. Discharge and Good Faith

- **§ 3-603(b):** Tender via Bill of Exchange discharges obligation; refusal is wrongful.

- **§ 9-406:** Absent notice of assignment, payment to assignor discharges obligation.

- **§ 1-304:** Refusal of valid tender breaches duty of good faith and fair dealing.

---

## VIII. Plaintiff's Bona Fide Purchaser Status

**A. Legal Definition:** One who gives value, acts in good faith, and takes without notice of adverse claims.

**B. Application:**

- **Value Given:** Tender of negotiable instrument (Bill of Exchange, Exhibit A) satisfies U.C.C. § 3-303(a)(3).

- **Good Faith:** Honest, commercially reasonable tender.

- **No Notice:** Plaintiff had no knowledge of securitization at time of tender.

**C. Effect:**

- Tender discharges obligation under U.C.C. §§ 3-601, 3-603, 9-406.

- Refusal constitutes commercial dishonor.

---

## IX. Ancillary Standing & Equity Defenses

**Breach of Trust:** Acting as owner while only a servicer breaches PSA duties (accurate posting, truthful ownership). Misrepresenting creditor status warrants injunction, surcharge, and possible removal.

**Falsification & Surcharge of Ledger:** Post-tender charges falsify account, damage credit, inflate balance, and mislead investors/regulators. Remedies include ledger correction, disgorgement, and penalties.

**Full Accounting Ledger Demand:** Inception-to-present ledger, including transfers, postings, reversals, and refusals.

**Notice of Subrogation:** Tender confers right to step into creditor's position.

**Debt Validation:** Produce original signed contract, amendments, chain of title, and proof of post-securitization authority.

---

## X. Conclusion

The SEC record, chain-of-title evidence, and tender facts show that Defendant lacks standing and that Plaintiff's obligation is discharged. Plaintiff's **bona fide purchaser** status, coupled with breach of trust, ledger falsification, and refusal to validate, establishes legal and equitable grounds for relief.

---

## XI. Relief Requested

1. Grant leave to amend.

2. Take judicial notice of SEC evidence.

3. Recognize bona fide purchaser status.

4. Compel production of targeted SEC documents and full accounting ledger.

5. Grant further relief, including:

    - Injunction halting unauthorized collection;

    - Surcharge of improper gains;

    - Declaratory relief recognizing discharge under U.C.C. §§ 3-603, 9-406.

---

**Respectfully submitted,**
Dated: August 13, 2025

/s/ Mohamed Roshan
Mohamed Roshan
210-20 Hillside Avenue
Queens, New York 11427
Tel: 347-553-8886

Email: mohamedroshan10019@yahoo.com
Plaintiff, Pro Se

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**MOHAMED ROSHAN,**
Plaintiff,

-against-

**CAPITAL ONE FINANCIAL CORPORATION,**
Defendant.
-------------------------------------------------------X
Case No. 25-CV-2653 (RER) (JAM)

**PLAINTIFF'S EXHIBIT E**
**SEC-FILED CHAIN OF TITLE EVIDENCE (EXCERPTS)**
**IN SUPPORT OF SUPPLEMENTAL SUBMISSION AND OBJECTIONS TO REPORT AND RECOMMENDATION**

**Description of Exhibit E:**
This Exhibit contains true and correct excerpts from official United States Securities and Exchange Commission ("SEC") filings evidencing the sale, transfer, and assignment of all right, title, and interest in certain credit card receivables from Capital One Bank (USA), N.A. to Capital One Funding, LLC, and subsequently to the Capital One Master Trust, leaving Capital One Bank in a servicer-only role. Each excerpt includes its original SEC.gov source link and identifies the relevant page numbers. Full documents are available upon request.

---

## INDEX OF TABS

- **Tab E-1** — Exhibit 4.1, *Amended and Restated Receivables Purchase Agreement* (Excerpt: p. A-2)

- **Tab E-2** — EX-1.1, *Underwriting Agreement* (Excerpt: p. 2)

- **Tab E-3** — *424B5 Prospectus Supplement* (Excerpts: pp. 6, 78)

- **Tab E-4** — *424B5 Prospectus Supplement* (Servicer Role, p. 5)

- **Tab E-5** — *Form 10-D* (Servicer Signature Block, June 2024)

**Tab E-1 — Exhibit 4.1, Amended and Restated Receivables Purchase Agreement**
*(Excerpt: p. A-2)*

> "Capital One does hereby sell, transfer, assign, set over and otherwise convey to Funding, without recourse… all of its right, title and interest… in, to and under the Receivables… and all proceeds… thereof."

**Source:** Exhibit 4.1, *Amended and Restated Receivables Purchase Agreement*, page A-2
**Full Document:**
https://www.sec.gov/Archives/edgar/data/922869/000119312507151052/dex41.htm
**CIK:** 0000922869 | **Accession No.:** 0001193125-07-151052 | **Filing Date:** July 2, 2007

[Attach scanned/downloaded page A-2 with above section highlighted.]

---

**Tab E-2 — EX-1.1, Underwriting Agreement Excerpt**
*(Excerpt: p. 2)*

> "The Company has conveyed the Receivables, collections thereon and certain related property to the Capital One Master Trust (the 'Master Trust') pursuant to the Amended and Restated Pooling and Servicing Agreement…"

**Source:** EX-1.1, *Underwriting Agreement excerpt*, page 2
**Full Document:**
https://www.sec.gov/Archives/edgar/data/922869/000119312522060493/d277273dex11.htm
**CIK:** 0000922869 | **Accession No.:** 0001193125-22-060493 | **Filing Date:** March 1, 2022

[Attach scanned/downloaded page 2 with above section highlighted.]

---

**Tab E-3 — 424B5 Prospectus Supplement**
*(Excerpts: pp. 6 and 78)*

> "The assets of the master trust consist primarily of receivables… which receivables have been transferred by the bank to Capital One Funding and have been transferred by Capital One Funding to the master trust."

**Source:** *424B5 Prospectus Supplement*, pages 6 and 78
**Full Document:**
https://www.sec.gov/Archives/edgar/data/922869/000119312516784838/d297129d424b5.htm
**CIK:** 0000922869 | **Accession No.:** 0001193125-16-784838 | **Filing Date:** July 1, 2016

[Attach scanned/downloaded pages 6 and 78 with relevant text highlighted.]

**Tab E-4 — 424B5 Prospectus Supplement (Servicer Role)**
*(Excerpt: p. 5)*

> "Capital One Bank (USA), National Association is the servicer for the master trust and is responsible for servicing, managing and making collections on the receivables in the master trust."

**Source:** *424B5 Prospectus Supplement*, page 5
 **Full Document:**
https://www.sec.gov/Archives/edgar/data/922869/000119312516784838/d297129d424b5.htm

[Attach scanned/downloaded page 5 with relevant text highlighted.]

---

**Tab E-5 — Form 10-D (Servicer Signature Block)**
*(Excerpt: June 2024 filing)*

> "CAPITAL ONE MULTI-ASSET EXECUTION TRUST (Issuing Entity)… By: CAPITAL ONE, NATIONAL ASSOCIATION (Servicer)"

**Source:** *Form 10-D*, June 2024
 **Full Document:**
https://www.sec.gov/Archives/edgar/data/1163321/000116332124000023/form10-djune2024.htm

[Attach scanned/downloaded page showing this signature block highlighted.]

---

**Note for the Court:**
 The above excerpts, taken directly from official SEC filings, confirm the complete transfer of ownership rights from Capital One Bank (USA), N.A. to Capital One Funding, LLC, and subsequently to the Capital One Master Trust, leaving Capital One Bank in a servicer-only role with no ownership interest in the receivables. No SEC filing evidences any repurchase or reassignment of Plaintiff's receivable back to Capital One Bank.

2. <u>Designation of Additional Accounts</u>. Capital One delivers herewith an Account Schedule containing a true and complete list of the Additional Accounts. Such Account Schedule is incorporated into and made part of this Supplemental Conveyance, shall be **Schedule 1** to this Supplemental Conveyance and shall supplement **Schedule 1** to the Receivables Purchase Agreement.

3. <u>Conveyance of Receivables</u>.

(a) Capital One does hereby sell, transfer, assign, set over and otherwise convey to Funding, without recourse except as provided in the Receivables Purchase Agreement, all of its right, title and interest, whether now owned or hereafter acquired, in, to and under the Receivables arising in the Additional Accounts, existing at the close of business on the Additional Cut-Off Date and thereafter created, all Interchange, Insurance Proceeds and Recoveries allocable to such Receivables, any Funds Collateral securing such Receivables, all monies due or to become due and all amounts received or receivable with respect thereto, all Collections with respect thereto, and all proceeds (including, without limitation, "proceeds" as defined in the UCC) thereof (collectively, the "**Additional Purchased Assets**").

(b) In connection with such sale and if necessary, Capital One agrees to record and file, at its own expense, one or more financing statements (and amendments with respect to such financing statements when applicable) with respect to the Additional Purchased Assets meeting the requirements of applicable state law in such manner and in such jurisdictions as are necessary to perfect the sale of the Additional Purchased Assets to Funding, and to deliver a file-stamped copy of such financing statements or amendments or other evidence of such filing to Funding.

(c) In connection with such sale, Capital One further agrees, at its own expense, on or prior to the date of this Supplemental Conveyance, to indicate in the appropriate computer files that all Receivables created in connection with the Additional Accounts and the related Additional Purchased Assets have been conveyed to Funding pursuant to this Supplemental Conveyance.

(d) The parties hereto intend that the conveyance of Capital One's right, title and interest in and to the Additional Purchased Assets shall constitute an absolute sale, conveying good title free and clear of any liens, claims, encumbrances or rights of others from Capital One to Funding. It is the intention of the parties hereto that the arrangements with respect to the Additional Purchased Assets shall constitute a purchase and sale of such Additional Purchased Assets and not a loan, including for accounting purposes. In the event, however, that it were to be determined that the transactions evidenced hereby constitute a loan and not a purchase and sale, it is the intention of the parties hereto that this Supplemental Conveyance shall constitute a security agreement under applicable law, and that Capital One shall be deemed to have granted, and Capital One does hereby grant, to Funding a first priority perfected security interest in all of Capital One's right, title and interest, whether now owned or hereafter acquired, in, to and under the Additional Purchased Assets to secure the obligations of Capital One hereunder and under the Receivables Purchase Agreement.

The Company has conveyed the Receivables, collections thereon and certain related property to the Capital One Master Trust (the "Master Trust") pursuant to the Amended and Restated Pooling and Servicing Agreement, dated as of September 30, 1993, as amended and restated as of August 1, 2002, January 13, 2006, July 1, 2007 and March 17, 2016, and as amended by the First Amendment thereto, dated as of January 27, 2017 (as so amended and as otherwise modified or amended from time to time, the "Pooling and Servicing Agreement"), as supplemented by the Series 2002-CC Supplement (the "Series Supplement"), dated as of October 9, 2002, as amended and restated as of March 17, 2016, among the Company, as Transferor (as defined in the Pooling and Servicing Agreement), the Bank, as servicer (the "Servicer"), and The Bank of New York Mellon, as trustee (in such capacity, the "Master Trust Trustee"). References herein to the Pooling and Servicing Agreement, unless otherwise specified, shall mean the Pooling and Servicing Agreement as supplemented by the Series Supplement. Pursuant to the Pooling and Servicing Agreement, the Trust Agreement, and the Transfer and Administration Agreement, dated as of October 9, 2002, as amended by the First Amendment thereto, dated as of March 1, 2008 (the "Transfer Agreement"), among the Issuer, the Transferor, the Bank, as administrator, and the Indenture Trustee, the Company has caused the Master Trust to issue to the Issuer a collateral certificate (the "Collateral Certificate"). The Collateral Certificate is a series certificate under the Pooling and Servicing Agreement that represents undivided interests in certain assets of the Master Trust.

The Receivables will be subject to review, in certain circumstances, by Clayton Fixed Income Services LLC, as assets representations reviewer (the "Asset Representations Reviewer"), for compliance with certain of the representations and warranties made about the Receivables, pursuant to and in accordance with an Asset Representations Review Agreement, dated as of March 17, 2016 (the "Asset Representations Review Agreement"), among the Bank, the Company, the Servicer, and the Asset Representations Reviewer.

The Notes designated in the applicable Terms Agreement will be sold in a public offering by the Issuer through the underwriters listed on Schedule I to the applicable Terms Agreement (any underwriter through which Notes are sold shall be referred to herein as an "Underwriter" or, collectively, all such Underwriters may be referred to as the "Underwriters"), which shall include [    ] and [    ], the representatives of such Underwriters (each a "Representative", and collectively the "Representatives", which, if the context herein does require, shall include such Representatives in their capacity as Underwriters of any Notes or as Representatives). Notes sold to the Underwriters for which the Representatives are acting as representatives shall be sold pursuant to one or more Terms Agreements, among the Issuer, the Company, the Seller and the Representatives, a form of which is attached hereto as Exhibit A (each, a "Terms Agreement"), each of which incorporates by reference this Underwriting Agreement (the "Agreement," which shall include the applicable Terms Agreement if the context so requires). To the extent not defined herein, capitalized terms used herein have the meanings assigned to such terms in the Indenture or the Pooling and Servicing Agreement. Unless otherwise stated herein or in the applicable Terms Agreement, as the context otherwise requires or if such term is otherwise defined in the Indenture or the Pooling and Servicing Agreement, each capitalized term used or defined herein or in the applicable Terms Agreement shall relate only to the Notes designated in the applicable Terms Agreement and no other series, class or tranches of notes issued by the Issuer. The Receivables Purchase Agreement; this Agreement;

-2-

**Assets of the Master Trust**

The assets of the master trust consist primarily of receivables arising in selected MasterCard and Visa consumer and small business revolving credit card accounts, which receivables have been transferred by the bank to Capital One Funding and have been transferred by Capital One Funding to the master trust. There is no limitation on the percentage of the master trust portfolio comprised of consumer or small business revolving credit card accounts.

The size of the master trust will fluctuate depending on the amount of receivables in accounts designated to the master trust. The transferor may designate additional accounts to the master trust portfolio at any time provided the receivables in those accounts are eligible receivables arising in eligible accounts. Also, under certain limited circumstances, the transferor may be required to designate additional accounts to the master trust portfolio if an addition is required to maintain the master trust required transferor interest or to maintain a minimum required amount of principal receivables in the master trust. The transferor cannot add receivables to the master trust unless the transferor certifies that the addition will not cause a pay out event and the rating agencies selected by the issuing entity confirm the outstanding ratings on the certificates and the notes either at the time of the addition or, in the case of required additions, on a quarterly basis as described in "*The Master Trust—Addition of Master Trust Assets*." For a description of pay out events, see "*The Master Trust—Pay Out Events*."

The transferor may also remove accounts from the master trust portfolio for any reason so long as the transferor certifies that the removal will not cause a pay out event and the rating agencies selected by the issuing entity confirm the outstanding ratings on the certificates and the notes on the removal date. The amount of any removal is limited, and a removal generally may occur only once in a calendar month. In addition, except in limited circumstances, the accounts removed from the master trust portfolio must be selected randomly. However, if the transferor breaches certain representations or warranties regarding the eligibility of accounts in the master trust portfolio, the transferor may be required to remove the ineligible receivables related to those accounts from the master trust. Finally, on the date when any receivable in an account is charged off as uncollectible by the bank, the master trust trustee automatically transfers those receivables to the transferor.

See "*The Master Trust—Addition of Master Trust Assets*," "*—Removal of Master Trust Assets*" and "*—Defaulted Receivables; Rebates and Fraudulent Charges; Recoveries*."

**Assets of COMET**

COMET's primary asset consists of a collateral certificate, referred to as the "COMT collateral certificate," issued by the master trust, whose assets consist primarily of receivables arising in accounts owned or loans originated or acquired by the bank or by any of its affiliates (including non-banking affiliates). For a description of the COMT collateral certificate, see "*Sources of Funds to Pay the Notes—The COMT Collateral Certificate*." For a description of the master trust, see "*—Assets of the Master Trust*" and "*The Master Trust*."

Other than as specifically described in this prospectus, noteholders will have no recourse to assets other than the assets of COMET. See "*Sources of Funds to P

The COMT collateral certificate represents an undivided interest in the Capital One Master Trust, the master trust. The COMT collateral certificate is the only certificate issued pursuant to Series 2002-CC of the master trust. The assets of the master trust consist primarily of receivables arising in selected MasterCard and Visa revolving credit card accounts, which receivables have been transferred by the bank to Capital One Funding and have been transferred by Capital One Funding to the master trust. The amount of credit card receivables in the master trust will fluctuate from day to day as new credit card receivables are generated or included in or removed from the master trust and as other credit card receivables are paid off, charged off as uncollectible or otherwise adjusted.

The COMT collateral certificate has no specified interest rate. COMET, as holder of the COMT collateral certificate, is entitled to receive its allocable share of Finance Charge Collections and Principal Collections payable by the master trust and is assessed its allocable share of Default Amounts. In addition, the holder of the COMT collateral certificate is obligated to pay the portion of the master trust servicing fee allocable to the COMT collateral certificate.

Allocations of Default Amounts, Finance Charge Collections and Principal Collections in the master trust are made *pro rata* among (1) each series of investor certificates issued by the master trust, including the COMT collateral certificate, based on each investor certificate's respective Invested Amount, as may be adjusted for any increases or decreases due to payment of principal or reductions of the Invested Amount from charge-offs for uncovered Default Amounts or reallocated Principal Collections in the master trust, (2) Capital One Funding, as the transferor of the master trust, based on the Master Trust Transferor Interest and (3) in certain circumstances, the interest of certain credit enhancement providers.

**Servicer**

Capital One Bank (USA), National Association is the servicer for the master trust and is responsible for servicing, managing and making collections on the receivables in the master trust. If the issuing entity holds any additional collateral certificates issued by any other master trust or special purpose entity, the bank or an affiliate also will be the servicer for such other master trusts or securitization special purpose entities. The servicer has outsourced certain functions to affiliated and unaffiliated third parties, but the bank remains responsible for the overall servicing process. For information about certain affiliated and unaffiliated third party vendors that provide these services, including Capital One Services, LLC, see "*The Bank—The Servicer—Outsourcing of Servicing.*"

As servicer, the bank will receive a master trust servicing fee. Each month, a share of the master trust servicing fee allocated to the COMT collateral certificate will be further allocated to each series of notes. The Card series servicing fee will be an amount equal to 2.00% of the aggregate nominal liquidation amount of each tranche of Card series notes for any month. See "*The Master Trust—The Servicer—Servicing Compensation and Payment of Expenses.*"

# SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

Dated: July 15, 2024

<u>CAPITAL ONE MULTI-ASSET EXECUTION TRUST</u>
(Issuing Entity)

<u>CAPITAL ONE MASTER TRUST</u>
(Issuing Entity)

By: <u>CAPITAL ONE, NATIONAL ASSOCIATION</u>
(Servicer)

By: <u>/s/ Jeremy Potts</u>
Name: Jeremy Potts
Title: Managing Vice President, Deputy Controller