*** Filed ***
03:47 AM, 29 Aug, 2025
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Mohamed Roshan,
Plaintiff, Pro Se

v.

Capital One Financial Corporation,
Defendant.

Case No. 25-CV-2653 (RER) (JAM)

---

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiff Mohamed Roshan, proceeding pro se, respectfully submits his **Reply to Defendant's Response to Plaintiff's Objection to the Report & Recommendation**, together with attached Exhibits, including:

- **Exhibit E** – SEC Filings and Documents Confirming Capital One's Securitization of Receivables.
- **Exhibit F** – Scholarly Evidence on Bank Credit Creation (Werner, 2014).

This Reply further supports Plaintiff's request that the Court reject the Report & Recommendation and grant leave to file Plaintiff's Amended Complaint, or in the alternative, order discovery on ownership and securitization issues before any ruling on futility.

Dated: August 29, 2025
Queens Village, New York

Respectfully submitted,

/s/ Mohamed Roshan
210-20 Hillside Avenue
Queens Village, NY 11427
Email: mohamedroshan10019@yahoo.com
Plaintiff, Pro Se

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

Mohamed Roshan,
Plaintiff, Pro Se

v.
Capital One Financial Corporation,
Defendant.

Case No. 25-CV-2653 (RER) (JAM)

---

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE REPORT & RECOMMENDATION

---

## PRELIMINARY STATEMENT

Defendant's August 25, 2025 Response mischaracterizes Plaintiff's claims and fails to rebut the central issues raised in Plaintiff's Objection. Defendant attempts to dismiss Plaintiff's tender under the UCC as "fraudulent," minimizes the standing and ownership issues created by securitization, and shifts blame to Capital One, N.A. despite both entities profiting from the same receivables. The Report & Recommendation ("R&R") erred in concluding amendment would be futile. This Court should reject the R&R and permit Plaintiff's amended complaint.

---

## I. PLAINTIFF'S TENDER OF PAYMENT WAS LAWFUL, NOT FRAUDULENT

Defendant repeatedly labels Plaintiff's tender of account coupons as "fraudulent." This is incorrect. Under UCC § 3-603(a), tender of payment discharges an obligation to the extent of the amount tendered, even if the creditor refuses to accept. Plaintiff lawfully tendered payment. Defendant's refusal does not transform lawful tender into fraud. Courts recognize that tender rights exist independently of a creditor's acceptance.

---

## II. SEC FILINGS CONFIRM DEFENDANT LACKS OWNERSHIP OF RECEIVABLES

Plaintiff has submitted Exhibit E – SEC Securitization Documents, which includes the Amended & Restated Receivables Purchase Agreement, Underwriting Agreement, Master Trust Prospectus Supplement, Form 10-D filings, and related documents. Together, these show:

Capital One sold, transferred, and assigned all right, title, and interest in receivables into the Capital One Master Trust;

Capital One Bank (CONA) acts solely as servicer, not owner;

Capital One itself signed SEC filings acknowledging this status.

This creates a standing trap: Defendant cannot claim ownership after selling receivables, nor rely solely on servicing rights without producing the Pooling and Servicing Agreement ("PSA") and assignment chain.

---

## III. BREACH OF CONTRACT IS PLAUSIBLE

Defendant argues Plaintiff cannot identify a specific breached term. Yet Capital One's cardmember agreements require it to honor lawful payments and treat accounts in good faith. By closing Plaintiff's accounts, rejecting lawful tender, and simultaneously profiting from securitization, Defendant engaged in unjust enrichment and bad faith performance. These allegations suffice to state a claim under Rule 12.

---

## IV. WRONG-DEFENDANT ARGUMENT FAILS

Defendant contends Capital One Financial Corp. is not the proper party. This is a distinction without a difference. Both Capital One Financial Corp. (holding company) and Capital One, N.A. (operating bank) benefitted from the securitization program and charged Plaintiff. Courts in this Circuit recognize that entities may be treated as alter egos where corporate formalities are used

to shield liability. See Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993). Dismissing on this ground would elevate form over substance.

---

## V. AMENDMENT IS NOT FUTILE

The R&R erred in concluding amendment would be futile. Plaintiff's proposed amended complaint asserts colorable claims for breach of contract, unjust enrichment, and equitable setoff, supported by SEC securitization evidence (Exhibit E). Federal courts favor resolving disputes on the merits, not prematurely cutting off claims where viable theories exist.

---

## VI. DEFENDANT FAILS TO REBUT THE BONA FIDE PURCHASER THEORY

Defendant's Response is notably silent on Plaintiff's bona fide purchaser for value argument. Plaintiff has consistently maintained that his signature and credit created the receivable and therefore positioned him as the original bona fide purchaser whose value was used to generate the asset later sold into securitization trusts.

By ignoring this argument, Defendant has effectively conceded the point. Courts have held that issues not addressed in opposition may be deemed abandoned or conceded. See Bonilla v. Smithfield Assocs. LLC, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) ("failure to respond to an argument constitutes abandonment of the issue"); Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

Thus, whether the investors are bona fide purchasers (which would strip Defendant of ownership) or Plaintiff himself is the bona fide purchaser (as the originator of value), the outcome is the same: Defendant lacks standing to enforce the receivable against Plaintiff. Defendant's complete failure to rebut this central theory reinforces why dismissal is improper and why Plaintiff's amendment is far from futile.

---

## VII. SCHOLARLY EVIDENCE CONFIRMS PLAINTIFF'S POSITION

Independent economic research confirms the mechanics underlying Plaintiff's bona fide purchaser argument. Professor Richard A. Werner, Chair in International Banking at the University of Southampton, has empirically demonstrated that commercial banks create money when they issue credit, rather than merely lending out deposits.

In a peer-reviewed article published in the *International Review of Financial Analysis*, Werner concluded:

> *"This study establishes for the first time empirically that banks individually create money out of nothing. The money supply is created as 'fairy dust' produced by the banks individually, 'out of thin air.'"* (Exhibit F, Werner 2014).

Werner explains that when a borrower signs a loan or credit card agreement, the bank records the borrower's promise (IOU) as its asset and simultaneously books a liability in the borrower's name as a "deposit." This process confirms that Plaintiff's signature itself created the receivable and originated the value—supporting his status as the true bona fide purchaser and investor, not merely a borrower.

Werner further shows that receivables are treated as assets to be packaged and sold into securitization vehicles. Once sold, the originating bank no longer retains ownership of the receivable but instead functions only as a servicer for the investors. This aligns with Capital One's own SEC evidence (Exhibit E), which confirms that receivables are transferred into the Capital One Master Trust. Defendant therefore cannot both sell receivables into a trust and simultaneously enforce them against Plaintiff—akin to a landlord who sells a house and then attempts to continue collecting rent.

In Plaintiff's case, Capital One:

1. Created money at the moment of Plaintiff's signature;
2. Sold the receivable into a securitization trust;
3. Continued to bill Plaintiff; and
4. Claimed tax write-offs when accounts were charged off.

This constitutes impermissible **quadruple recovery**, which amounts to securities fraud and unjust enrichment.

Finally, the contradiction between Capital One's SEC disclosures ("we regularly sell receivables into trusts") and its litigation posture ("we own the receivables") highlights not merely a contract dispute but a regulatory disclosure issue with potential securities implications.

Plaintiff submits this scholarly evidence as **Exhibit F – Richard A. Werner, Banking and Money Creation**, reinforcing that Defendant's Response fails to confront either the economic reality of money creation or the legal implications of receivable securitization.

---

## CONCLUSION

Defendant's Response fails to rebut Plaintiff's central showing: that Capital One cannot simultaneously securitize receivables into investor trusts and then collect as though it remains the owner. Plaintiff has demonstrated:

1. Bona Fide Purchaser Trap – Either investors are the bona fide purchasers (and Capital One has no ownership), or Plaintiff, as originator of value, is the bona fide purchaser. In either case, Capital One lacks standing.

2. Double Recovery – Capital One already profited through (a) sale of receivables into trusts, (b) servicing fees, and (c) tax write-offs. Continuing to bill Plaintiff creates impermissible double recovery.

3. Standing and PSA Requirement – If Capital One claims only to be servicer, it must produce the Pooling & Servicing Agreement and assignment chain. Without those documents, its claimed enforcement rights cannot be verified.

4. UCC Tender – Plaintiff lawfully tendered payment. Under UCC § 3-603, tender discharges to the extent offered, even if refused. Labeling lawful tender "fraudulent" does not alter the statute.

5. Regulatory Exposure – SEC filings in Exhibit E explicitly admit receivable securitization and servicing. If Defendant's litigation position contradicts these filings, it raises securities disclosure concerns beyond this case.

6. Equitable Setoff – Plaintiff is entitled to offset Capital One's gains from securitization and tax benefits against any alleged obligation.

7. Scholarly Evidence – Independent, peer-reviewed research confirms the structure of money creation, receivable sales, and securitization that Defendant refuses to acknowledge.

Given these conflicts, dismissal at this stage would be improper. At minimum, discovery is required to resolve the ownership gap between Capital One's role as securitizer/servicer and its claim of creditor status.

---

Respectfully submitted,
Dated: August 29, 2025
Queens Village, New York

/s/ Mohamed Roshan
210-20 Hillside Avenue
Queens Village, NY 11427
Email: mohamedroshan10019@yahoo.com
Plaintiff, Pro Se